# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO

MAFCOTE, INC.,

     Plaintiff,

      v.

GENATT ASSOCIATES, INC

     Defendant.

: Case No.: 1:04-CV-853
:
: Judge Dlott
:
: **GENATT'S MEMORANDUM IN SUPPORT**
: **OF MOTION FOR SUMMARY**
: **JUDGMENT AGAINST MAFCOTE**
:
:
:
:
:

**For Genatt Associates:**

David W. Walulik  (Ohio No. 0076079)
Joe Dehner (Ohio No. 0011321)

FROST BROWN TODD LLC
2200 PNC Center
201 East Fifth Street
Cincinnati, Ohio  45202
(513) 651-6800 (phone)
(513) 651-6981 (facsimile)
dwalulik@fbtlaw.com
jdehner@fbtlaw.com

Dated:  November 16, 2006

# TABLE OF CONTENTS

**PAGE**

I.    INTRODUCTION ........................................................................... 1

II.   PROCEDURAL HISTORY ........................................................... 2

III.  PROPOSED UNDISPUTED FACTS ............................................. 2

IV.  ARGUMENT ................................................................................. 2

    A.   The Standard for Summary Judgment ...................................... 3

    B.   The Court Should Dismiss All Mafcote Claims Because There Is No Dispute That Genatt Procured An Insurance Policy Covering Purchases Of Substitute Paper .................................................................. 3

        1.   Mafcote admits that the CNA policy "extra expense" term provided coverage for substitute paper when Miami Wabash's boiler loss prevented production ...................................... 4

        2.   CNA admits that its "extra expense" term provided coverage for substitute paper when Miami Wabash's boiler loss prevented production .................................................................... 5

    C.   Genatt Did Not Breach Any Duty To Advise Mafcote On Paper Purchases Because Genatt Instructed Mafcote To Confirm All Coverage With CNA ................................................................ 6

        1.   An insurance broker does not owe a duty to advise a policyholder how to adjust a claim after reporting the loss to an insurance company ............................................................. 6

        2.   Genatt did not assume a duty to advise Mafcote on paper purchases, but instead disclaimed any such duty by instructing Mafcote to confirm all coverage with CNA ...................................... 8

        3.   Genatt did not breach any duty to advise Mafcote how to purchase replacement paper because Mafcote never informed Genatt before RCP made the purchases ...................................... 9

    D.   Genatt Cannot Be Liable For CNA's Denial Because Mafcote Waived Arguments In Favor Of Coverage ...................................... 10

    E.   This Case Should Be Dismissed Because Mafcote's Late Notice Of The Loss Should Have Defeated Any Coverage ...................................... 11

        1.   Any Mafcote recovery from Genatt is limited by defenses to coverage that could have been raised by CNA ...................................... 12

2.  Ohio law presumes prejudice to an insurer from late notice by a policyholder ........................................................................... 12

3.  Mafcote's late notice caused actual prejudice because Mafcote has admitted that Miami Wabash could have supplied all RCP orders with prompt notice ............................................................................ 13

F.  Each Of The Mafcote Claims Fail To Meet One Or More Elements Required By Ohio Law ............................................................................ 14

1.  Mafcote's negligence claim is barred by Ohio's economic loss rule ........................................................................................... 14

2.  Mafcote and Genatt have an ordinary business relationship that does not give rise to a fiduciary duty ............................................... 14

3.  Mafcote fails to state a breach of good faith claim because Ohio law does not recognize a separate cause of action for bad faith outside of a breach of contract ........................................................ 16

4.  Mafcote fails to state negligent misrepresentation because an opinion on the legal issue of coverage is not a factual misrepresentation that can support the claim ................................... 16

    a.  Genatt did not misrepresent the terms of coverage because all parties agree that the CNA policy covered Miami Wabash to purchase substitute paper ............................................................ 17

    b.  An opinion on whether an insurance policy provides coverage does not support negligent misrepresentation because an opinion is not a factual misrepresentation ................................... 17

    c.  Mafcote cannot have relied upon Genatt to represent how to obtain coverage under the policy because Genatt disclaimed any such duty by instructing Mafcote to confirm coverage with CNA ...................................................................................... 19

5.  Mafcote fails to state an Ohio Rev. Code § 4165.02 claim because an opinion on insurance coverage is not a factual misrepresentation ............................................................................ 19

6.  Mafcote Has Stipulated To Dismiss Counts Seven and Eight With Prejudice ...................................................................................... 20

V.  CONCLUSION ................................................................................. 21

# TABLE OF AUTHORITIES

**Cases**                                                                          **Page**

All Erection & Crane Rental Corp. v. Accordia Northwest, 162 Fed.Appx.
554, 559 (6th Cir. 2006)...............................................................................       14

Andersen v. Liberty Lobby, 477 U.S. 242 (1986) ......................................       3

Brown v. Woodmen Accident and Life Co., 84 Ohio App. 3d 52, 616 N.E.2d
278 (12th Dist. 1992) ....................................................................................       8

Cleveland Builders Supply Co. v. Farmers Ins. Group, 102 Ohio App. 3d 708,
657 N.E.2d 851 (8th Dist. 1995)...................................................................       12

Cragett v. Adell Ins. Agency, 92 Ohio App. 3d 443, 451, 635 N.E.2d 1326
(8th Dist. 1993) .............................................................................................       15

First Catholic Slovak Union v. Buckeye Union Ins. Co., 27 Ohio App. 3d 169,
499 N.E.2d 1303 (8th Dist. 1986)..................................................................       4

Fisher v. Warren Star Theater, 84 Ohio App. 3d 435, 616 N.E.2d 1192 (2d
Dist. 1992)......................................................................................................       12

Gabriele v. Reagan, 57 Ohio App. 3d 84, 566 N.E.2d 684 (1st Dist. 1988) .............       12

Gomolka v. State Auto Mut. Ins. Co., 70 Ohio St. 2d 166, 436 N.E.2d 1347
(Ohio 1982) ....................................................................................................       17

Hart v. Republic Mut. Ins. Co., 152 Ohio St. 185, 189, 87 N.E.2d 347, 350
(Ohio 1949)....................................................................................................       7

Hoskins v. Aetna Life Ins. Co., 6 Ohio St. 3d 272, 452 N.E.2d 1315 (Ohio
1983) ..............................................................................................................       6

