EXHIBIT "A"

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| MAFCOTE, INC., | : | Case No.: 1:04-CV-853 |
| Plaintiff, | : | Judge Dlott |
| v. | : | **GENATT'S PROPOSED UNDISPUTED FACTS IN SUPPORT OF SUMMARY JUDGMENT** |
| GENATT ASSOCIATES, INC | : | |
| Defendant. | : | |

1.  Both Mafcote and Genatt stipulate that Ohio law will govern all claims. See Deposition of Stephen Schulman dated Sept. 18, 2006 at p. 5/14-22 (Ex. "B").

2.  Mafcote admits that the CNA insurance policy procured by Genatt would have provided coverage for Miami Wabash to purchase substitute paper from third parties. See Expert Report of J. Blumberg dated June 30, 2006 at p. 3 (Dkt. 47); Deposition of J. Blumberg dated Sept. 20, 2006 at p. 23/19-24 (Ex. "D").

3.  CNA admits that the CNA insurance policy procured by Genatt would have provided coverage for Miami Wabash to purchase substitute paper from third parties. See Bozovich Depo. at p. 72/6-12 and 73/2-4 (Ex. "E").

4.  Genatt reported the Miami Wabash boiler loss to CNA within 22 minutes after receiving that notice from Mafcote. See Fax letter from S. Schulman to E. DiGioia dated August 14, 2001 11:42 A.M. (Ex. "F"); Property Loss Notice dated August 14, 2001 12:04 P.M. (Ex. "G").

5.  The very next day, Genatt provided Mafcote with the name and contact information of the CNA claims adjuster who would handle the claim. See DiGioia Fax Letter dated August 15, 2001 (Ex. "H").

6.  Ed DiGioia of Genatt wrote to Mafcote the day after the loss was reported and expressed that "purchasing stock from others to maintain production" should fall within the "extra expense" provisions of CNA coverage. See DiGioia Fax Letter dated August 15, 2001 (Ex. "H").

7.  Genatt did not make a representation that Mafcote should purchase any substitute paper, but instead specifically instructed Mafcote that "all of these comments need to be confirmed by the CNA adjustor assigned to the case." Id.

8. Genatt provided the name and number of the relevant CNA claims representative for Mafcote to confirm any purchases. Id.

9. Mafcote admits, however, that it did not confirm purchases before it made them. See Schulman Depo. at p. 100/4-6 (Ex. "B").

10. Mafcote admits that Genatt never advised anyone at Mafcote that RCP purchases would be covered by insurance. See Id. at p. 100/24 – 101/5.

11. Mafcote also admits that Mafcote never discussed with Genatt whether purchases should be made by Miami Wabash or RCP. See Id. at p. 200/7-15.

12. The decision for RCP to purchase replacement paper from third parties was made between July 16-18, 2001. See Schulman Depo. at p. 14/10 – 15/5 (Ex. "B").

13. Mafcote did not notify Genatt of the loss until August 14, 2001. See Id. at p. 90/13 – 91/4.

14. Mafcote tendered the RCP purchases to CNA on October 10, 2001. See Id. at p. 22/24 - 23/8; letter from S. Schulman to N. Bozovich dated October 10, 2001 (Ex. "I").

15. Mafcote admits that it did not inform Genatt that RCP had made purchases until October 15, 2001. See Schulman Depo. at p. 40/14 – 41/2; Letter from S. Schulman to S. Genatt dated Oct. 15, 2001 (Ex. "J").

16. By October 15, 2001, all paper purchases by RCP had been made. See Schulman Depo. at p. 40/14 – 41/2.

17. CNA did not raise the issue of non-coverage for RCP purchases until trial. See Bozovich Depo. at p. 65/6 – 66/8 (Ex. "E"). Indeed, CNA actually considered that it might adjust the loss on the basis of two locations because this would have raised the deductible owed by Mafcote. See Id. at p. 62/6 – 64/8.

18. Mafcote hired and fired four different law firms to litigate the CNA coverage case. See Schulman Depo. at p. 144/6-8 (Ex. "B").

19. Although Miami Wabash lost its boiler on July 16, 2001, Mafcote waited until August 14, 2001 to report that loss to Genatt and CNA. See Schulman Depo. at p. 89/6-10 and 90/13 -91/4 (Ex. "B").

20. In its CNA coverage case, Mafcote admitted that Miami Wabash was unable to produce paper for RCP during those 29 days. See Deposition of S. Schulman dated Feb. 27, 2003 at p. 96/4-12 (Ex. "M")

21. Mafcote has admitted that it resumed production on August 15, 2001 when a temporary boiler was installed. See Mafcote Answer to Genatt RFA No. 5 (Ex. "L").

22. Mafcote has admitted that it only took 24-48 hours to obtain and install that temporary boiler. See Schulman 9/18/06 Depo. at p. 192/22 – 193/9 (Ex. "B").

23. In the earlier CNA coverage case, Mafcote admitted that Miami Wabash could have supplied all RCP orders if a temporary boiler would have been installed by August 13, 2001. See Schulman 2/27/03 Depo. at p. 96/22 – 97/8.

24. Mafcote mistakenly reported the claim to the wrong insurance company on July 27, 2001. See Schulman 9/18/06 Depo. at p. 107/5-15.

25. Mafcote is a multinational corporation with multiple subsidiaries operating on three different continents. See Schulman Depo. at p. 58/8 – 59/14 (Ex. "B").

26. Mafcote's president Stephen Schulman has been responsible for purchasing insurance for all Mafcote affiliates since the early 1970's and has used six different insurance brokers during that time. Id. at p. 70/15 – 71/8.

27. Mr. Schulman holds two different Ivy League degrees, a bachelors in business from Pennsylvania and a masters in business administration from Columbia. Id. at p. 53/10-14.

28. Genatt had no authority to buy insurance without Mafcote's express approval of the policy. See Id. at p. 83/14-23.

29. Mafcote agreed to dismiss counts VII and VIII from this case. See Schulman Depo. at p. 6/12 – 7/10 (Ex. "B").