EXHIBIT "C"

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Mafcote, Inc., )
 )
        Plaintiff, ) Case No. 1:02-CV-411
 )
vs. )
 )
Continental Casualty )
Insurance Company, )
 )
        Defendant. )

## O R D E R

This matter is before the Court on Defendant Continental Casualty Insurance Company's motion for summary judgment (Doc. No. 24). For the reasons set forth below, Defendant's motion is well-taken and is **GRANTED**.

### I. Background

The facts in this case are undisputed. The task before the Court is the application of the undisputed facts to a boiler and machinery insurance policy issued by Continental Casualty Insurance Company ("CCIC") to Plaintiff Mafcote, Inc. and its subsidiaries. Plaintiff Mafcote, Inc. ("Mafcote") is a Delaware corporation with its principal place of business located in Norwalk, Connecticut; Defendant is an Illinois corporation with its principal place of business in Illinois. Notice of Removal (Doc. No. 1) ¶ 4. The amount in controversy is excess of $75,000. Id.

In June 2001, Mafcote purchased from CCIC Boiler and Machinery Insurance Policy BM 1098742493. The policy pays for damage to "covered property" caused by a "covered cause of loss."

The policy defines "covered property" as "property that you own." See Doc. No. 25, Ex. 2, Policy § A(1)(a). A "covered cause of loss" is defined as an "accident" to an "object" shown in the declarations page. Id. § A(3). Moreover, in order to be covered, the "object" must be in use "at the location specified for it at the time of the 'accident.'" Id. An "object" is further defined as "the equipment shown in the Declarations." Id. § F(3). An "accident" is a "sudden and accidental breakdown" of the 'object' or a part of the 'object.'" Id. § F(1).

In addition to coverage for damage to "objects," Mafcote purchased on endorsement for business interruption and extra expense loss. Under this endorsement, the policy pays for "actual loss" and "extra expense" caused by an "accident" to an "object." Endorsement BM 15 33 06 95, at §§ A(1) & (2). In addition, the "object" that is the subject of the "accident" must be at a "location" shown in the endorsement schedule. Id. at § 1(d)(2). In turn, "location" means "the premises at the address shown on the Combined Business Expense Interruption and Extra Expense Schedule." Id. § E(6). "Actual loss" is defined as the "sum of [t]he net profits you fail to earn because of a business interruption resulting from an 'accident.'" Id. § E(1)(a). "Extra Expense" means "the cost of operating your 'business' during the 'Period of restoration' minus what the cost of operating it would have been had no 'accident' occurred. Included in 'Extra Expense' are such necessary items as: emergency services, merchandise or other property of other

2

concerns." Id. § 5(a). Although the word "business" is in quotation marks, normally an indication that the word has its own definition in the writing, no definition of "business" is provided in the policy documents submitted by the parties.[1]

The named insured on the policy is Mafcote, Inc. and various of its subsidiaries, including, as is relevant here, Miami Wabash Paper, LLC. ("Miami Wabash") and Royal Consumer Products, LLC. ("Royal Consumer"). Miami Wabash is located in Franklin, Ohio while Royal Consumer is located in Louisville, Kentucky. As the Court understands the evidence, Miami Wabash manufactures paper and paperboard in what could be described as a raw material state. Miami Wabash then sells the raw material to other manufacturers, who then turn the raw material into the finished product. See Schulman Dep. at 18. On the other hand, Royal Consumer is in the business of turning raw paper material into finished goods, such as food service products and inkjet printer paper. Id. at 13. Although they are both subsidiaries of Mafcote, Royal Consumer purchases raw paper material from Miami Wabash. Id. 21-22.

Around July 16, 2001, the steam boiler at Miami Wabash sustained an accident, as defined in the policy, which rendered it inoperable. The loss of the steam boiler meant that Miami Wabash could not manufacture certain coated paper products until it was fixed or replaced. Schulman Dep. at 51-52. Miami Wabash

---

[1] "Period of restoration" is defined by the endorsement; however that term is not an issue in this case.

3

was able to rent a temporary steam boiler while the original was being repaired. Id. at 60. However, there was about a two day period covered under the policy in which Miami Wabash was unable to manufacture coated paper products.[2]

The loss of the steam boiler at Miami Wabash had a ripple effect in that Royal Consumer had to find a replacement supplier for its coated paper needs. Royal Consumer was compelled to purchase its coated paper from competitors at a price substantially in excess of the price charged by Miami Wabash. In fact, the additional cost to Royal Consumer was approximately $221,000. Complaint ¶ 10.

