EXHIBIT "K"

**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

No. 04-3534

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

MAY 1 7 2005

LEONARD GREEN, Clerk

MAFCOTE, INC.,

    Plaintiff-Appellant,

v.

CONTINENTAL CASUALTY INSURANCE COMPANY,

    Defendant-Appellee.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO

————————————————————/

BEFORE:    MARTIN, COOK, and LAY[*], Circuit Judges.

    PER CURIAM.  Mafcote, Inc. ("Mafcote") appeals the district court's[1] grant of summary judgment to the Defendant, Continental Casualty Insurance Company ("Continental"), in a dispute over coverage under a casualty and business interruption policy that Continental issued to Mafcote. We affirm the district court.

## I.

    The underlying facts are not in dispute.  Mafcote is an industrial manufacturer and distributor of paper products.  Mafcote's subsidiary, Royal Consumer Products, LLC ("Royal"), purchased raw

---

    [*]The Honorable Donald P. Lay, United States Circuit Judge for the Eighth Circuit, sitting by designation.

    [1]The Honorable Sandra S. Beckwith, United States District Judge for the Southern District of Ohio, presiding.

No. 04-3534
*Mafcote v. Continental Casualty*
Page 2

materials from another Mafcote subsidiary, Miami Wabash. On or about July 16, 2001, Miami

Wabash's steam boiler failed, temporarily interrupting its coated paper production. After a

temporary boiler was installed and coated paper production resumed, Miami Wabash prioritized its

backlog by filling orders for outside customers before filling orders for its affiliates. This caused a

critical material shortage for Royal, forcing it to purchase coated paper on the open market at a

premium of $220,697.61.

At the time of the mechanical failure, Mafcote held a boiler and machinery equipment policy

issued by Continental (the "Policy"). While the exact contours of the Policy are contested, the

parties agree that it generally contemplated business interruption and extra expense coverage for

losses caused by mechanical failures. Continental fully indemnified Miami Wabash for the cost of

installing a temporary boiler and fixing its main boiler, but denied Mafcote's claim for business

interruption and extra expenses incurred by Royal.

## II.

The issue before us on appeal is whether the terms of the Policy provide coverage to each

subsidiary individually or collective coverage to Mafcote and all of its subsidiaries. The parties

agree that the laws of the State of Ohio control in this diversity action.

We review the district court's entry of summary judgment *de novo. Employers Ins. of
Wausau v. Petroleum Specialties, Inc.*, 69 F.3d 98, 101 (6th Cir. 1995). Our task is not to "weigh

the evidence and determine the truth of the matter but to determine whether there is a genuine issue

for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A genuine issue for trial exists

only where there is sufficient evidence on which the jury could reasonably find for the non-moving

No. 04-3534
*Mafcote v. Continental Casualty*
Page 3

party. *Id.* at 252. Accordingly, we will affirm the district court if there are no material facts in

dispute and the moving party is entitled to judgment as a matter of law. *See* FED.R.CIV.P. 56(c).

While the Ohio Supreme Court has not ruled on the precise issue presented in this case, Ohio

case law strongly suggests that, lacking contractual language to the contrary, multiple corporate

entities listed as named insured parties are covered individually, not collectively. "Parent and

subsidiary corporations are distinct legal entities." *Hoover Universal, Inc. v. Limbach*, 575 N.E.2d

811, 814 (Ohio 1991). As separate legal entities, each named insured corporation has distinct rights

and obligations when both are listed as named insured parties on an insurance policy. *Linko v.*

*Indemn. Ins. Co. of N. Am.*, 739 N.E.2d 338, 343 (Ohio 2000) (holding that parent corporation could

not waive uninsured motorist/under insured motorist coverage without written consent of

subsidiary). This distinction of legal entities continues when the parent corporation owns all of the

outstanding stock of the subsidiary. *Mut. Holding Co. v. Limbach*, 641 N.E.2d 1080, 1081 (Ohio

1994). Likewise, this distinction continues if the parent and the subsidiary act through common

employees, have integrated operations, and carry on a close working relationship. *Inlow v. Davis*,

No. CA2002-08-071, 2003 WL 21373154, *4 (Ohio Ct. App. Jun. 16, 2003) (unpublished).