Indiana Ins. Co. v. Midwest Maintenance, 174 F. Supp.2d 678 (S.D. Ohio
2001) ..............................................................................................................       17

J.F. Meskill Enterprises v. Acuity, 2006 U.S. Dist. Lexis 41491 (N.D. Ohio
April 7, 2006)..................................................................................................       14

Kilburn v. Becker, 60 Ohio App. 3d 144, 573 N.E.2d 1226 (12th Dist. 1990) .........       4, 17, 18

Lakota Loc. School Dist. v. Brickner, 108 Ohio App. 3d 637, 671 N.E.2d 578
(6th Dist. 1996) .............................................................................................       16

Leber v. Smith, 70 Ohio St. 3d 548, 639 N.E.2d 1159 (Ohio 1994) ........................       17

Lu-An-Do, Inc. v. W. Fred Kloots, Jr., 131 Ohio App. 3d 71, 721 N.E.2d 507
(5th Dist. 1999) .............................................................................................       19

Mafcote v. Continental Cas. Ins. Co., No. 04-3534 (6th Cir. May 17, 2005)............ 10, 18

Mafcote, Inc. v. Continental Cas. Ins. Co., C-01-02-411 (S.D. Ohio) ..................... 2

Northeast Ohio College of Massotherapy v. Burek, 144 Ohio App. 3d 196,
759 N.E.2d 869 (7th Dist. 2001)................................................................. 16, 20

Ormet Primary Alum. Corp. v. Employers Ins. Of Wausau, 88 Ohio St. 3d
292, 725 N.E.2d 646 (Ohio 2000)................................................................ 12, 13

Owens-Corning Fiberglas Corp. v. American Centennial Ins. Co., 74 Ohio
Misc. 2d 263, 660 N.E.2d 823 (Lucas CP 1995) ...................................... 17, 18

Pavlovich v. National City Bank, 435 F.3d 560 (6th Cir. 2006) ............................... 14

Rentz v. Globe American Ins. Co., 1990 Ohio App. Lexis 5415 (10th Dist.
Dec. 4, 1990) ...................................................................................... 7

Roberts v. Maichl, 2004 Ohio App. Lexis 4244 (1st Dist. Sept. 3, 2004)................. 12, 15

Ruby v. Midwestern Indem. Co., 40 Ohio St. 3d 159, 532 N.E.2d 730 (Ohio
1988) .......................................................................................... 12

Slovak v. Adams, 141 Ohio App. 3d 838, 753 N.E.2d 910 (6th Dist. 2001) ............ 15

Staff Builders v. Armstrong, 37 Ohio St. 3d 298, 525 N.E.2d 783 (Ohio 1988)...... 6

Turner Liquidating Co. v. St. Paul Surplus Lines Ins. Co., 93 Ohio App. 3d
292, 638 N.E.2d 174 (9th Dist. 1994)......................................................... 10

Warren v. Percy Wilson Mortgage & Finance Corp., 15 Ohio App. 3d 48, 472
N.E.2d 364 (1st Dist. 1984) .......................................................... 15, 16

Zoppo v. Homestead Ins. Co., 71 Ohio St. 3d 552, 644 N.E.2d 397 (Ohio
1994) ...................................................................................... 6

# I.     INTRODUCTION

Genatt Associates ("Genatt") is an insurance broker who assisted Mafcote, Inc. ("Mafcote") to purchase a boiler insurance policy from Continental Casualty Insurance Company ("CNA"). On July 16, 2001, a Mafcote affiliate named Miami Wabash Paper ("Miami Wabash") lost its boiler and was unable to produce paper needed to supply another Mafcote affiliate named Royal Consumer Products ("RCP"). The RCP affiliate purchased substitute paper at higher prices from third parties. Mafcote filed an insurance coverage lawsuit in Judge Beckwith's court against CNA for the extra expenses incurred by RCP. Mafcote lost that lawsuit because insurance coverage for the extra expenses was derivative of boiler damage. Judge Beckwith held that RCP was a separate legal entity from Miami Wabash and could not seek insurance coverage for purchases of substitute paper because RCP never experienced a boiler loss.

After losing the CNA lawsuit, Mafcote filed the present lawsuit against Genatt alleging that Genatt failed to procure proper insurance coverage from CNA. Mafcote now admits, however, that the CNA policy procured by Genatt would have covered purchases of substitute paper if Miami Wabash had made them. Genatt moves for summary judgment on five grounds: (1) all parties admit that the CNA policy provided coverage; (2) Genatt did not owe a duty to advise Mafcote how to purchase substitute paper after the loss but instead instructed Mafcote to confirm coverage with CNA; (3) Mafcote prejudiced Genatt in this case by waiving arguments in favor of coverage when it litigated against CNA; (4) Mafcote's late notice to CNA likely would have defeated coverage even if Miami Wabash had made the purchases; and, (5) each Mafcote claim fails to meet one or more elements of proof under Ohio law.[1]

---

[1] Both Mafcote and Genatt stipulate that Ohio law will govern all claims. See Deposition of Stephen Schulman dated Sept. 18, 2006 at p. 5/14-22 (Ex. "B").

## II.   PROCEDURAL HISTORY

The present lawsuit arises from Mafcote's loss of an earlier insurance coverage suit against CNA for business interruption arising from a boiler accident at Miami Wabash. See Mafcote, Inc. v. Continental Cas. Ins. Co., C-01-02-411 (S.D. Ohio). Mafcote lost that suit because Mafcote never confirmed with CNA that Miami Wabash should purchase substitute paper instead of RCP. Judge Beckwith granted summary judgment to CNA because insurance coverage for the extra expense of substitute paper was triggered under the CNA policy by an "accident" to an "object" at an insured "location." See Id. at p. 11 (S.D. Ohio March 25, 2004) (Ex. "C"). Although Miami Wabash had suffered an accident to its insured boiler, Miami Wabash never purchased any substitute paper to fill orders that it could not produce. Id. Instead, RCP purchased the paper and these costs could not be covered by the policy because RCP never suffered an accident at its location. Id. Judge Beckwith treated RCP and Miami Wabash as separate legal entities and held that each entity could not claim insurance coverage based upon an accident at the other. Id.