It is undisputed that CCIC paid Mafcote the cost of having the original boiler repaired as well as the cost of the rental boiler. Schulman Dep. at 63-68; Complaint ¶ 11. CCIC, however refused to pay Mafcote's claim for "Extra Expenses" relating to Royal Consumer's purchase of coated paper from its competitors on the grounds that Royal Consumer had not sustained an "accident" to an "object" under the terms of the policy. In addition, Mafcote claims that it incurred or will incur $35,000

---

[2] It was actually not until about a month after the accident to the original boiler that the temporary boiler could be brought on line. However, due to some internal confusion at Miami Wabash about the identity of the insurer, there was a delay in notifying CCIC about the accident. Under the policy, CCIC's liability for coverage did not arise until it was notified of the accident. Neither the notification provision nor the delay in notifying CCIC of the accident are at issue in this case. See Complaint ¶¶ 6-7.

in "claims preparation expenses" which it claims is due under the policy.

On May 7, 2002, Mafcote filed a two count complaint in the Warren County, Ohio Court of Common Pleas for recovery of "extra expenses" and "claims preparation expenses" allegedly due under the terms of the policy. Pursuant to 28 U.S.C. §§ 1441 & 1446, CCIC removed the case to federal court. The basis for the Court's subject matter jurisdiction is diversity jurisdiction pursuant to 28 U.S.C. § 1332 in that the parties are citizens of different states and the amount in controversy is in excess of $75,000.

CCIC now moves for summary judgment on both counts of the complaint.

## II. Summary Judgment Standard of Review

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The evidence presented on a motion for summary judgment is construed in the light most favorable to the non-moving party, who is given the benefit of all favorable inferences that can be drawn therefrom. United States v. Diebold, Inc., 369 U.S. 654 (1962). "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly

supported motion for summary judgment; the requirement is that there be no _genuine_ issue of _material_ fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)(emphasis in original). The Court will not grant summary judgment unless it is clear that a trial is unnecessary. The threshold inquiry to determine whether there is a need for trial is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson, 477 U.S. at 250. There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Id.

The fact that the weight of the evidence favors the moving party does not authorize a court to grant summary judgment. Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 472 (1962). "[T]he issue of material fact required by Rule 56(c) . . . to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence; rather, all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or a judge to resolve the parties' differing versions of the truth at trial." First National Bank v. Cities Service Co., 391 U.S. 253, 288-89 (1968).

Moreover, although summary judgment must be used with extreme caution since it operates to deny a litigant his day in

court, Smith v. Hudson, 600 F.2d 60, 63 (6th Cir.), cert. dismissed, 444 U.S. 986 (1979), the United States Supreme Court has stated that the "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986). According to the Supreme Court, the standard for granting summary judgment mirrors the standard for a directed verdict, and thus summary judgment is appropriate if the moving party establishes that there is insufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Id. at 323; Anderson, 477 U.S. at 250.

Accordingly, summary judgment is clearly proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322. Significantly, the Supreme Court also instructs that the "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion" against a party who fails to make that showing with significantly probative evidence. Id.; Anderson, 477 U.S. at 250. Rule 56(e) requires the non-moving

party to go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." Id.

Further, there is no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or similar materials negating the opponent's claim. Id. Rule 56(a) and (b) provide that parties may move for summary judgment "with or without supporting affidavits." Accordingly, where the non-moving party will bear the burden of proof at trial on a dispositive issue, summary judgment may be appropriate based solely on the pleadings, depositions, answers to interrogatories, and admissions on file.

III. Analysis

As stated earlier, the facts of this case are uncontroverted. Therefore, this case presents only a matter of contract interpretation. The parties concur that Ohio law controls the interpretation of the policy so the Court shall assume that is the case. See Doc. No. 24, at 7; Doc. No. 26, at 11.

In reviewing the issue of coverage under a policy, insurance policies are generally interpreted in accordance with the same rules as other types of contracts. Hybud Equip. Corp. v. Sphere Drake Ins. Co. 597 N.E.2d 1096, 1101-1102 (Ohio 1992). When a contractual provision is ambiguous, it must be strictly construed against the drafter. McKay Machine Co. v. Rodman, 228 N.E.2d 304, 307 (Ohio 1967). When the language of an insurance

policy is determined to be doubtful, uncertain or ambiguous, the language will be construed strictly against the insurer and liberally in favor of the insured party. Faruque v. Provident Life & Acc. Ins. Co., 508 N.E.2d 949, 952 (Ohio 1987). If, however, the terms of the insurance policy are clear and unambiguous, the interpretation of the policy is a matter of law. Inland Refuse Transfer Co. v. Browning-Ferris Industries of Ohio, Inc., 474 N.E.2d 271, 272-273 (Ohio 1984). Therefore, the issue of coverage under a policy may be appropriately resolved upon summary judgment. Id. In determining whether ambiguities or uncertainties exist within the insurance policy, words and phrases in the policy will be given their plain and ordinary meaning absent specific contractual definitions. Watkins v. Brown, 646 N.E.2d 485, 487 (Ohio Ct. App. 1994). Coverage must be determined by a reasonable construction of the document in conformity with the intention of the parties as gathered from the ordinary and commonly understood meaning of the language actually employed. Cincinnati Ins. Co. v. Am. Line Builders, 638 N.E.2d 1047, 1048-1049 (Ohio Ct. App. 1994).