This result is consistent with other state court decisions addressing the same issue on similar

facts. *See e.g. Unijax, Inc. v. Factory Ins. Ass'n*, 328 So.2d 448, 452 (Fla. Dist. Ct. App. 1976)

(holding that parent corporation could not recover for its lost profits incurred after subsidiary

suffered a fire even though both were listed as named insured on the business interruption insurance

policy); *Gordon Chem. Co., Inc. v. Aetna Cas. & Sur. Co.*, 266 N.E.2d 653, 657 (Mass. 1971)

(rejecting insurer's argument that all corporations named as insured on policy should be treated as

No. 04-3534
*Mafcote v. Continental Casualty*
Page 4

one entity under policy when calculating loss of net profits under a business interruption policy after

destruction of one subsidiary's manufacturing facility); see also 3 COUCH ON INSURANCE § 40:15

(3rd ed. 2003) ("Where a parent corporation and it subsidiaries are covered by the same policy, rights

of subsidiaries are wholly separate and [the] parent has no right to recover for loss suffered by

subsidiary."); *compare Wood Goods Galore, Inc. v. Reinsurance Ass'n of Minn.*, 478 N.W.2d 205,

210 (Minn. Ct. App. 1991) (allowing insured to recover under business interruption policy for lost

retail sales at one location after an accident at its remote manufacturing facility since both facilities

were owned by a single corporate entity); *contra Nat'l Union Fire Ins. Co. of Pittsburgh v.*

*Anderson-Prichard Oil Corp.*, 141 F.2d 443, 446 (10th Cir. 1944) (holding that parent corporation

could recover under business interruption policy for lost profits of one subsidiary resulting from

accident at a separate subsidiary since the two were "integrated" operations).

We agree with the district court that, under Ohio law, the Policy provides for individual, not

collective coverage. Each of Mafcote's subsidiaries were listed as a named insured under the Policy.

Mafcote and its several subsidiaries entered into the Policy with distinct corporate identities and

distinct rights. *See Hoover*, 575 N.E.2d at 814. One subsidiary could not have legally waived a

sister subsidiary's rights under the Policy without authorization. *See Linko*, 739 N.E.2d at 343. By

analogy, one subsidiary could not have enjoyed a sister subsidiary's rights under the Policy without

contractual language to the contrary. Such language is lacking in the Policy.

While the Policy listed the several subsidiaries as named insured parties, it contained no

language creating additional rights for one subsidiary to recover for a loss experienced by another.

Likewise, the Policy contained no language specifying that the several subsidiaries would be treated

No. 04-3534
*Mafcote v. Continental Casualty*
Page 5

as a single entity.  The complete absence of "right sharing" or "identity sharing" language in the

Policy does not render the Policy ambiguous, rather it demonstrates that the parties did not include

such additional rights and obligations as part of the Policy.  Accordingly, we hold that the Policy

insured each subsidiary individually, not collectively.

With this established, we turn to the Policy to determine what coverage, if any, a subsidiary

could expect under the circumstances.

> We will pay you for your "Actual Loss" and "Extra Expense" during the "Period of Restoration" provided all of the following requirements are met: a. The "Actual Loss" and "Extra Expense" must be caused solely by an "accident" to an "object"; b. The loss must be as a result of direct physical damage to Covered Property; . . . d. The "object" that has the "accident" must be . . . (2) At a "location" shown in the Combined Business Interruption and Extra Expense Schedule.

The "Multiple Location Schedule" listed all of the subsidiaries' locations.

The language of the Policy limited Continental's liability to an insured party's business

interruption losses caused by an "accident" to an "object" at a "location" owned by that insured

party.  Under the terms of the Policy, Mafcote cannot recover because it suffered no loss--Royal

suffered the loss..  Likewise, Miami Wabash cannot recover for a business interruption loss because

it suffered only a casualty loss (which Continental paid).  Lastly, Royal cannot recover for its

business interruption loss because it was not caused by an accident at one of its locations; the

accident occurred at Miami Wabash's location. Each of these claims is missing an essential element

to recover under the Policy.  Summary judgment is proper "against a party who fails to make a

showing sufficient to establish the existence of an element essential to that party's case, and on

No. 04-3534
*Mafcote v. Continental Casualty*
Page 6

which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

For the first time on appeal, Mafcote argues that Miami Wabash experienced a covered business interruption loss under the Policy because it is liable to Royal in the amount of $221,000 for defaulting on its supply contract with Royal. We note that Miami Wabash never filed a claim for such a loss with Continental and that there is no record evidence that Miami Wabash actually suffered this loss. We further note that this argument was not raised below. "[T]he general rule is that this court will not consider issues not raised in the district court." *Wright v. Holbrook*, 794 F.2d 1152, 1157 (6th Cir. 1986) (citations omitted). Accordingly, we decline to consider this issue for the first time on appeal.

The district court is affirmed.