## III.   PROPOSED UNDISPUTED FACTS

Consistent with the Court's March 1, 2006 Standing Order Governing Civil Motions for Summary Judgment, attached as Exhibit "A" hereto is a set of Proposed Undisputed Facts setting forth each material fact as to which Genatt contends there is no genuine issue for trial.

## IV.   ARGUMENT

The Court should grant summary judgment in favor of Genatt on all Mafcote claims. There is no dispute that Genatt procured an insurance policy covering the extra expense for Miami Wabash to purchase paper from third parties when Miami Wabash was unable to produce its own paper. Genatt cannot be held liable to Mafcote for the fact that CNA won an insurance

coverage lawsuit because RCP purchased that paper instead of Miami Wabash. The Court should dismiss all claims against Genatt for five reasons: (1) all parties admit that the CNA policy provided coverage; (2) Genatt did not owe or breach a duty to advise Mafcote on paper purchases because Genatt instructed Mafcote to confirm purchases with CNA; (3) Mafcote prejudiced Genatt by waiving arguments in favor of coverage when it litigated against CNA; (4) Mafcote's late notice to CNA likely would have defeated coverage even if Miami Wabash had made the purchases; and, (5) each individual Mafcote claim fails to meet one or more elements of proof under Ohio law.

A.     **The Standard For Summary Judgment**

Fed.R.Civ.P. 56 provides for summary judgment when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. See Anderson v. Liberty Lobby, 477 U.S. 242, 247-48 (1986). As the movant, Genatt bears an initial burden to inform the court why the law entitles it to judgment, and the burden then shifts to Mafcote to produce affirmative evidence showing a genuine issue of fact upon all essential elements of its claims. Id., at 250. If there is no evidence sufficient for a jury to find for Mafcote on all elements of its claims, then summary judgment is appropriate for Genatt. Id. at 252. Both Mafcote and Genatt stipulate that Ohio law will govern all claims. See Schulman Depo. at p. 5/14-22 (Ex. "B").

B.     **The Court Should Dismiss All Mafcote Claims Because There Is No Dispute That Genatt Procured An Insurance Policy Covering Purchases Of Substitute Paper**

Both Mafcote and CNA admit that Genatt procured an insurance policy for Mafcote from CNA that provided coverage for Miami Wabash to purchase substitute paper. Contrary to these admissions, each Mafcote claim alleges that Genatt failed to procure this insurance. See Mafcote

Complaint at ¶¶ 31, 38, 44, 47, 51 and 55 (Dkt. 1).[2] It should go without question that Genatt cannot be held liable for failing to procure insurance coverage that Mafcote admits Genatt procured. See <u>Kilburn v. Becker</u>, 60 Ohio App. 3d 144, 149, 573 N.E.2d 1226, 1230 (12<u>th</u> Dist. 1990) ("Becker cannot be held liable for failing to procure the coverage Harold Kilburn requested when Kilburn already possessed that coverage"); <u>First Catholic Slovak Union v. Buckeye Union Ins. Co.</u>, 27 Ohio App. 3d 169, 170, 499 N.E.2d 1303, 1305 (8th Dist. 1986) ("the agency provided exactly what the society requested"). Both Mafcote expert Joseph Blumberg and CNA claims adjuster Nick Bozovich admit that if Miami Wabash had purchased substitute paper instead of RCP, then there was coverage under the terms of the CNA policy. The Court should dismiss all Mafcote claims because there is no dispute that Genatt procured proper insurance for Mafcote.

1. **Mafcote admits that the CNA policy "extra expense" term provided coverage for substitute paper when Miami Wabash's boiler loss prevented production**

Mafcote expert Joseph Blumberg issued a report in this case admitting that the CNA policy provided coverage for substitute paper, but Mafcote lost its coverage suit against CNA because Miami Wabash never purchased any substitute paper. Instead, RCP made these purchases and Mafcote admits that its insurance claim would have been covered had Miami Wabash made them. Specifically, Mr. Blumberg opines:

> If Miami had submitted the extra expense claim and had gone into the market to supply paper at the extra cost and had suffered the loss, CNA would have had to pay the claim. This action would have obviated the claim that CNA made, that the entity that claimed the extra expense loss (Royal) did not suffer an incident at its location. The incident occurred at Miami's premises, and a claim presented under these conditions should have been successful.

---

[2] Paragraphs 31 (negligence), 38 (breach of fiduciary duty), 44 (contract), 47 (bad faith), 51 (negligent misrepresentation) and 55 (Ohio R.C. 4165.02) set forth the relevant failure to procure allegation for each count of the Mafcote Complaint. As set forth in Section F.6 <u>infra</u>, Mafcote stipulated to dismiss counts VII and VIII from its complaint so those claims are no longer at issue. <u>See</u> Schulman Depo. at p. 6/12 – 7/10 (Ex. "B").

<u>See</u> Expert Report of J. Blumberg dated June 30, 2006 at p. 3 (Dkt. 47). Mr. Blumberg

confirmed this view in his deposition, testifying:

> Q- Is it actually your opinion that this policy, purely from a coverage standpoint, could have provided insurance coverage for this loss? You state, 'CNA would have had to pay the claim.'
>
> A- Yes.

<u>See</u> Deposition of J. Blumberg dated Sept. 20, 2006 at p. 23/19-24 (Ex. "D").

### 2. CNA admits that its "extra expense" term provided coverage for substitute paper when Miami Wabash's boiler loss prevented production

Mafcote's opinion that the CNA policy provided coverage also was confirmed by the

CNA claim adjuster who made the coverage decision on the Mafcote claim. Specifically, Nick

Bozovich handled the claim for CNA, reviewed the Blumberg report, and testified in deposition:

> Q- The first sentence of that paragraph read "if Miami had submitted the extra expense claim and had gone into the market to supply paper at the extra cost and had suffered the loss, CNA would have had to pay the claim." Do you agree with that statement?

<u>See</u> Bozovich Depo. at p. 72/6-12 (Ex. "E"). After asking Mr. Bozovich to assume that Miami

Wabash had no problem with late notice, Mr. Bozovich answered:

> A- If there was no issue of commencement of liability that there was in this claim, yes, I would agree with that.