With this standard in mind the Court turns to the claims at issue in this case.

### A. Claim for Extra Expense

Mafcote's claim for extra expense coverage is based on the additional cost to Royal Consumer to purchase paper products that would have been supplied to it by Miami Wabash but for the accident to the boiler at Miami Wabash. CCIC argues that Mafcote

is not entitled to extra expense coverage because Miami Wabash and Royal Consumer are separate entities, and are treated as separate entities under the policy, and the accident at issue here occurred at Miami Wabash's facilities and not Royal Consumer's facilities. The Court agrees that CCIC's interpretation of the policy here is correct.

It is clear that even though Mafcote and all of its individual subsidiaries are listed separately as named insureds under the policy, it now wishes to be treated under the policy as if they constitute a single entity. The law is equally clear, however, that a parent corporation and its subsidiaries should be treated as separate entities even where, as here, the parent owns all or most of the shares of the subsidiary. Mutual Holding Co. v. Limbach, 641 N.E.2d 1080, 1081 (Ohio 1994); Hoover Universal, Inc. v. Limbach, 575 N.E.2d 811, 814 (Ohio 1991). Ohio law also treats parents and subsidiaries as separate and distinct entities when both are named insureds on a policy of insurance. See Linko v. Indemnity Ins. Co. of North Am., 739 N.E.2d 338, 342 (Ohio 2000)(holding that parent company could not waive uninsured motorist coverage on behalf of subsidiary without written authorization from subsidiary). Moreover, as CCIC correctly argues, the listing of Mafcote and its subsidiaries individually as named insureds evidences that the parties intended to treat Mafcote and the subsidiaries separately. See 3 COUCH ON INSURANCE § 40:15 (3rd. ed. 2003) ("Where a parent and its subsidiaries are covered by the same policy, rights of subsidiary are wholly

separate and parent has no right to recover for loss suffered by subsidiary."). In order to treat the named insureds as a single entity for purposes of coverage, the Court would be required to ignore the realities of the various corporate forms established by Mafcote as well as contravene the intention of the parties, as expressed in the policy, to treat them separately.

Having found that Mafcote and its subsidiary corporations should be treated distinctly under the policy, the remainder of the analysis falls into place. The plain language of the policy only covers losses caused by an "accident" to an "object" at a "location" of the named insured. See Business Interruption & Extra Expense Endorsement §§ A(1), A(2), E(5), E(6). In this case, coverage for the extra expense incurred by Royal Consumer is not triggered for anyone or all of the following reasons:

> 1) the location of the object of the named insured who had the accident was not Royal Consumer, but rather Miami Wabash. Thus, Royal Consumer, as a named insured, did not suffer an "accident";
>
> 2) alternatively, if the named insured is Miami Wabash, because the accident occurred at Miami Wabash, and the "extra expense" here was incurred by Royal Consumer, Miami Wabash did not have any extra expense loss; or,
>
> 3) because Mafcote, Miami Wabash, and Royal Consumer are separate entities, Mafcote, as a named insured and the plaintiff in this case, suffered neither an "accident" nor an "extra expense" loss.

In any event, it is plain that under the circumstances of this case, CCIC's extra expense liability under the policy did not arise.

Accordingly, CCIC's motion for summary judgment on Mafcote's claim for extra expense coverage is well-taken and is **GRANTED**.

B. <u>Claims Preparation Expense Coverage</u>

Mafcote also claims coverage for expenses it incurred and is likely to incur in preparing, submitting, and adjusting its claim. Mafcote identifies these expenditures as accounting, engineering, architectural, and auditing expenses. Doc. No. 26, at 2. Mafcote, however, has not identified any provision of the policy which requires CCIC to reimburse the insured for expenses it incurred in assembling and assessing the information needed to submit its claim for coverage. The burden is on the insured to show that its loss is covered by the terms of the policy. <u>Sterling Merchandise Co. v. Hartford Ins. Co.</u>, 506 N.E.2d 1192, 1198 (Ohio Ct. App. 1986). In this case, having failed to identify a section of the policy which even arguably covers a claim for claim preparation expenses, Mafcote has not met its burden on summary judgment of showing an issue of fact regarding its entitlement to coverage under the policy.

Accordingly, CCIC's motion for summary judgment on Mafcote's claim for claim preparation expenses is well-taken and is **GRANTED**.

Conclusion

In conclusion, Continental Casualty Insurance Company's motion for summary judgment is well-taken and is **GRANTED** in all

respects. Plaintiff's complaint is **DISMISSED WITH PREJUDICE. THIS CASE IS CLOSED.**

**IT IS SO ORDERED**

Date March 25, 2004                    s/Sandra S. Beckwith
                                       Sandra S. Beckwith
                                       United States District Judge