<u>See</u> Id. at p. 73/2-4. There is no dispute that the policy procured by Genatt provided coverage

for Miami Wabash to purchase substitute paper—both Mafcote and CNA admit this coverage.

Since all Mafcote claims allege a "failure to procure" this coverage, the Court should grant

summary judgment on all claims in favor of Genatt.

**C.    Genatt Did Not Breach Any Duty To Advise Mafcote On Paper Purchases Because Genatt Instructed Mafcote To Confirm All Coverage With CNA**

Mafcote has not plead any alternative to a "failure to procure" theory of liability, but Mafcote's expert has opined that Genatt owed a duty to advise Mafcote how to purchase substitute paper after this loss was reported to CNA. See Blumberg Expert Report at p. 3 (Dkt. 47). Although Mafcote has not plead a "failure to advise" claim, Genatt nonetheless addresses that issue in this motion because Genatt did not owe or breach such duty. The Court should dismiss any "failure to advise" claim because: (1) an insurance broker does not owe a duty to adjust a loss, but Ohio law instead imposes that duty on the insurance company; (2) Genatt did not assume a duty to advise paper purchases, but instead instructed Mafcote to confirm all coverage with CNA; and, (3) Genatt did not breach such duty because Mafcote did not inform Genatt that RCP had purchased substitute paper until after those purchases were made. Even were a duty to exist, it is factually impossible for Genatt to advise Mafcote to undo action that Mafcote already had done.

**1.    An insurance broker does not owe a duty to advise a policyholder how to adjust a claim after reporting the loss to an insurance company**

There is no support under Ohio law to impose a duty upon an insurance broker to advise a policyholder how to adjust a claim once the loss is reported to an insurance company. To the contrary, once a loss is reported to the insurance company, Ohio law places strict duties of good faith upon the insurer to deal fairly with the policyholder to adjust the claim. See Hoskins v. Aetna Life Ins. Co., 6 Ohio St. 3d 272, 452 N.E.2d 1315 (Ohio 1983) (Syllabus) ("[a]n insurer has duty to act in good faith in the handling and payment of claims of its insured"); Staff Builders v. Armstrong, 37 Ohio St. 3d 298, 525 N.E.2d 783 (Ohio 1988) (same); Zoppo v. Homestead Ins. Co., 71 Ohio St. 3d 552, 558, 644 N.E.2d 397, 402 (Ohio 1994) (noting that a

"one-sided inquiry" in claims investigation can lead to punitive damages against an insurer);

Hart v. Republic Mut. Ins. Co., 152 Ohio St. 185, 189, 87 N.E.2d 347, 350 (Ohio 1949)

(premising bad faith action upon insurer's failure to communicate with policyholder after loss

was reported).[3]

The case Rentz v. Globe American Cas. Co., 1990 Ohio App. Lexis 5415 *8 (10th Dist.

Dec. 4, 1990) is directly on point in this regard.[4]  In Rentz, a policyholder tried to extend the

common law action of bad faith beyond the insurance company to assert the claim against an

insurance agent for matters that allegedly arose after a loss.  Id. at *8-9.  The Rentz court

acknowledged that the Ohio Supreme Court in Hoskins had recognized a common law claim

against an insurer for the mishandling of a claim, but refused to extend the legal theory to an

insurance agent, specifically holding:

> Hoskins established that insurers have a duty to act in good faith in handling and
> processing the claims of their insureds; however, the decision does not establish a
> rule that an insurance agency is under the same duty imposed upon the insurer by
> virtue of the existence of a contract of insurance.

See Rentz, 1990 Ohio App. Lexis 5415 *8.  Indeed, Rentz further provides that:

> Any problem that resulted in whether or not appellants (policyholders) were
> covered by insurance on the date of the accident was between appellants and
> Globe (insurer) based upon the contract of insurance.

Id. at *9.

An insurance broker like Genatt simply acts as a middleman between the policyholder

and insurance carrier when coverage is purchased.  After the policy is procured, any duty on the

part of the insurance broker is met.  In this case, Genatt did not assume any additional duty, but

---

[3] Indeed, Ohio also has a host of statutes and administrative regulations detailing an insurer's duty to a policyholder
in claims adjustment.  See e.g. Ohio Rev. Code § 3901.21 (unfair claims settlement practices); Ohio Admin. Code
3901-1-54 (unfair property and casualty settlement practices; Ohio Admin. Code 3901-1-24 (prohibited practices for
claims adjusters).  None of these statutes nor the common law impose any such duty on an insurance broker.

[4] All electronically published opinions appear in alphabetical order in Exhibit "N" attached hereto.

instead Genatt simply reported the Miami Wabash boiler loss to CNA within 22 minutes after receiving that notice from Mafcote. See Fax letter from S. Schulman to E. DiGioia dated August 14, 2001 11:42 A.M. (Ex. "F"); Property Loss Notice dated August 14, 2001 12:04 P.M. (Ex. "G"). The very next day, Genatt provided Mafcote with the name and contact information of the CNA claims adjuster who would handle the claim. See DiGioia Fax Letter dated August 15, 2001 (Ex. "H"). At that point, Genatt did not owe or assume any further duty to assist Mafcote on this insurance claim. Genatt properly reported the loss to CNA and provided Mafcote with the name and contact information for the relevant CNA adjuster who would make a coverage decision on the claim.

## 2. Genatt did not assume a duty to advise Mafcote on paper purchases, but instead disclaimed any such duty by instructing Mafcote to confirm all coverage with CNA

Genatt did not assume any duty to advise Mafcote on paper purchases, but instead specifically instructed Mafcote to confirm all coverage with CNA. Ohio law provides that an insurance agent cannot be held liable for a policyholder's loss when that policyholder undergoes costs without first confirming that those costs will be covered by applicable insurance. See Brown v. Woodmen Accident and Life Co., 84 Ohio App. 3d 52, 56, 616 N.E.2d 278 (12th Dist. 1992) (granting summary judgment for lack of reliance where policyholder underwent health treatments without confirming coverage under her policy). In this case, Genatt specifically instructed Mafcote to confirm all coverage with CNA. Mafcote lost its coverage lawsuit against CNA because Mafcote ignored that instruction and allowed RCP to make purchases without asking CNA whether that was proper.

The day after Mafcote provided notice to Genatt, Ed DiGioia of Genatt wrote to Mafcote and expressed that "purchasing stock from others to maintain production" should fall within the "extra expense" provisions of CNA coverage. See DiGioia Fax Letter dated August 15, 2001

(Ex. "H"). Genatt did not make a representation that Mafcote should purchase any substitute paper, but instead specifically instructed Mafcote that "all of these comments need to be confirmed by the CNA adjustor assigned to the case." Id. Genatt provided the name and number of the relevant CNA claims representative for Mafcote to confirm any purchases. Id. Mafcote admits, however, that it did not confirm purchases before it made them. See Schulman Depo. at p. 100/4-6 (Ex. "B").

Otherwise, Mafcote admits that Genatt never advised anyone at Mafcote that RCP purchases would be covered by insurance. See Id. at p. 100/24 – 101/5. Mafcote also admits that Mafcote never discussed with Genatt whether purchases should be made by Miami Wabash or RCP. See Id. at p. 200/7-15. There is simply no basis for Mafcote to suggest that Genatt ever assumed a duty to advise it how to purchase replacement paper. Genatt specifically disclaimed that duty by instructing Mafcote to confirm all purchases with CNA and Mafcote admits that it never discussed the subject with Genatt.

### 3. Genatt did not breach any duty to advise Mafcote how to purchase substitute paper because Mafcote never informed Genatt before RCP made the purchases

Even if the Court were to find a duty for Genatt to advise Mafcote on paper purchases, Genatt cannot have breached that duty because Mafcote never informed Genatt that the purchases were made. Mafcote Fed.R.Civ.P. 30(b)(6) witness Stephen Schulman testified that the decision for RCP to purchase replacement paper from third parties was made between July 16-18, 2001. See Schulman Depo. at p. 14/10 – 15/5 (Ex. "B"). Mafcote did not notify Genatt of the loss until August 14, 2001. See Id. at p. 90/13 – 91/4. Mafcote tendered the RCP purchases to CNA on October 10, 2001. See Id. at p. 22/24 - 23/8; letter from S. Schulman to N. Bozovich dated October 10, 2001 (Ex. "I"). Mafcote admits that it did not inform Genatt that RCP had made purchases until October 15, 2001. See Schulman Depo. at p. 40/14 – 41/2; Letter

from S. Schulman to S. Genatt dated Oct. 15, 2001 (Ex. "J"). By that time, all paper purchases had been made. See Schulman Depo. at p. 40/14 – 41/2. Even if there were a duty to advise, Genatt cannot have breached that duty because Mafcote never consulted Genatt before the purchases were made.

## D. Genatt Cannot Be Liable For CNA's Denial Because Mafcote Waived Arguments In Favor Of Coverage

The principal problem that Mafcote had with its insurance claim against CNA was that Mafcote itself waived arguments in favor of coverage by failing to raise them at the trial level. Specifically, Mafcote waited until appeal to argue that the RCP purchases could be covered as a third party liability claims. See Mafcote v. Continental Cas. Ins. Co., No. 04-3534 at p. 6 (6th Cir. May 17, 2005) (Ex. "K"). Mafcote attempted to argue that if RCP and Miami Wabash were to be considered separate legal entities as the trial court had held, then the UCC rules provided that RCP could sue Miami Wabash for defaulting on the paper supply and seek the difference in cost to purchase cover product as its measure of damages. Id. The Sixth Circuit refused to consider this argument for the first time on appeal. Id. Genatt should not bear the burden of Mafcote's own waiver of this argument.[5]

In addition, Mafcote never raised the issue of waiver or estoppel at the trial level. Ohio law provides that an insurer can waive or be estopped from denying coverage if it allows a policyholder to act in a manner that prejudices coverage with knowledge that the policyholder is relying upon coverage for the acts. See e.g. Turner Liquidating Co. v. St. Paul Surplus Lines Ins. Co., 93 Ohio App. 3d 292, 299, 638 N.E.2d 174, 179 (9th Dist. 1994) (estopping insurer from

---

[5] Indeed, it is unlikely that Mafcote could have recovered for RCP losses under any circumstance because it was Mafcote and not RCP who brought suit against CNA. As noted by the Sixth Circuit in Mafcote's appeal, "Mafcote cannot recover for a business interruption loss because it suffered no loss—Royal suffered the loss." Id. at p. 5. Mafcote's trial attorneys never advised Mafcote that it did not have standing to sue for RCP losses.

raising defense to coverage after working with policyholder to adjust and defend claim). In this case, CNA did not raise the issue of non-coverage for RCP purchases until trial. See Bozovich Depo. at p. 65/6 – 66/8 (Ex. "E"). Indeed, CNA actually considered that it might adjust the loss on the basis of two locations because this would have raised the deductible owed by Mafcote. See Id. at p. 62/6 – 64/8. A successful estoppel defense could have prevented CNA from prevailing on its two locations theory. Mafcote should bear the burden of failing to raise estoppel and not be allowed to seek liability against Genatt.[6]

### E. This Case Should Be Dismissed Because Mafcote's Late Notice Of The Loss Should Have Defeated Any Coverage

Even if the Court were to accept every Mafcote allegation as true, Mafcote cannot recover from Genatt because Mafcote's own late notice should have defeated coverage regardless of the type of insurance procured or the entity purchasing substitute paper. Mafcote's recovery against Genatt is limited to the recovery Mafcote could have obtained from CNA. In this case, Mafcote should not have obtained coverage because it waited twenty-nine days to report that Miami Wabash had stopped producing paper due to its boiler loss. Mafcote admits that full production resumed once a temporary boiler was installed. Mafcote also admits that temporary boiler was installed within three days after ordering it. Although Miami Wabash lost its boiler on July 16, 2001, Mafcote admitted in its coverage case against CNA that Miami Wabash could have supplied all orders if a temporary boiler could have been operational on August 13, 2001. There is no question that late notice would have defeated this claim. Indeed, late notice was the only basis upon which CNA initially denied the claim.

---

[6] Mafcote's waiver of coverage arguments in the CNA case likely was attributable in no small part to the fact that Mafcote hired and fired four different law firms to litigate that case. See Schulman Depo. at p. 144/6-8 (Ex. "B")

**1. Any Mafcote recovery from Genatt is limited by defenses to coverage that could have been raised by CNA**

Ohio law provides that "[i]n an action for breach of contract to procure insurance, the measure of damages is the amount the insurer would have owed under the terms of the proposed contract." See Cleveland Builders Supply Co. v. Farmers Ins. Group, 102 Ohio App. 3d 708, 715, 657 N.E.2d 851, 855 (8th Dist. 1995) (affirming summary judgment for insurance agent where policyholder failed to prove coverage would have been paid). Moreover, it is Mafcote who bears the burden to prove that it would have been protected by insurance if coverage had been in place. See Fisher v. Warren Star Theater, 84 Ohio App. 3d 435, 441, 616 N.E.2d 1192 (11th Dist. 1992) ("plaintiffs failed to present any evidence that a claim presented to the insurance company under a directors' and officers' liability policy would have been meritorious"); Gabriele v. Reagan, 57 Ohio App. 3d 84, 88, 566 N.E.2d 684, 688 (12th Dist. 1988) (affirming dismissal of insurance agent negligence claim where policyholder "failed to prove that if the claim had been presented to the insurance company, it would have been deemed meritorious"); Roberts v. Maichl, 2004 Ohio App. Lexis 4244 *10 (1st Dist. Sept. 3, 2004) (affirming summary judgment for insurance agency where policyholder alleged a failure to recommend employee dishonesty coverage, but policyholder failed to prove that its loss would have been covered by such insurance).

**2. Ohio law presumes prejudice to an insurer from late notice by a policyholder**

Under Ohio law, late notice to an insurer is a complete defense to coverage. See Ormet Primary Alum. Corp. v. Employers Ins. of Wausau, 88 Ohio St. 3d 292, 303, 725 N.E.2d 646, 655 (Ohio 2000) (granting summary judgment where late notice prevented timely investigation of claim). Ohio law presumes prejudice to an insurer upon a threshold showing that notice was late. See Ruby v. Midwestern Indem. Co., 40 Ohio St. 3d 159, 161, 532 N.E.2d 730, 732 (Ohio

1988) ("Unreasonable delay in the giving of notice may be presumed prejudicial to the insurer absent evidence to the contrary"). If an insurer presents evidence that late notice caused actual prejudice, then summary judgment is proper on the claim. See Ormet, 88 Ohio St. 3d at 303, 725 N.E.2d at 655.

### 3. Mafcote's late notice caused actual prejudice because Mafcote has admitted that Miami Wabash could have supplied all RCP orders with prompt notice

Time is of the essence in any business interruption claim. Although Miami Wabash lost its boiler on July 16, 2001, Mafcote waited until August 14, 2001 to report that loss to Genatt and CNA. See Schulman Depo. at p. 89/6-10 and 90/13 -91/4 (Ex. "B"). In its CNA coverage case, Mafcote admitted that Miami Wabash was unable to produce paper for RCP during those 29 days. See Deposition of S. Schulman dated Feb. 27, 2003 at p. 96/4-12 (Ex. "M") Mafcote has admitted that it resumed production on August 15, 2001 when a temporary boiler was installed. See Mafcote Answer to Genatt RFA No. 5 (Ex. "L"). Mafcote has admitted that it only took 24-48 hours to obtain and install that temporary boiler. See Schulman 9/18/06 Depo. at p. 192/22 – 193/9 (Ex. "B"). Most importantly, in the earlier CNA coverage case, Mafcote admitted that Miami Wabash could have supplied all RCP orders if a temporary boiler would have been installed by August 13, 2001. See Schulman 2/27/03 Depo. at p. 96/22 – 97/8. Mafcote mistakenly reported the claim to the wrong insurance company on July 27, 2001. See Schulman 9/18/06 Depo. at p. 107/5-15. Since a temporary boiler could have been installed within three days from that date and all production for RCP would have been met, there is no issue of law or fact that Mafcote's late notice caused actual prejudice by creating the very business interruption for which it sought coverage.

**F.     Each Of The Mafcote Claims Fails To Meet One Or More Elements Required By Ohio Law**

If the Court does not dismiss this case in its entirety upon the grounds set forth above, each of the remaining Mafcote claims nonetheless fails to meet one or more elements under Ohio law. Each of the Mafcote claims should be dismissed in its own right.

**1.     Mafcote's negligence claim is barred by Ohio's economic loss rule**

Mafcote count I alleges negligent failure to procure insurance. See Complaint at ¶¶ 29-34 (Dkt. 1). Under Ohio law, Mafcote may not recover in negligence for economic losses that are unaccompanied by personal injury or property damage caused by the alleged negligent act. See Pavlovich v. National City Bank, 435 F.3d 560, 569 (6th Cir. 2006) (barring claim alleging negligent failure to administer investment account); All Erection & Crane Rental Corp. v. Accordia Northwest; 162 Fed.Appx. 554, 559 (6th Cir. 2006) (barring insurance agent negligence claim where policyholder merely sought recovery of insurance benefits); J.F. Meskill Enterprises v. Acuity, 2006 U.S. Dist. Lexis 41491 *13 (N.D. Ohio April 7, 2006) ("the Court finds it highly unlikely that the Ohio Supreme Court would recognize an independent insurance broker malpractice claim in light of its recent economic loss decisions"). The only damage alleged by Mafcote is purely economic—the insurance payout Mafcote believes it should have received for the increased cost to purchase substitute paper from third parties. Therefore, clear Sixth Circuit precedent interpreting Ohio law provides that there is no right in negligence for the claim.

**2.     Mafcote and Genatt have an ordinary business relationship that does not give rise to a fiduciary duty**

Mafcote count II alleges breach of fiduciary duty for failure to procure insurance. See Complaint at ¶¶ 35-40 (Dkt. 1). Ohio law is clear, however, that the relationship between a policyholder and an insurance broker is an ordinary business relationship that does not give rise

to fiduciary duties. See Slovak v. Adams, 141 Ohio App. 3d 838, 846, 753 N.E.2d 910, 916 (6th Dist. 2001); Cragett v. Adell Ins. Agency, 92 Ohio App. 3d 443, 452, 635 N.E.2d 1326, 1332 (8th Dist. 1993); Warren v. Percy Wilson Mortgage & Finance Corp., 15 Ohio App. 3d 48, 51, 472 N.E.2d 364, 367 (1st Dist. 1984); Roberts, 2004 Ohio App. Lexis 4244 *8.

In this case, there are no circumstances that would lead to a fiduciary duty between sophisticated corporate insured like Mafcote and an insurance broker like Genatt. Mafcote is a multinational corporation with multiple subsidiaries operating on three different continents. See Schulman Depo. at p. 58/8 – 59/14 (Ex. "B"). Mafcote's president Stephen Schulman has been responsible for purchasing insurance for all Mafcote affiliates since the early 1970's and has used five different insurance brokers during that time. Id. at p. 70/15 – 71/8. Mr. Schulman holds two different Ivy League degrees, a bachelors in business from Pennsylvania and a masters in business administration from Columbia. Id. at p. 53/10-14. There is no question that Mafcote is a sophisticated commercial insured and Mr. Schulman has a wealth of experience concerning corporate insurance matters. This is not an instance where Genatt was in any position to exercise undue influence over Mafcote based upon superior knowledge or sophistication.

In addition, Genatt had no authority to buy insurance without Mafcote's express approval of the policy. See Id. at p. 83/14-23. Mafcote's right to refuse to enter any insurance contract proposed by Genatt defeats any fiduciary duty claim as a matter of law. See Slovak, 141 Ohio App. 3d at 847, 753 N.E.2d at 918 (dismissing fiduciary duty claim where broker "was never in a position to make insurance decisions for Slovak"). Indeed, Mafcote has produced no evidence that Genatt ever agreed to a fiduciary relation. A fiduciary expectation cannot be unilateral and the claim fails without that acknowledgment. See Id. (dismissing fiduciary claim alleging that agent failed to inform policyholder about changes in coverage); Cragett, 92 Ohio App. 3d at 451,

635 N.E.2d at 1332 (dismissing fiduciary claim alleging that agent improperly advised policyholder concerning coverage needs); Warren, 15 Ohio App. 3d at 51, 472 N.E.2d at 367 ("there was no mutual understanding that plaintiffs reposed a special confidence in Wilson"). There is simply no basis in law or fact to hold Genatt to a fiduciary duty.

### 3. Mafcote fails to state a breach of good faith claim because Ohio law does not recognize a separate cause of action for bad faith outside of a breach of contract

Mafcote count IV asserts a cause of action titled "breach of good faith and fair dealing" alleging that Genatt failed to procure proper insurance. See Mafcote Complaint at ¶¶ 46-49. This count fails to state a claim because any good faith duty placed upon a contracting party is part of the contract and "does not stand alone." See Northeast Ohio College of Massotherapy v. Burek, 144 Ohio App. 3d 196, 207, 759 N.E.2d 869, 878 (7th Dist. 2001) (dismissing breach of good faith and fair dealing claim); Lakota Loc. School Dist. v. Brickner, 108 Ohio App. 3d 637, 646, 671 N.E.2d 578, 584 (6th Dist. 1996) (same). For the reasons set forth in Section B above, Genatt did not breach any contract to procure insurance because both Mafcote and CNA admit that proper insurance was procured. As a matter of law, Mafcote nonetheless cannot state a breach of good faith claim even if Genatt had breached such contract because there is no good faith and fair dealing claim under Ohio law that exists independently of the contract itself.

### 4. Mafcote fails to state negligent misrepresentation because an opinion on the legal issue of coverage is not a factual misrepresentation that can support the claim

Mafcote count ·V asserts a claim for negligent misrepresentation alleging that Genatt misrepresented that the CNA insurance policy provided coverage for purchases of substitute paper. See Mafcote Complaint at ¶¶ 50-53. This claim fails for three reasons: (1) there was no misrepresentation because all parties agree that the CNA policy provided coverage for Miami Wabash to purchase substitute paper; (2) an opinion on whether an insurance policy provides

coverage cannot support a negligent misrepresentation claim because it is not a misrepresentation of fact; and (3) Mafcote cannot have relied upon Genatt to represent how to obtain coverage under the policy because Genatt disclaimed any such duty by instructing Mafcote to confirm coverage with CNA.

### a. Genatt did not misrepresent the terms of coverage because all parties agree that the CNA policy covered Miami Wabash to purchase substitute paper

Any representation by Genatt that the CNA policy provided coverage is not a misrepresentation. For the reasons set forth in Section B, supra, both Mafcote and CNA agree that the policy provided coverage for Miami Wabash to make such substitute paper purchases. Genatt simply incorporates that argument as if set forth herein. Without a misrepresentation, Mafcote cannot assert a negligent misrepresentation claim.

### b. An opinion on whether an insurance policy provides coverage does not support negligent misrepresentation because an opinion is not a factual representation

An opinion on whether an insurance policy provides coverage is an opinion on an issue of law. See e.g. Leber v. Smith, 70 Ohio St. 3d 548, 639 N.E.2d 1159 (Ohio 1994); Gomolka v. State Auto Mut. Ins. Co., 70 Ohio St. 2d 166, 436 N.E.2d 1347, 1348 (Ohio 1982). Such an opinion is not a representation of fact and cannot support a negligent misrepresentation claim because a court of law can change the law to a different interpretation of coverage through no fault of the insurance agent. See Kilburn v. Becker, 60 Ohio App. 3d 144, 573 N.E.2d 1226 (12 Dist. 1990) (dismissing negligent misrepresentation claim against insurance agent where court decision subsequent to representation rendered opinion on coverage invalid); Indiana Ins. Co. v. Midwest Maintenance, 174 F.Supp.2d 678, 681 (S.D. Ohio 2001) (dismissing misrepresentation claim premised upon opinion on whether insurance contract provided coverage); Owens-Corning

<u>Fiberglas Corp. v. American Centennial Ins. Co.</u>, 74 Ohio Misc. 2d 263, 271, 660 N.E.2d 823, 828 (Lucas CP 1995) (same).

The <u>Kilburn</u> case provides an excellent example why an insurance agent's opinion on the issue of coverage cannot support a negligent misrepresentation claim. In that case, policyholders sued their insurance agent for negligent misrepresentation alleging that the agent misrepresented that the terms of their insurance policy would provide coverage for a father when driving his son's car. <u>Id.</u>, 60 Ohio App.3d at 148, 573 N.E.2d at 1229-30. At the time the agent represented coverage was proper, Ohio law supported that result. <u>Id.</u>, 60 Ohio App.3d at 147, 573 N.E.2d at 1228. Subsequent to the agent's representation, a court decision clarified Ohio law on the issue and decided the issue against the policyholder. <u>Id.</u> When the policyholder sued the insurance agent for negligent misrepresentation, the trial court properly granted a directed verdict because the agent had no reason to know that the insurer would deny coverage under a new legal theory and could not be held liable for a subsequent court decision which created new law on the issue of coverage. <u>Id.</u>, 60 Ohio App. 3d at 149, 573 N.E.2d at 1230.

In the present case, there is no evidence that Genatt had any knowledge that CNA would deny the Mafcote claim based upon a lack of physical damage to a boiler at the RCP facility. Indeed, CNA did not raise this defense throughout the entire adjustment process or in its denial letter to Mafcote, but instead raised the issue for the first time on summary judgment after Mafcote had filed suit. <u>See</u> Bozovich Depo. at p. 65/6 – 66/8 (Ex. "E"). Moreover, the Sixth Circuit itself noted in Mafcote's appeal that there was no Ohio law "on the precise issue presented in this case." <u>See</u> <u>Mafcote v. Continental Cas. Ins. Co.</u>, No. 04-3534 p. 3 (6th Cir. May 17, 2005) (Ex. "K"). After noting conflicting decisions on this legal issue from other jurisdictions, the Sixth Circuit affirmed the trial court and created new law. <u>See</u> Id. at p. 3-6.

Genatt cannot be held to guarantee that CNA would accept every Mafcote claim or that the courts would construe the insurance contract in Mafcote's favor. Even were the Court to accept as true that Genatt represented that the policy provided coverage, such an opinion on the legal issue of coverage is not a factual misrepresentation that can support the claim. Genatt did not insure that Mafcote would succeed on all insurance claims under the policy.

      **c.  Mafcote cannot have relied upon Genatt to represent how to obtain coverage under the policy because Genatt disclaimed any such duty by instructing Mafcote to confirm coverage with CNA**

If Mafcote chooses to premise its negligent misrepresentation claim upon any alleged Genatt representations of coverage after the loss, the claim nonetheless fails because Genatt disclaimed any duty to advise Mafcote on coverage by expressly instructing Mafcote to confirm coverage with CNA. Negligent misrepresentation requires specifically foreseeable reliance as an essential element of the claim. See Lu-An-Do, Inc. v. W. Fred Kloots, Jr., 131 Ohio App. 3d 71, 77, 721 N.E.2d 507, 511 (5th Dist. 1999) (dismissing insurance agent negligent misrepresentation claim where reliance element failed due to disclaimer on certificate of insurance instructing policyholder to confirm terms of its policy). As set forth in Section C.2, supra, Genatt wrote to Mafcote within twenty-four hours after being notified of the claim and specifically instructed Mafcote to confirm all coverage with CNA. See DiGioia Letter dated Aug. 15, 2001 (Ex. "H"). Such disclaimer defeats any reliance that Mafcote can claim upon any alleged Genatt representation of coverage. See Lu-An-Do, 131 Ohio App. 3d at 80, 721 N.E.2d at 514.

     **5.  Mafcote fails to state an Ohio Rev. Code § 4165.02 claim because an opinion on insurance coverage is not a factual misrepresentation**

Mafcote count VI asserts a statutory claim under Ohio Rev. Code § 4165.02 alleging that Genatt misrepresented the characteristics, use, and benefits of the CNA insurance policy. See Mafcote Complaint at §§ 54-57. In deposition, Mafcote's Fed.R.Civ.P. 30(B)(6) witness

confirmed that this claim is premised upon an alleged misrepresentation that the CNA policy covered substitute paper purchases. See Schulman Depo. at p. 85/2-5 (Ex. "_"). Ohio Rev. Code § 4165.02 is a deceptive trade practices remedy. In order to prevail on a § 4165.02 claim, Mafcote must prove a false representation of fact. Like the argument against negligent misrepresentation made by Genatt above, Ohio law is equally clear that § 4165.02 provides a safe harbor for opinions so that only factual misrepresentations violate the statute. See Northeast Ohio College of Massotherapy v. Burek, 144 Ohio App. 3d 196, 207, 759 N.E.2d 869, 878 (7th Dist. 2001) (dismissing § 4165.02 claim premised upon opinion a party would go bankrupt because such opinion "is not a factual assertion"). Therefore, Mafcote likewise cannot premise a § 4165.02 claim upon an opinion that is not a misrepresentation of fact.

### 6. Mafcote Has Stipulated To Dismiss Counts Seven and Eight With Prejudice

During the deposition of Mafcote President Stephen Schulman, Mafcote agreed to dismiss counts VII and VIII from this case. See Schulman Depo. at p. 6/12 – 7/10 (Ex. "B"). Consistent with that stipulation, Genatt asks the Court to dismiss those claims with prejudice.

# V.   **CONCLUSION**

For the reasons set forth above, Genatt Associates asks the Court to grant summary judgment on all Mafcote claims, dismissing this case with prejudice as to any claim against Genatt Associates.

<div style="margin-left: 45%;">

Respectfully submitted,


*s/ David W. Walulik*
David W. Walulik  (Ohio No. 0076079)
Joe Dehner (Ohio No. 0011321)

FROST BROWN TODD LLC
2200 PNC Center
201 East Fifth Street
Cincinnati, Ohio  45202
(513) 651-6800 (phone)
(513) 651-6981 (facsimile)
dwalulik@fbtlaw.com
jdehner@fbtlaw.com

</div>

Dated:   November 16, 2006

## CERTIFICATE OF SERVICE

     This is to certify that on November 16, 2006, a true and correct copy of the foregoing was served upon the following counsel of record via electronic mail and U.S. First Class Mail:

For CNA:

Frederic R. Mindlin
White Fleischner & Fino, LLP
140 Broadway
36th Floor
New York, NY 10005

For Mafcote, Inc.

James H. Greer
Bieser Greer & Landis, LLP
400 National City Center
6 North Main Street
Dayton, Ohio 45402

*s/* David W. Walulik
David W. Walulik

Dated: November 16, 2006