EXHIBIT "N"

**ALL ERECTION & CRANE RENTAL CORPORATION, Plaintiff-Appellant, v. ACORDIA NORTHWEST, INC., and SWETT & CRAWFORD, INC., Defendants-Appellees.**

No. 04-3862

UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

06a0046n.06;

162 Fed. Appx. 554; 2006 U.S. App. LEXIS 1444

January 18, 2006, Filed

**NOTICE:** [**1] NOT RECOMMENDED FOR FULL-TEXT PUBLICATION. SIXTH CIRCUIT RULE 28(g) LIMITS CITATION TO SPECIFIC SITUATIONS. PLEASE SEE RULE 28(g) BEFORE CITING IN A PROCEEDING IN A COURT IN THE SIXTH CIRCUIT. IF CITED, A COPY MUST BE SERVED ON OTHER PARTIES AND THE COURT. THIS NOTICE IS TO BE PROMINENTLY DISPLAYED IF THIS DECISION IS REPRODUCED.

**PRIOR HISTORY:** ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff corporation challenged a decision from the United States District Court for the Northern District of Ohio, which granted summary judgment in favor of defendant brokers in a case alleging negligence, breach of fiduciary duty, breach of the duty of good faith and fair dealing, fraud, misrepresentation, and civil conspiracy.

**OVERVIEW:** The corporation worked with the brokers regarding finding an insurance carrier. The insurance was later cancelled due to the amount of losses suffered. After the causes of action against the brokers were dismissed, the corporation sought review. In affirming, the court determined that the dismissal of the negligence claims was proper because the corporation was seeking purely economic damages. The fact that there was no privity of contract was relevant only to the extent that one litigant was a non-commerical party, which was not the case. Next, the corporation failed to establish a civil conspiracy. A breach of contract did not form the basis

for a conspiracy claim, and non-contracting parties could not have conspired to breach a contract. Finally, the court held that the rest of the issues were not properly preserved for appellate review.

**OUTCOME:** The decision was affirmed.

**CORE TERMS:** summary judgment, cancellation, civil conspiracy, unlawful act, coverage, breach of contract, economic loss, fair dealing, carrier, broker, surplus, renewal, retail, fraudulent misrepresentation, misrepresentation, anniversary, privity, breach of fiduciary duty, privity of contract, negligence claim, insurance policy, predecessor, wholesale, updated, insurer, cancel, de novo, non-commercial, malicious, waived

**LexisNexis(R) Headnotes**

*Civil Procedure > Summary Judgment > Appellate Review > Standards of Review*
[HN1] An appellate court reviews a district court's entry of summary judgment de novo.

*Civil Procedure > Appeals > Standards of Review > De Novo Review*
*Governments > Legislation > Interpretation*
[HN2] A district court's interpretation of state law is governed by the de novo standard.

*Civil Procedure > Summary Judgment > Standards > General Overview*
[HN3] Summary judgment is proper when there are no genuine issues of material fact in dispute and the moving

party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A genuine issue for trial exists only when there is sufficient evidence on which the jury could reasonably find for the plaintiff.

*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Failures to State Claims*
*Civil Procedure > Appeals > Standards of Review > De Novo Review*
[HN4] An appellate court reviews a district court's order of dismissal pursuant to Fed. R. Civ. P. 12(b)(6) de novo.

*Torts > Negligence > Defenses > General Overview*
[HN5] A plaintiff who has suffered only economic loss due to another's negligence has not been injured in a manner which is legally cognizable or compensable. Parties lacking privity might be subject to the economic loss rule under some circumstances, and commercial parties lacking privity, as opposed to non-commercial parties, are foreclosed from recovering economic losses. As between commercial parties, then, the allocation of risks in accordance with their agreement better serves the public interest than an allocation achieved as a matter of policy without reference to that agreement.

*Torts > Procedure > Multiple Defendants > Concerted Action > Civil Conspiracy > Elements*
[HN6] A civil conspiracy is the malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in actual damages. No cause of action for civil conspiracy exists without an underlying unlawful act. Indeed, the element of "malicious combination to injure" does not require a showing of an express agreement between defendants, but only a common understanding or design, even if tacit, to commit an unlawful act.

*Torts > Procedure > Multiple Defendants > Concerted Action > Civil Conspiracy > Defenses*
[HN7] A party cannot be held liable for conspiring to breach his own contract.

*Civil Procedure > Appeals > Reviewability > Preservation for Review*
[HN8] Appellate courts do not consider issues not presented to the district court.

**COUNSEL:** For ALL ERECTION & CRANE RENTAL CORP., Plaintiff - Appellant: Leonard F. Carr, Leonard F. Carr Company, Mayfield Heights, OH; L.

Bryan Carr, L. Bryan Carr Company, Mayfield Heights, OH.

For ACORDIA NORTHEAST, INC., Defendant - Appellee: Andrew J. Dorman, Ellyn Tamulewicz Mehendale, Janik & Dorman, Cleveland, OH.

For SWETT & CRAWFORD, Defendant - Appellee: Michael K. Farrell, James A. Slater, Jr., Baker & Hostetler, Cleveland, OH.

**JUDGES:** BEFORE: SILER and GRIFFIN, Circuit Judges; and TARNOW, District Judge.*

* The Honorable Arthur J. Tarnow, United States District Judge for the Eastern District of Michigan, sitting by designation.

**OPINION:**

[*555] PER CURIAM.

Plaintiff All Erection & Crane Rental Corporation ("All Crane") appeals a summary judgment entered in the district [**2] court in favor of defendants Acordia Northeast, Inc. ("Acordia"), and Swett & Crawford ("S&C"). All Crane's complaint, filed originally against Acordia, S&C, and Royal Surplus Lines Insurance Company ("Royal"), arose from the cancellation of an insurance policy purchased by All Crane. n1 All Crane first asserts that the district court improperly granted summary judgment on its negligence claims. Second, All Crane contends that the court incorrectly held that defendants owed no fiduciary duty to All Crane. Third, All Crane assigns error to the district court's grant of summary judgment in favor of defendants on its claim for breach of the duty of good faith and fair dealing. Finally, All Crane argues that summary judgment was unwarranted on its claims of fraud, misrepresentation, and civil conspiracy. For the reasons set forth below, we affirm.

n1 All Crane's complaint also originally listed Acordia employees Bette Gillum and Ronald Lenart and S&C employee William Trumblower individually. All Crane does not list them as appellees in this appeal.

[**3]

I.

Plaintiff All Crane is an Ohio corporation engaged in the business of renting large construction cranes. In or around 1998, All Crane contracted with Acordia, a New Jersey retail insurance broker, to seek out potential insurance carriers capable of offering two-year coverage

commitments. n2 Acordia, in turn, retained S&C, a Pennsylvania partnership, to serve as the intermediary broker. n3 Acordia and S&C selected Royal as a suitable insurance provider for All Crane. The parties' communications between one another thereafter operated as follows: All Crane dealt with Acordia, Acordia interacted with S&C, and S&C dealt with Royal. No contractual relationship existed between All Crane and S&C.

> n2 Acordia is an independent retail insurance agency, which aids clients in obtaining insurance from carriers. Acordia is not an insurance carrier. Retail brokers are not permitted to directly obtain quotes from surplus line insurers, like Royal. Thus, retail brokers like Acordia must contact a wholesale broker like S&C, which is capable of approaching the "surplus" market to obtain insurance rate quotes.

[**4]

> n3 S&C is an independent wholesale insurance broker, which is capable of securing quotations from "surplus carriers." A "surplus carrier" is not licensed to issue insurance in Ohio and generally writes insurance for high-risk accounts like those arising in the crane industry. Surplus carriers typically do not have direct contact with retail brokers, like Acordia, and choose instead to work through wholesale brokers like S&C.

Royal provided a policy of commercial liability insurance coverage to All Crane effective from March 25, 1998, to March 25, 1999 (hereinafter "the 1998 Policy"). Included among the policy's provisions was the following:

> SECOND YEAR RATE GUARANTEE ENDORSEMENT. It is hereby agreed and understood that if the loss ratio at anniversary on an incurred basis exceeds 100%, the policy is subject to anniversary rerating with an increase in rate not to exceed 25%.

The 1998 Policy likewise contained the following provision governing "cancellation" of the policy:

> We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation [**5] at least:
>
> [*556] a. 10 days before the effective date of cancellation if we cancel for non-payment of premium; or
>
> b. [60] days before the effective date of cancellation if we cancel for any other reason. n4

> n4 The cancellation provision was modified by a Cancellation Amendment, which extended the notice period from thirty to sixty days.

In an effort to restructure All Crane's insurance program, Acordia and All Crane entered into a Risk Management Service Agreement ("RMSA") on January 28, 1999. In doing so, Acordia agreed to administer All Crane's property and casualty coverages. The RMSA expressly noted that Acordia was to pay "particular attention" to "multi-rate guarantees and structuring the proper coverages to address [All Crane's] exposure to loss." For this effort, Acordia earned the monthly sum of $ 10,000, with the possibility of earning an additional $ 10,000 "for negotiating a two-year rate guarantee."

Royal thereafter issued a second general liability insurance policy to All Crane, with [**6] coverage beginning on March 25, 1999, and ending on March 25, 2000 (hereinafter "the 1999 Policy"). Like its predecessor, the 1999 Policy included a second-year guarantee endorsement with the following similar language:

> SECOND YEAR RATE GUARANTEE ENDORSEMENT. It is hereby agreed and understood that if the loss ratio at anniversary on an incurred basis exceeds 60%, the policy is subject to anniversary rerating with an increase in rate not to exceed 25%.

Also, like the 1998 Policy, the 1999 Policy included an identical cancellation provision.

In early 2000, discussions regarding a renewal policy began between Acordia, S&C, and Royal. In furtherance of those negotiations, Royal sought updated loss information from All Crane during the years 1996 and 1997. Armed with only "some" of the updated information, Royal informed S&C that it did not intend to renew

the 1999 Policy because of losses it had experienced while insuring All Crane for the years 1998 and 1999. When All Crane thereafter learned of Royal's decision from Acordia, All Crane responded with its belief that the "Second Year Rate Guarantee Endorsement" obligated Royal to offer a renewal policy for the year 2000 [**7] at a premium rate not to exceed a twenty-five percent increase over the 1999 rate.

A conference call between Acordia, S&C, and Royal then took place on January 27, 2000, in an effort to resolve All Crane's insurance situation. n5 Several options were apparently discussed, including the possibility of renewing the policy and then cancelling it, thereby allowing Acordia the time to find a replacement carrier for All Crane. The call ended without a resolution on how to proceed.

> n5 An Acordia representative recorded the call.

In or around February 2000, Acordia representatives again spoke with members of Royal's management and, after some discussion, Royal issued a new policy with coverage beginning on March 25, 2000, and terminating on March 25, 2001 ("the 2000 Policy"). Like its predecessors, the 2000 Policy contained a sixty-day cancellation provision. Unlike Royal's prior policies, continued coverage pursuant to the 2000 Policy was conditioned on Royal's ability to review the totality of the losses incurred [**8] by All Crane's predecessor insurance company, AIG, for the 1996-1997 period. n6

> n6 Specifically, Royal addressed a letter to Acordia on April 18, 2000, indicating as follows:
>
>> Please be advised that this policy was bound subject to currently valued loss runs for 1996 & 1997 and the most recent audited financial statements, which, I don't believe we have received. Please forward them to my attention as soon as possible. Our underwriter advised if they do not receive them by 5/12/00, legal notice of cancellation will be sent.

On or around May 23, 2000, Royal finally received the updated 1996-1997 loss information. [*557] After reviewing the information, Royal learned that All Crane's loss values were substantially worse than expected. Thus, on May 25, 2000, Royal cancelled the policy and informed S&C. After Acordia informed All Crane, All Crane requested an explanation for the cancellation. Acordia relayed that request to S&C, which thereafter forwarded the request to Royal. By letter dated June 20, 2000, Royal [**9] indicated that it cancelled the 2000 Policy because the 1996 and 1997 loss information "presented a drastically different and greatly inflated loss picture." The letter further noted that "the insured's loss profile has continued to deteriorate, consistent with the loss information that was not supplied early on in the relationship. Consequently, we need to recognize that the pricing structure in place cannot support the exposure potential." Pursuant to the terms of the cancellation provision, Royal continued to insure All Crane until the expiration of sixty days on July 27, 2000.

On May 25, 2001, All Crane filed suit in the Northern District of Ohio against Acordia, S&C, Royal, and Ron Lenart, an Acordia employee. The complaint alleged counts of negligence against all defendants, breach of fiduciary duty against Acordia and S&C, breach of contract against Royal, breach of the duty of good faith and fair dealing against all defendants, civil conspiracy against all defendants, fraud against all defendants, fraudulent misrepresentation against all defendants, and violations of the Racketeering Influenced and Corrupt Organizations Act ("RICO") against all defendants. Defendants Royal [**10] and Acordia sought dismissal of the presented claims via motion on August 1, 2001. n7

> n7 Defendant Royal filed the motion to dismiss, and Acordia filed a motion to join Royal's motion, which the court granted.

In response, the district court issued an order dated November 4, 2002, granting in part and denying in part defendants' motion. Specifically, the court dismissed All Crane's negligence and RICO claims noting that, with regard to its negligence claim, All Crane claimed purely economic damages against parties with whom it had a contractual relationship. Thus, the court concluded, "because Ohio law prohibits economic recovery when the parties are in privity of contract, Plaintiff may not maintain its negligence claim." The court thereafter dismissed All Crane's civil RICO claims noting that, to establish a civil RICO claim, a plaintiff must show (1) conduct, (2) of an enterprise (3) through a pattern (4) of racketeering activity. In this case, according to the court, All Crane's complaint failed even to address [**11] each of the prerequisite elements necessary to state a claim for civil RICO. The court did, however, conclude that All Crane stated claims for breach of fiduciary duty, breach of con-

tract, breach of the duty of good faith and fair dealing, civil conspiracy, fraud and fraudulent misrepresentation.

After conducting discovery, the parties filed cross-motions for summary judgment on September 29, 2003. Thus, specifically pending before the court were (1) All Crane's motion for partial summary judgment on its breach of contract claim against Royal, (2) S&C's motion for summary judgment, (3) Royal's motion for summary judgment, and (4) Acordia's motion for summary judgment.

In response, the court issued an order dated April 9, 2004, granting summary judgment in favor of All Crane on its breach of contract claim against Royal. n8 [*558] The court likewise entered summary judgment in favor of Acordia and S&C, thereby eliminating the balance of All Crane's claims. First, in response to All Crane's negligence claim against S&C, the court concluded that "All Crane has not come forth with any evidence establishing that S&C caused any harm to All Crane." Moreover, the court again concluded that All [**12] Crane's damages allegations comprised solely economic damages and, although All Crane and S&C lacked contractual privity, the court held that "commercial parties lacking privity are subject to the economic loss rule."

> n8 The court also granted in part and denied in part Royal's motion for summary judgment, thus leaving a portion of All Crane's claims intact. Accordingly, the court initially set the matter for trial. Following the entry of summary judgment on this count, however, All Crane settled its breach of contract claim against Royal.

The court then discussed All Crane's claims against Acordia and S&C for breach of fiduciary duty. Noting that All Crane failed to respond to Acordia's and S&C's arguments that their relationship with All Crane was nothing more than an ordinary business relationship, the court granted summary judgment in favor of Acordia and S&C. In response to All Crane's breach of the duty of good faith and fair dealing claims, the court highlighted that both Acordia and S&C contend that "they [**13] are each entitled to summary judgment on this claim because under Ohio law, this duty only arises between an insurer and its insured, and only where there is an underlying contract between the parties." After noting that, again, All Crane had failed to respond to such arguments, the court found Acordia's and S&C's position was well-supported and therefore granted summary judgment to them on All Crane's breach of good faith and fair dealing claims.

Moving next to All Crane's civil conspiracy claim, the court agreed with Acordia and S&C that All Crane's claim failed to set forth the requisite elements; in particular, the existence of an underlying unlawful act. The court noted that All Crane asserted the breach of the insurance contract as an underlying unlawful act which, as to Acordia, "cannot form the basis of a conspiracy claim[.]" As for S&C, the court held that, as a non-contracting party, S&C could not have conspired to breach the contract.

Finally, the court granted summary judgment to S&C and Acordia on All Crane's fraud and fraudulent misrepresentation claims. In doing so, the court observed that "All Crane has not produced any evidence that Acordia knew of, or participated [**14] in, Royal's initial decision on January 13, 2000 not to renew the policy." Instead, the court noted, it was Acordia that worked to talk Royal into renewal. According to the court, "these facts establish that Acordia did not knowingly make any false representations to All Crane." The court thereafter agreed with S&C's arguments that "All Crane's fraud and fraudulent misrepresentation claims fail because S&C never made any representations to All Crane." All Crane declined to provide the court with responsive arguments.

This timely appeal followed.

## II.

[HN1] We review the district court's entry of summary judgment de novo. *McWane, Inc. v. Fid. & Deposit Co. of Md.,* 372 F.3d 798, 802 (6th Cir. 2004). [HN2] A district court's interpretation of state law is likewise governed by the de novo standard. *Ferro v. Garrison Ind., Inc.,* 142 F.3d 926, 931 (6th Cir. 1998). [HN3] Summary judgment is proper when there are no genuine issues of material fact in dispute and the moving party is [*559] entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). A genuine issue for trial exists only when there is sufficient "evidence on which the jury [**15] could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986); *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986) (noting that, in deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the non-moving party). [HN4] We also review a district court's order of dismissal pursuant to FED. R. CIV. P. 12(b)(6) de novo. *Weiner v. Klais & Co., Inc.,* 108 F.3d 86, 88 (6th Cir. 1997).

## III.

All Crane first argues that the district court erred in granting the motions to dismiss and thereafter entering summary judgment in favor of defendants. Specifically,

it contends that the court improperly limited its discussion solely to the economic loss rule. Rather than focus solely on the economic loss rule, All Crane urges us to view this case from the perspective of an insurance agent, who owes to its client a duty to exercise good faith and reasonable diligence in undertaking the acquisition of coverage. From that viewpoint, according to All Crane, it was a negligent breach of that duty [**16] for Acordia and S&C to allow a policy renewal problem to develop with Royal. All Crane further highlights the "pretextual" renewal of its insurance policy, arguing that Acordia, in particular, negligently failed to timely obtain current loss information from All Crane's prior insurer, AIG, "which contributed to Royal cancelling the policy[.]" At a minimum, All Crane concludes the foregoing arguments create an issue of fact with regard to "the extent and nature of insurance coverage and whether an agent breached any of its duties." We disagree.

A host of reasons exist to affirm the district court's dismissal of All Crane's negligence claims against Acordia and subsequent award of summary judgment to S&C on All Crane's negligence claims. As a general matter, it is undisputed that All Crane seeks purely economic damages arising from Royal's mid-term cancellation of the 2000 Policy. The district court therefore properly cited and focused on the well-established rule that [HN5] "a plaintiff who has suffered only economic loss due to another's negligence has not been injured in a manner which is legally cognizable or compensable." *Chemtrol Adhesives, Inc. v. Am. Mfrs. Mut. Ins. Co.*, 42 Ohio St. 3d 40, 537 N.E.2d 624, 630 (Ohio 1989) [**17] (internal citation and quotation marks omitted). Although All Crane was not in privity of contract with S&C, whether parties were in privity of contract is relevant only to the extent that at least one litigant is a non-commercial entity. *HDM Flugservice GmbH v. Parker Hannifin Corp.*, 332 F.3d 1025, 1029-30 (6th Cir. 2003) (interpreting Ohio's economic loss rule and agreeing that "parties lacking privity might be subject to the economic loss rule under some circumstances and that commercial parties lacking privity, as opposed to non-commercial parties, would be foreclosed from recovering economic losses"). Both S&C and All Crane are commercial parties, as opposed to private consumers and, as a result, All Crane's remedies are more properly restricted either to a traditional breach of contract claim or, if available, to the remedies provided by the Uniform Commercial Code. *Id.* at 1030; *see Midwest Ford v. C. T. Taylor Co., Inc.*, 118 Ohio App. 3d 798, 694 N.E.2d 114, 118-19 (Ohio Ct. App. 1997) ("As between commercial parties, then, the allocation of risks in accordance with their agreement better serves the [*560] public interest than an allocation achieved as [**18] a matter of policy without reference to that agreement."). The balance of All Crane's arguments lack merit and, accordingly, the district court

properly dismissed All Crane's claims against Acordia and thereafter appropriately entered summary judgment in favor of S&C.

IV.

All Crane also contends that the district court erred by granting summary judgment to Acordia and S&C on its claim for civil conspiracy. All Crane asserts that Acordia and S&C committed the underlying unlawful act of "fraud and/or misrepresentation." For support, All Crane points to portions of a discussion between Royal, S&C, and Acordia during their January 27, 2000, conference call as evidence of the conspiracy.

[HN6] A civil conspiracy is "the malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in actual damages." *Kenty v. Transamerica Premium Ins. Co.*, 72 Ohio St. 3d 415, 1995 Ohio 61, 650 N.E.2d 863, 866 (Ohio 1995). No cause of action for civil conspiracy exists without an underlying unlawful act. *Gosden v. Louis*, 116 Ohio App. 3d 195, 687 N.E.2d 481, 496 (Ohio Ct. App. 1996). Indeed, "the element of 'malicious combination to injure' does not require [**19] a showing of an express agreement between defendants, but only a common understanding or design, even if tacit, to commit an unlawful act." *Id.* (citation omitted); *see Universal Coach, Inc. v. New York City Transit Auth., Inc.*, 90 Ohio App. 3d 284, 629 N.E.2d 28, 33 (Ohio Ct. App. 1993).

In this case, the district court noted that All Crane asserted that the underlying unlawful act was a breach of the insurance contract. Thus, it concluded, "because a contract claim cannot form the basis of a conspiracy claim, and because non-contracting parties cannot conspire to breach a contract, Acordia and S&C are entitled to summary judgment on this count." This conclusion is wholly correct. *Wagoner v. Leach Co.*, No. 17580, 1999 Ohio App. LEXIS 3152, *51 (Ohio Ct. App. July 2, 1999) ("[A] [HN7] party cannot be held liable for conspiring to breach his own contract." (citing *Schell v. Kaiser-Frazer Sales Corp.*, 28 Ohio App. 2d 16, 274 N.E.2d 315, 318 (Ohio Ct. App. 1971))). Although All Crane recharacterizes the unlawful act for purposes of appeal as "fraud and/or misrepresentation," it declined to draw that distinction below and, accordingly, the argument is waived. n9 The district [**20] court therefore properly granted summary judgment to Acordia and S&C on All Crane's civil conspiracy claim.

---

n9 All Crane's thematic reliance on the parties' tape-recorded conference call is misplaced. Although All Crane infers that S&C and Acordia somehow acted nefariously by merely participat-

ing in the call, the record reflects that S&C and Acordia representatives did so in order to ascertain Royal's position on renewing the 1999 Policy. Moreover, the record reflects that Acordia was responsible for All Crane receiving *any* post-1999 insurance coverage whatever.

V.

The balance of All Crane's issues are not properly preserved. Although All Crane asserts error with regard to its claims for breach of fiduciary claim, breach of good faith and fair dealing, fraud, and misrepresentation, the district court properly observed that All Crane's brief in opposition to summary judgment failed to address either Acordia or S&C's arguments with respect to those claims. Accordingly, All Crane has waived its opportunity [**21] to raise the appellate arguments it now asserts. *See, e.g., Wright v. Holbrook,* 794 F.2d 1152, 1157 [*561] (6th Cir. 1986) ("The general rule is that this court will not consider issues not raised in the district court.") (citations omitted); *Brown v. Marshall,* 704 F.2d 333, 334 (6th Cir. 1983) (noting [HN8] "appellate courts do not consider issues not presented to the district court") (citation omitted).

Affirmed.

**J.F. Meskill Enterprises, LLC Plaintiff, Vs. Acuity, and Acordia of Ohio, LLC, Defendants.**

**CASE NO. 05-cv-2955**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO, EASTERN DIVISION**

**2006 U.S. Dist. LEXIS 41491**

**April 7, 2006, Decided**
**April 7, 2006, Filed**

**CORE TERMS:** economic loss, negligent misrepresentation, contractor, coverage, architect, insured, intend, advice, flooring, lawsuit, negligent misrepresentation claim, negligence claim, accountant, buyer, broker, false information, written notice, third party, recipient, insurer, privity of contract, strict liability, advertising injury, comparative negligence, cause of action, malpractice, foreseen, partners, seller, faulty

**COUNSEL:** [*1] For J.F. Meskill Enterprises, LLC, Plaintiff: Keven D. Eiber, Brouse McDowell, Cleveland, OH.

For Acuity, Defendant: D. John Travis, Gallagher, Sharp, Fulton & Norman, Cleveland, OH.

For Acordia of Ohio, LLC, Defendant: Ellyn Mehendale, Janik & Dorman, Cleveland, OH.

**JUDGES:** PATRICIA A. GAUGHAN, United States District Judge.

**OPINION BY:** PATRICIA A. GAUGHAN

**OPINION:**

**Memorandum of Opinion and Order**

**INTRODUCTION**

Defendant Acordia of Ohio, LLC ("Acordia") has filed a Motion for Judgment on the Pleadings (Doc. 7). This case arises out of Defendant Acuity's refusal to pay a claim by its insured, Plaintiff J.F. Meskill Enterprises, LLC. Acordia is an insurance broker involved with the policy at issue. For the reasons that follow, Acordia's motion is GRANTED IN PART.

**FACTS**

Plaintiff alleges the following. Plaintiff purchased a commercial general liability policy from Acuity. The policy provides $ 1 million in coverage for "those sums that the insured becomes legally obligated to pay as damages because of personal and advertising injury to which this insurance applies" as well as the defense of lawsuits seeking such damages.

Plaintiff was sued for trade dress infringement [*2] by Seville Classics, Inc. ("Seville") on December 10, 2004. Early negotiations led Plaintiff to believe that Seville "did not intend to formally pursue the litigation." On or before March 10, 2005, it became apparent that Seville was moving forward with its lawsuit. James Meskill, Plaintiff's president, contacted Acordia (an insurance broker involved in the procurement of the Acuity policy) seeking advice. Meskill spoke with several Acordia representatives on the phone to report the fact of the lawsuit and to request a defense from Plaintiff's insurer, Acuity. An Acordia employee informed Meskill that the Acuity policy did not cover the Seville lawsuit, but that such coverage could be purchased for future claims. As a result, Plaintiff did not pursue its insurance claim with Acuity.

Plaintiff thereafter settled the Seville lawsuit for approximately $ 70,000, incurring $ 177,000 in defense costs in the process. Plaintiff contacted a third party to reevaluate whether the policy provided coverage for the Seville lawsuit and demanded coverage from Acuity in a letter received on July 1, 2005. Acuity acknowledged that the claim was covered by the policy, but denied coverage on the basis [*3] of late notice.

Plaintiff brings two claims against Acuity for breach of contract and declaratory relief. At issue here are Plaintiff's claims of negligence and negligent misrepresentation against Acordia. In general, Plaintiff claims that Acordia rendered bad advice regarding coverage. Plain-

tiff also believes that Acordia should have undertaken its own review of the Seville complaint and informed Acuity that the Seville action was pending.

Acordia has moved for judgment on the pleadings.

## STANDARD OF REVIEW

Courts apply the same analysis to motions for judgment on the pleadings under Rule 12(c) as they apply to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). *E.E.O.C. v. J.H. Routh Packing Co.*, 246 F.3d 850, 851 (6th Cir. 2001). When considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the allegations of the complaint must be taken as true and construed liberally in favor of the plaintiff. *Lawrence v. Chancery Court of Tenn.*, 188 F.3d 687, 691 (6th Cir. 1999). A claim is not to be dismissed "unless [*4] it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957); *see also Hammond v. Baldwin*, 866 F.2d 172, 175 (6th Cir. 1989). Notice pleading requires only that the defendant be given "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley*, 355 U.S. at 47. However, the complaint must set forth "more than the bare assertion of legal conclusions." *Allard v. Weitzman (In Re DeLorean Motor Co.)*, 991 F.2d 1236, 1240 (6th Cir. 1993).

"In practice, a . . . complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory." *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988) (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101 (7th Cir. 1984)). Dismissal is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief. *Craighead v. E.F. Hutton & Co.*, 899 F.2d 485, 489-490 (6th Cir. 1990). [*5]

## DISCUSSION

The threshold question presented by this case is whether Plaintiff's claims of negligence and negligent misrepresentation are barred by Ohio's economic loss doctrine. n1 The parties agree that Plaintiff's settlement and legal expenses are economic losses and that both of Plaintiff's claims against Acordia sound in tort.

---

n1 The parties agree that Ohio law applies to Plaintiff's claims against Acordia.

---

The economic loss doctrine holds that absent tangible physical harm to persons or tangible things there is generally no duty to exercise reasonable care to avoid economic losses to others. *Queen City Terminals, Inc. v. Gen. Am. Transp. Corp.*, 73 Ohio St. 3d 609, 1995 Ohio 285, 653 N.E.2d 661, 667-68 (Ohio 1995). These economic losses may be recovered in contract only. *Id.* Plaintiff acknowledges this general rule, but argues that it does not apply to its claims, relying in large part on *Haddon View Investment Co. v. Coopers & Lybrand*, 70 Ohio St. 2d 154, 436 N.E.2d 212 (Ohio 1982). That case held that "[a]n [*6] accountant may be held liable by a third party for professional negligence when that third party is a member of a limited class whose reliance on the accountant's representation is specifically foreseen." *Id.* at Paragraph 1 of the Syllabus. The plaintiffs in *Haddon View* were limited partners who sued an accountant who rendered faulty services pursuant to a contract with the limited partnership. *Id.* at 213. Because they were not in privity of contract with the accountant, the limited partners had to rely on claims sounding in tort. The Ohio Supreme Court concluded that such an action was proper, and in doing so, cited Section 552 of the Restatement (Second) of Torts with approval:

> (1) One who * * * supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

> (2) * * * [T]he liability stated in Subsection (1) is limited to loss suffered

> (a) by the person or one of a limited [*7] group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and

> (b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

*Haddon View*, 436 N.E.2d at 214 n.3. The parties dispute whether *Haddon View* is still good law, and if it is, whether the duties announced in *Haddon View* attach to an insured and its broker.

Much of Ohio's development of the economic loss rule occurred after *Haddon View* was decided. *Chemtrol Adhesives, Inc. v. Am. Mfrs. Mut. Ins. Co.* involved a commercial buyer and seller of an arch dryer system. 42 Ohio St. 3d 40, 537 N.E.2d 624, 624 (Ohio 1989). The arch dryer eventually malfunctioned, damaging the product itself and costing the buyer significant additional expenses. *Id.* at 628. Even though the parties had a contract with explicit limitations on the seller's liability, the buyer's subrogee sought to recover against the seller under theories of negligence and strict liability. *Id.* at 627.

The Ohio Supreme [*8] Court first recognized the "general rule . . . that a plaintiff who has suffered only economic loss due to another's negligence has not been injured in a manner which is legally cognizable or compensable." *Id.* at 630. However, its ultimate decision did not have such a broad sweep. It recognized that previous decisions had allowed recovery of purely economic losses when the parties were not in privity of contract. *Id.* at 634. However, those cases did not address "whether economic loss may be recovered in strict liability where the parties *are* in privity of contract." *Id.* (emphasis in original). The court concluded that they could not. Commercial buyers are relegated to claims under the Uniform Commercial Code, and "in the absence of injury to persons or damage to other property the commercial buyer may not recover for economic losses premised on theories of strict liability or negligence." *Id.* at 635.

The Ohio Supreme Court discussed the interplay between the cause of action recognized in *Haddon View* and the economic loss doctrine in *Floor Craft Floor Covering, Inc. v. Parma Cmty. Gen. Hosp. Ass'n,* 54 Ohio St. 3d 1, 560 N.E.2d 206 (Ohio 1990). [*9] The *Floor Craft* plaintiff was a flooring contractor that entered into a contract to install flooring as part of a hospital renovation project. *Id.* at 206. Its portion of the project went awry as a result of the architect's specification of incompatible flooring and sealant. *Id.* The contractor and the architect each had contracts with the hospital, but not with each other. *Id.* When the flooring contractor brought claims for negligence against the architect, the architect countered that the claims were barred by the economic loss doctrine. *Id.* at 208.

The flooring contractor asked the Ohio Supreme Court to apply *Haddon View* and Section 552 of the Restatement to the contractor-architect relationship. *Id.* at 211. The Ohio Supreme Court declined the invitation. The court's survey of other jurisdictions found little support for expanding these duties to contractors and architects. *Id.* at 209-11. Unlike the accountant in *Haddon View,* "the architects' services are generally extended to an unresolved class of persons unfixed in number." *Id.* at 211. Absent project management responsibilities, [*10] the parties' relationship could not justify liability under

the cause of action recognized in *Haddon View. Id.* Because the flooring contractor could not recover under *Haddon View,* its claims were barred by the economic loss doctrine. *Id.* at 212.

It is notable that the flooring contractor's contract with the hospital clearly addressed the relationship between the contractor, architect and hospital. *Id.* at 212 n.4. The contract explicitly disclaimed any special relationship between the contractor and architect. The architect did not have any control over how the contractor performed its work. Moreover, the contract also addressed liability. If the work was performed as required by the contract, but faulty as the result of the architect's specifications (as the flooring contractor claimed), the contractor was not responsible to the hospital for the excess cost. *Id.*

A recent Ohio Supreme Court case further clarified the interplay between *Haddon View* and the economic loss rule. In *Corporex Dev. & Constr. Mgmt. Inc. v. Shook, Inc.,* the plaintiff DSI contracted with Corporex for the construction of a hotel. 106 Ohio St. 3d 412, 2005 Ohio 5409, 835 N.E.2d 701, 703 (Ohio 2005). [*11] Corporex then hired Shook as a subcontractor to perform concrete work. Upon discovery that the work was faulty, both Corporex and DSI sued Shook. Because it had no contract with Shook, DSI's claims were based only in negligence and implied warranty. DSI argued, and the lower court held, that there was a sufficient "nexus" under *Haddon View* to allow its claims despite the economic loss rule. *Id.*

The Ohio Supreme Court reversed. *Haddon View* did not create a blanket "nexus" exception to the economic loss rule. *Id.* at 705. Rather, "[l]iability in *Haddon View* was based exclusively upon [a] discrete, preexisting duty in tort. . . ." *Haddon View* recognized only the following:

> professional liability, and thus a duty in tort, [exists] only in those limited circumstances in which a person, in the course of business, negligently supplies false information, knowing that the recipient either intends to rely on it in business, or knowing that the recipient intends to pass the information on to a foreseen third party or limited class of third persons who intend to rely on it in business.

*Id.* (citing Restatement (Second) of Torts § 552 [*12] ). *Corporex* thus makes clear that although tort claims are generally barred by the economic loss doctrine, the dis-

crete tort generally referred to as negligent misrepresentation is not. *Id; see also Laurent v. Flood Data Servs., Inc.,* 146 Ohio App. 3d 392, 2001 Ohio 1660, 766 N.E.2d 221, 227-28 (Ohio App. 2001) (holding that a negligence claim is barred by the economic loss doctrine while a negligent misrepresentation claim is not).

Applying these holdings to the case at bar, it is clear that Plaintiff cannot maintain its negligence claim against Acordia. Numerous courts have held that negligence claims for economic loss do not survive the economic loss doctrine. *See Chemtrol,* 537 N.E.2d at 630 (explaining that "a plaintiff who has suffered only economic loss due to another's negligence has not been injured in a manner which is legally cognizable or compensable"); *All Erection & Crane Rental Corp.,* 1:01-cv-1282, at 7 (N.D. Ohio Apr. 9, 2004) (holding that the economic loss doctrine barred a negligence claim without regard to whether the parties were in privity of contract). These decisions are confirmed by the Ohio Supreme Court's holding in *Corporex,* which recognized the [*13] *Haddon View* claim of negligent misrepresentation, while rejecting an attempt to bring a negligence claim. *Corporex,* 835 N.E.2d at 705.

Although Plaintiff attempts to recast its negligence claim as one of "professional negligence" akin to attorney malpractice, the Court finds it highly unlikely that the Ohio Supreme Court would recognize an independent insurance broker malpractice claim in light of its recent economic loss decisions. n2 The Court recognizes that the Ohio Supreme Court has stated that an action against an insurer was "roughly analogous to a malpractice action" in determining the appropriate statute of limitations. *Kunz v. Buckeye Union Ins. Co.,* 1 Ohio St. 3d 79, 1 Ohio B. 117, 437 N.E.2d 1194, 1196 (Ohio 1982). However, this was prior to Ohio's wholesale adoption of the economic loss doctrine.

n2 Unlike an attorney-client relationship, it is not entirely clear who the broker represents. Here, Plaintiff alleges that Acordia was Acuity's agent.

Some Ohio Courts have held that insurance [*14] agents or brokers have a duty to exercise reasonable care in procuring the requested insurance. However, the economic loss doctrine was not asserted in those cases. *E.g., The Island House Inn, Inc. v. State Auto Ins. Cos.,* 150 Ohio App. 3d 522, 2002 Ohio 7107, 782 N.E.2d 156, 158-59 (Ohio App. 2002). Moreover, this duty is fairly limited and could arguably be read as a contract claim, since the broker failed to procure the coverage the insured wanted to purchase. *See Fiorentino v. Lightning*

*Rod Mut. Ins. Co.,* 114 Ohio App. 3d 188, 682 N.E.2d 1099, 1104-05 (Ohio App. 1996) (discussing whether a claim against an insurance agent for failing to obtain coverage sounds in contract or tort for statute of limitations purposes); *Craggett v. Adell Ins. Agency,* 92 Ohio App. 3d 443, 635 N.E.2d 1326, 1332 (Ohio App. 1993) (explaining that "an insurance sales agency has a duty to exercise good faith in obtaining only those policies of insurance which its customer requests."). Finally, while some cases have suggested a negligence duty to advise on coverage terms, n3 that duty is better confined to the negligent misrepresentation tort adopted in *Haddon View* and reaffirmed in *Corporex.*

n3 *E.g., Island House,* 782 N.E.2d at 159 (Ohio App. 2002); *First Catholic Slovak Union v. Buckeye Union Ins. Co.,* 27 Ohio App. 3d 169, 27 Ohio B. 202, 499 N.E.2d 1303, 1305 (Ohio App. 1986).

[*15]

Thus, if Plaintiff is to avoid the economic loss doctrine, it must state a claim for negligent misrepresentation as set out in *Corporex* and *Haddon View.* Acordia first argues that Plaintiff cannot do so because all of the parties are commercial entities. Acordia points out that courts within the Sixth Circuit have made broad pronouncements that the economic loss doctrine bars tort claims in commercial transactions. *See HDM Flugservice GmbH v. Parker Hannifin Corp.,* 332 F.3d 1025, 1029-30 (6th Cir. 2003) (explaining that "commercial parties lacking privity, as opposed to non-commercial parties, [are] foreclosed from recovering economic losses"); *Trgo v. Chrysler Corp.,* 34 F. Supp. 2d 581, 594 (N.D. Ohio 1998) (holding that "whether privity exists or not, commercial parties cannot recover for solely economic loss in tort under Ohio law"); *All Erection & Crane Rental Corp. v. Acordia Northwest, Inc.,* 162 Fed. Appx. 554, 04-3862, 11 (6th Cir. Jan. 18, 2006) (holding that commercial parties are limited to claims for breach of contract or claims under the Uniform Commercial Code).

However, the Sixth Circuit did not apply this language to negligent misrepresentation [*16] claims n4 and the Ohio Supreme Court has not done so either. n5 *See Chemtrol,* 537 N.E.2d at 629-30 (addressing claims of products liability and negligence); *Queen City,* 653 N.E.2d at 665 (addressing a negligence claim). In fact, *Flugservice* explicitly held that "the economic loss rule does not apply to claims for negligent misrepresentation." *Flugservice,* 332 F.3d at 1032.

n4 *See Flugservice*, 332 F.3d at 1030 (applying the economic loss doctrine to claims of strict liability, implied warranty and negligence, while deciding that "the economic loss rule does not apply to claims of negligent misrepresentation"). Some district courts have declared that negligent misrepresentation claims are barred by the economic loss doctrine. *Trgo*, 34 F. Supp. 2d at 595; *Picker Int'l v. Mayo Found.*, 6 F. Supp. 2d 685, 688-89 (N.D. Ohio 1998). The Court declines to follow *Picker* or *Trgo* for a number of reasons. First, these holdings were decided before and are directly contrary to the Ohio Supreme Court's decision in *Corporex* and the Sixth Circuit's decision in *Flugservice*, both of which reaffirmed the validity of a negligent misrepresentation claim in spite of the economic loss doctrine. Both cases also involved parties attempting to avoid the terms of a contract. *Trgo*, 34 F. Supp. 2d at 587; *Picker*, 6 F. Supp. 2d at 689. The holding in *Picker* is also dicta, since the defendant did not provide business advice, and plaintiff could not support its negligent misrepresentation claim in any event. *Id.* at 689.

[*17]

n5 Ohio courts have stated that there is "no basis for distinguishing between so-called commercial and noncommercial buyers." *Ohio Dep't of Admin. Servs. v. Robert P. Madison Int'l*, 138 Ohio App. 3d 388, 741 N.E.2d 551, 557 (Ohio App. 2000).

Acordia's argument that commercial entities are barred from bringing negligent misrepresentation claims simply cannot be reconciled with *Corporex, Flugservice* and the negligent misrepresentation tort recognized in those decisions. The negligent representation cause of action contemplates that "a person, *in the course of business,* negligently supplies false information, knowing that the recipient . . . intends *to rely on it in business." Corporex*, 835 N.E.2d at 705 (emphasis added); *Flugservice*, 332 F.3d at 1033.

Moreover, the cases cited by Acordia involved traditional commercial transactions, not the giving of business advice. As Acordia notes, in this case Plaintiff did not seek its advice while attempting to procure insurance. Plaintiff already had insurance. It treated Acordia as a trusted advisor with expertise [*18] in insurance. This is the sort of situation that the negligent misrepresentation tort was meant to deal with. Indeed, a number of Ohio

courts have considerd negligent misrepresentation claims against insurance brokers. *Merrill v. William E. Ward Ins.*, 87 Ohio App. 3d 583, 622 N.E.2d 743 (Ohio App. 1993) (affirming a negligent misrepresentation verdict against an insurance agent); *Lu-An-Do, Inc. v. Kloots*, 131 Ohio App. 3d 71, 721 N.E.2d 507 (Ohio App. 1999) (considering and rejecting a negligent misrepresentation claim against an insurance agency because no false information was supplied and the plaintiff's reliance was unjustified).

The Court also notes that the plaintiffs in the cases cited by Acordia were attempting to avoid express contractual limitations on the claims they were asserting. *Chemtrol*, 537 N.E.2d at 629; *Trgo*, 34 F. Supp. 2d at 587; *Picker*, 6 F. Supp. 2d at 689; *All Erection & Crane Rental Corp. v. Acordia Northeast, Inc.*, 1:01-cv-1282, at 5 (N.D. Ohio Nov. 4, 2002). Here, Acordia has not identified any contract provision governing Acordia's responsibility for rendering insurance advice. If such a provision did exist, [*19] the parties would be best left to their bargain. *See, e.g., Foster Wheeler Enviresponse v. Franklin County Convention Facilities Auth.*, 78 Ohio St. 3d 353, 1997 Ohio 202, 678 N.E.2d 519, 529 (Ohio 1997) (holding that one contractor could not justifiably rely on another contractor's estimate of waste when the master contract stated that "the quantities listed . . . are to be used as approximate and are to be used for the comparison of bids only"). In this case, there is no bargain.

The critical issue, then, is whether Plaintiff has properly stated a claim of negligent misrepresentation. Plaintiff alleges that it was involved in a business transaction of reporting a lawsuit to its insurer, that Acordia was in the business of procuring and placing insurance coverage and that Acordia negligently provided false information by advising Plaintiff that the Seville lawsuit was not a covered advertising injury. Unlike a number of cases where courts have rejected negligent misrepresentation claims, Plaintiff alleges that Acordia provided advice to a limited group or class (Plaintiff) at Plaintiff's behest. *Compare Haddon View*, 436 N.E.2d at 215 ("[W]e conclude that the limited partners in the [*20] Car Wash partnerships constitute a limited class of investors whose reliance on the accountant's certified audits for purposes of investment strategy was specifically foreseen by defendant."), *with Laurent*, 766 N.E.2d at 228 (explaining that the flood determination was requested by a third party and that there was no evidence that the defendants knew it was intended to be used by the plaintiff).

Acordia principally challenges the reliance aspect of Plaintiff's negligent misrepresentation claim. Plaintiff alleges that Acordia provided the information knowing that Plaintiff would rely on the information in its business, and even offered to sell Plaintiff a policy that

would cover such claims in the future. Plaintiff continues that it in fact did rely on the information provided by Acordia when it failed to report its claim.

Acordia counters that an insured cannot justifiably rely on a broker's representations regarding the contents of an insurance policy in light of the insured's countervailing duty to read and understand its policy. *Island House,* 782 N.E.2d at 158-59; *Fry v. Walters & Peck Agency, Inc.,* 141 Ohio App. 3d 303, 750 N.E.2d 1194, 1200 (Ohio App. 2001); [*21] *Craggett,* 635 N.E.2d at 1332. Plaintiff concedes such a duty, but responds that it is a matter of comparative negligence that cannot be resolved in a motion to dismiss.

Two aspects of the policy are at issue. The first is the provision covering advertising injuries. Plaintiff alleges that Acordia advised that trade dress claims were not covered under this provision, when in fact they were. The second is the notice provision that Acuity invoked to decline coverage. That provision provides as follows:

**2. Duties in the Event of Occurrence, Offense, Claim or Suit**

* * *

b. If a claim is made or *suit* is brought against any insured, you must:

(1) Immediately record the specifics of the claim or *suit* and the date received; and

(2) Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or *suit* as soon as practicable.

c. You and any other involved insured must:

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or *suit.*

It is not readily apparent that the advertising injury provision includes [*22] claims of trade dress infringement. *See, e.g., Westfield Cos. v. O.K.L. Can Line,* 155 Ohio App. 3d 747, 2003 Ohio 7151, 804 N.E.2d 45, 48 (Ohio App. 2003) ("Courts, insurers, and insureds have struggled with the interpretation of 'advertising injury' coverage provisions in commercial insurance policies."). The Court thus finds that the cases cited by Acordia are distinguishable. In each cited case, the policy provision at issue unambiguously precluded the coverage sought by the insured. *Island House,* 782 N.E.2d at 157; *Fry,* 750 N.E.2d at 1201; *Lu-An-Do,* 721 N.E.2d at 511-12; *see also Brown v. Woodmen Accident & Life Co.,* 84 Ohio App. 3d 52, 616 N.E.2d 278 (Ohio App. 1992) (noting that "the insurance policy was 'clear and unambiguous'" and granting summary judgment that reliance on a contrary representation was not justified). Where coverage is unclear, Ohio courts require a comparative negligence analysis. *Wanner Metal Worx v. Hylant-Maclean, Inc.,* 2003 Ohio 1814, 2003 WL 186558, *8 (Ohio App. 5th Dist. 2003); *Gerace-Flick v. Westfield Nat'l Ins. Co.,* 2002 Ohio 5222, 2002 WL 31168883, *9 (Ohio App. 7th Dist. 2002); [*23] *Nichols v. Progressive Ins. Co.,* 2002 Ohio 3058, 2002 WL 1311859, *8 (Ohio App. 10th Dist. 2002); *Bedillion v. Tri-County Ins. Agency,* 1993 Ohio App. LEXIS 648, No. 15722, 1993 WL 27381, *3 (Ohio App. 9th Dist. 1993). Accordingly, dismissal is not appropriate. n6

n6 Acordia also contends that a statement regarding coverage cannot be the basis of a negligent misrepresentation claim because it is a statement of law. However, the only cited authority arose in the context of a fraud claim. *Lynch v. Dial Finance Co.,* 101 Ohio App. 3d 742, 656 N.E.2d 714, 720 (Ohio App. 1995); *Yendes v. Shaw,* 83 Ohio App. 300, 52 Ohio Law Abs. 154, 79 N.E.2d 181, 182 (Ohio App. 1948).

The contractual notice provision does not justify dismissal either. Plaintiff's Complaint alleges that "early discussions and negotiations with Seville led Meskill to understand that Seville did not intend to formally pursue the litigation. That circumstance changed in 2005." Plaintiff then "telephoned Acordia and spoke with several Acordia representatives to report the fact [*24] of the law suit and to request a defense from Meskill's insurer." "[O]n the advice and encouragement of Acordia, Meskill did not pursue its insurance claim with Acuity at that time."

These allegations must be taken as true. In light of these allegations, Plaintiff's failure to provide the necessary written notice can be attributed to the advice of Acordia. Although Plaintiff may be charged with knowledge of the written notice requirement, there is little rea-

son to submit written notice when there is no claim. Plaintiff's failure to provide written notice is a subject more appropriate for a comparative negligence analysis or a summary judgment motion.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Judgment on the Pleadings is GRANTED as to Plaintiff's negligence count and DENIED as to Plaintiff's negligent misrepresentation count.

IT IS SO ORDERED.

PATRICIA A. GAUGHAN

United States District Judge

Dated: 4/7/06

**John Rentz and Beverly Rentz, Plaintiffs-Appellants, v. Globe American Casualty Company et al., Defendants-Appellees**

**No. 90AP-270**

**Court of Appeals of Ohio, Tenth Appellate District, Franklin County**

**1990 Ohio App. LEXIS 5415**

**December 4, 1990, Rendered**

**PRIOR HISTORY:** [*1]

Appeal from the Franklin County Court of Common Pleas.

**DISPOSITION:**

Judgment affirmed.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff insureds appealed a judgment of the Franklin County Court of Common Pleas (Ohio), which found in favor of defendants, the insurance agency and the principal insurer, granting summary judgment to both defendants on the insureds' emotional distress claim, judgment as a matter of law for the insurance agency on the claims for breach of contract and bad faith. The jury returned a verdict in both defendants' favor on the remaining issues.

**OVERVIEW:** The insureds brought an action against the insurance agency and the principal insurer for damages, alleging several claims, including breach of contract and bad faith. The insureds claimed that the insurance agency acted in bad faith when it selected an insurance policy for them through the principal insurer without consulting them first and by representing to the insureds that they were insured at the time of the insureds' accident. The trial court entered judgment as a matter of law to the insurance agency on the breach of contract claim and bad faith and summary judgment and a jury verdict in favor of defendants resolved the remaining issues. The insureds settled with the principal insurer and appealed the judgment pertaining to the insurance agency. On appeal, the court affirmed and ruled that judgment as a matter of law was properly granted to the insurance company where the evidence established that the insurance company exercised good faith and reasonable diligence in obtaining insurance for insureds and that the insureds did not notify the insurance agency that the vehicle originally insured had been traded in for a new vehicle until after the accident.

**OUTCOME:** The court affirmed judgment in favor of the principal insurer and the insurance agency.

**CORE TERMS:** peremptory, summary judgment, insurer, assignment of error, appellants assert, matter of law, coverage, partial, failed to disclose, insurance coverage, insured, reasonable diligence, court stated, cause of action, contract of insurance, van, well-taken, moving party, presume, granting summary judgment, entitled to summary judgment, assignments of error, loss of consortium, breach of contract, insurance policy, duty to act, abused, disadvantage, non-payment, memorandum

**LexisNexis(R) Headnotes**

*Civil Procedure > Appeals > Reviewability > General Overview*
*Civil Procedure > Appeals > Standards of Review > General Overview*
[HN1] Questions which are not raised and determined in the court below cannot be considered by a reviewing court. In addition, the theory upon which a case is tried must be followed on appeal, and issues which are not considered by the trial court and which are inconsistent and contrary to the theory proceeded on below cannot be raised for the first time on appeal.

*Civil Procedure > Summary Judgment > Standards > Appropriateness*

*Civil Procedure > Summary Judgment > Standards > Legal Entitlement*

[HN2] Ohio R. Civ. P. 56(C) provides that summary judgment is proper if there is no genuine issue of fact and the moving party is entitled to judgment as a matter of law. Summary judgment is a procedural device designed to terminate litigation at an early stage where a resolution of factual disputes is unnecessary. However, it must be awarded with caution, resolving all doubts and construing the evidence against the moving party, and granted only when it appears from the evidentiary material that reasonable minds can reach only an adverse conclusion as to the party opposing the motion.

*Business & Corporate Law > Agency Relationships > Disclosure > Disclosed Principal*

*Business & Corporate Law > Agency Relationships > Types > Insurance Agent & Insurance Company*

*Insurance Law > Industry Regulation > Insurance Company Operations > Representatives > General Overview*

[HN3] Based upon the relationship between an insurer and its insured, an insurer has the duty to act in good faith in the handling and payment of the claims of its insured. A breach of this duty will give rise to a cause of action in tort against the insurer. Although insurers have a duty to act in good faith in handling and processing the claims of their insureds, an insurance agency is not under the same duty imposed on the insurer by virtue of the existence of a contract of insurance. An agent who contracts with a third party on behalf of a disclosed principal, and who is the authorized agent of that principal, is not personally liable on the insurance contract.

*Insurance Law > Bad Faith & Extracontractual Liability > General Overview*

*Insurance Law > Claims & Contracts > Good Faith & Fair Dealing > Payments*

[HN4] An insurance agency has a duty to exercise good faith and reasonable diligence in obtaining insurance requested by its customer.

*Civil Procedure > Appeals > Records on Appeal*

*Evidence > Inferences & Presumptions > Presumption of Regularity*

[HN5] The duty to provide a transcript for appellate review falls upon the appellant. This is so because an appellant bears the burden of showing error by reference to the matters in the record. When portions of the transcript necessary for resolution of assigned errors are omitted

from the record, the reviewing court has nothing to pass upon and, thus, it has no choice but to presume the validity of the lower court's proceedings and affirm. In addition, in the absence of all the relevant evidence, a reviewing court must indulge the presumption of regularity of the proceedings and the validity of the judgment in the trial court. It is the appellant's responsibility to include all the evidence in the appellate record so that the claimed error is demonstrated to the reviewing court.

**COUNSEL:**

LAW OFFICES OF KEITH M. KARR, and MR. KEITH M. KARR, for appellants.

EARL, WARBURTON, ADAMS & DAVIS, and MR. THOMAS L. DAVIS, for appellee Globe American Casualty Company.

ARTER & HADDEN, and MS. JUDITH E. TRAIL, for appellee Danduran & Howell Insurance Agency, Inc.

**JUDGES:**

Bowman, J. Whiteside and Ringland, JJ., concur. Ringland, J., of the Clermont County Court of Common Pleas, sitting by assignment in the Tenth Appellate District.

**OPINION BY:**

BOWMAN

**OPINION:**

OPINION

On June 19, 1987, appellants, John and Beverly Rentz, filed a seven-count complaint against appellees, Globe American Casualty Company ("Globe") and Danduran & Howell Insurance Agency, Inc. ("D&H"), for damages arising out of an alleged failure to obtain insurance coverage, alleged misrepresentations concerning the existence of insurance coverage, as well as for breach of contract, bad faith, negligent infliction of emotional distress, and loss of consortium.

On July 21, 1989, D&H filed a motion for partial summary judgment alleging that, as a matter of law, they were [*2] entitled to summary judgment on appellants' first and second claims, which assert that D&H breached their duty of good faith and fair dealing in refusing to cover appellants for the automobile collision; with regard to their third claim, which asserts that D&H breached their express or implied contract with appellants by refusing to pay appellants the amount owed under the insurance policy; with regard to their fourth claim, which asserts that D&H negligently inflicted serious emotional distress on appellants; and with regard to their seventh

claim, which alleges that Beverly Rentz lost companionship, consortium and services from her husband as a result of D&H's actions.

On August 3, 1989, Globe filed its motion for partial summary judgment, which requested that it be granted partial summary judgment for the same reasons that D&H would be granted partial summary judgment. Appellants filed a memorandum contra these motions for summary judgment and asserted that D&H was liable for bad faith and breach of contract, and that D&H could be held liable as an insurer because there was a disputed issue of fact whether D&H had authority to obtain insurance coverage fur appellants with Globe. [*3]

On November 21, 1989, the trial court found that judgment should be entered as a matter of law for D&H on the claims for breach of contract and bad faith. The court also found that summary judgment should be entered for both D&H and Globe for the claims of emotional distress, since there was no medical evidence to support the claim, and for loss of consortium, since no bodily injury occurred. Thereafter, the case went to trial where a jury returned a verdict in favor of D&H and Globe on the remaining issues. Appellants then filed this appeal and, during the pendency of this appeal, appellants reached a settlement with Globe. As a result, appellants now bring this appeal and assert the following assignments of error against D&H, the only remaining appellee:

"I. THE TRIAL COURT PREJUDICIALLY ERRED IN GRANTING SUMMARY JUDGMENT TO DEFENDANT DANDURAN & HOWELL ('DANDURAN'), INSURANCE AGENT, SINCE THE AGENT HAD FAILED TO DISCLOSE THE IDENTITY OF ITS PRINCIPAL AT THE TIME THE CONTRACTUAL AGREEMENT WAS REACHED.

"II. THE TRIAL COURT PREJUDICIALLY ERRED IN GRANTING SUMMARY JUDMENT TO DEFENDANT DANDURAN, INSURANCE AGENT, UN THE CAUSE OF ACTION FOR BAD FAITH SINCE GENUINE ISSUES OF FACT EXIST [*4] FOR THE TRIER OF FACT.

"III. THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT OVERRULED APPELLANT'S MOTION TO EQUALIZE PEREMPTORY CHALLENGES."

In their first assignment of error, appellants assert that the trial court erred in granting summary judgment to D&H since D&H, as their insurance agency, failed to disclose the identity of its principal, Globe, at the time that they contracted with Globe to provide automobile insurance for John Rentz on a 1976 Plymouth Volare. Appellants assert that D&H shifted their insurance from

Progressive Insurance Company to Globe without notice or approval by appellants.

Appellee asserts that the issue of whether or not D&H failed to disclose the identity of its principal was never raised in the trial court and that appellants cannot now raise that issue for the first time on appeal. We agree.

[HN1] Questions which were not raised and determined in the court below cannot be considered by a reviewing court. BancOhio Natl. Bank v. Abbey Lane Ltd. (1984), 13 Ohio App. 3d 446. See, also, Schade v. Carnegie Body Co. (1982), 70 Ohio St. 2d 207. In addition, the theory upon which a case is tried must be followed on appeal, and issues which were not [*5] considered by the trial court and which are inconsistent and contrary to the theory proceeded on below cannot be raised for the first time on appeal. Republic Steel Corp. v. Board of Revision of Cuyahoga County (1963), 175 Ohio St. 179. See, also, Ridgley, Inc., v. Wadsworth Bd. of Zoning Appeals (1986), 28 Ohio St. 3d 357.

The issue of whether or not D&H failed to disclose the identity of Globe, or that D&H's failure to disclose Globe's identity made them liable as an insurer on the contract of insurance, was never considered by the court below. Appellants did not raise this issue in their memorandum contra D&H's motion for summary judgment and, in fact, the only time the term "principal" was mentioned occurred in D&H's motion for partial summary judgment, wherein it stated that "* * * the identity of the principal, Globe American Casualty Company, was disclosed to plaintiffs." Accordingly, because this theory and this argument was not raised by appellants in the trial court, it cannot now be raised for the first time on appeal. Appellants' first assignment of error is not well-taken.

In their second assignment of error, appellants assert that the trial court erred [*6] in granting summary judgment to D&H on its cause of action for bad faith since genuine issues of fact exist.

Civ. R. 56(C) [HN2] provides that summary Judgment is proper if there is no genuine issue of fact and the moving party is entitled to judgment as a matter of law. Summary judgment is a procedural device designed to terminate litigation at an early stage where a resolution of factual disputes is unnecessary. However, it must De awarded with caution, resolving all doubts and construing the evidence against the moving party, and granted only when it appears from the evidentiary material that reasonable minds can reach only an adverse conclusion as to the party opposing the motion. See Norris v. Ohio Std. Oil Co. (1982), 70 Ohio St. 2d 1; Harless v. Willis Day Warehousing Co. (1978), 54 Ohio St. 2d 64.

Appellants assert that D&H acted in bad faith when it selected an insurance policy without consulting them first and when D&H represented to appellants that they were insured as of June 9, 1987, thus giving appellants the impression that coverage was available to them when John Rentz had his automobile accident on June 20, 1987.

D&H asserts that it did not act in bad faith [*7] when it obtained insurance coverage for appellants with Globe since appellants' coverage with Progressive was being cancel led for non-payment. Further, D&H asserts that, when Beverly Rentz called them on June 9, she merely asked them if there would be a change in rates if a different vehicle was substituted for the 1976 Plymouth Volare. It was not until June 23, 1987, when Beverly Rentz called D&H to report John Rentz's accident that D&H became aware that the Volare had been traded in on a 1977 Dodge Van. At that time, Beverly Rentz told D&H that they had only purchased the van three weeks previously; however, D&H later discovered that the van had been purchased a number of months before, but had not been driven until recently.

Regardless of these questions of fact, this court finds that D&H was entitled to summary judgment as a matter of law. In Hoskins v. Aetna Life Ins. Co. (1983), 6 Ohio St. 3d 272, the court held, at paragraph one of the syllabus:

[HN3] "Based upon the relationship between an insurer and its insured, an insurer has the duty to act in good faith in the handling and payment of the claims of its insured. A breach of this duty will give rise to a cause of action [*8] in tort against the insurer. * * *."

Hoskins establishes that insurers have a duty to act in good faith in handling and processing the claims of their insureds; however, the decision does not establish a rule that an insurance agency is under the same duty imposed on the insurer by virtue of the existence of a contract of insurance. Generally, in Ohio, an agent who contracts with a third party on behalf of a disclosed principal, and who is the authorized agent of that principal, is not personally liable on the insurance contract. Crocker v. Ostrov Corp. (May 18, 1988), Summit App. No. 13283, unreported.

D&H asserts that it acted as an agent for Globe, and it supported this assertion with an agency agreement executed between D&H and Globe. However, appellants assert that D&H acted in bad faith in trying to procure insurance for them through Globe.

In First Catholic Slovak Union v. Buckeye Union Ins. Co. (1986), 27 Ohio App. 3d 169, the court stated that [HN4] an insurance agency has a duty to exercise good faith and reasonable diligence in obtaining insurance requested by its customer. This court finds that D&H exercised good faith and reasonable diligence in obtaining [*9] insurance for appellants. When appellants' Progressive insurance was due to be cancel led for non-payment by appellants, D&H procured insurance for them with Globe. Thereafter, appellants were notified of the change in coverage, were told the amount of premium they needed to pay Globe for their insurance and, in fact, made the premium payment. In addition, when appellants reported the accident to D&H, D&H attempted to have the change of vehicles put into effect on June 9, because that is when appellants told D&H that they began to drive the van. Appellants also represented to D&H that June 9 was when the car was purchased and, as a result, D&H attempted to get them coverage as of that date.

Accordingly, this court finds that, as a matter of law, D&H exercised good faith and reasonable diligence in obtaining insurance coverage for appellants. Any problem that resulted in whether or not appellants were covered by insurance on the date of the accident was between appellants and Globe based on the contract of insurance. Appellants' second assignment of error is not well-taken.

In their third assignment of error, appellants assert that the trial court erred and abused its discretion when [*10] it overruled appellants' motion to equalize the peremptory challenges. Appellants assert that the trial court erred in giving both Globe and D&H three peremptory challenges each for a total of six peremptory challenges, while appellants had only three peremptory challenges. Appellants assert that Globe's and D&H's interests and defenses were essentially the same and were not antagonistic to each other and, thus, they should only have been entitled to three peremptory challenges together. However, when the trial court found that Globe and D&H were each entitled to three peremptory challenges, appellants assert that, in order for justice to have been served, it should have been entitled to six peremptory challenges.

In Columbus v. Hodge (1987), 37 Ohio App. 3d 68, at 68-69, this court stated:

[HN5] "The duty to provide a transcript for appellate review falls upon the appellant. This is so because an appellant bears the burden of showing error by reference to the matters in the record. When portions of the transcript necessary for resolution of assigned errors are omitted from the record, we have nothing to pass upon and, thus, we have no choice but to presume the validity of the [*11] lower court's proceedings and affirm. Knapp v. Edwards Laboratories (1980), 61 Ohio St. 2d, 197, 15 O.O. 3d 218, 400 N.E. 2d 384; see, also, Tyrell v. Investment Assoc., Inc. (1984), 16 Ohio App. 3d 47, 16 OBR 50, 474 N.E. 2d 621. In addition, in the absence

of all the relevant evidence, a reviewing court must indulge the presumption of regularity of the proceedings and the validity of the judgment in the trial court. It is the appellant's responsibility to include all the evidence in the appellate record so that the claimed error is demonstrated to the reviewing court. Bates & Springer, Inc. v. Stallworth (1978), 56 Ohio App. 2d 223, 10 O.O. 3d 227, 382 N.E. 2d 1179; see, also, App. R. 9(B)."

In this case, appellants, after many motions and joint agreements, ultimately filed with this court a transcript of the trial court's decision to give appellants three peremptory challenges, D&H three peremptory challenges and Globe three peremptory challenges; however, appellants failed to transmit any part of the record which indicates how many peremptory challenges, if any, each party used. Thus, this court, based on the record before us, cannot discern whether or [*12] not appellants were prejudiced by the trial court's decision. In Rose Chevrolet, Inc. v. Adams (1988), 36 Ohio St. 3d 17, at 19, the court stated:

"* * * Where a transcript of any proceeding is necessary for disposition of any question on appeal, the appellant bears the burden of taking the steps required to have the transcript prepared for inclusion in the record. Any lack of diligence on the part of an appellant to secure a portion of the record necessary to his appeal should inure to appellant's disadvantage rather than to the disadvantage of appellee."

Accordingly, this court must presume the regularity of the proceedings in the court below and, thus, this court finds that, while the trial court did abuse its discretion in determining that appellants were only entitled to three peremptory challenges, as opposed to six peremptory challenges, appellants have failed to demonstrate any prejudice. Appellants' third assignment of error is not well-taken.

For the foregoing reasons, appellants' three assignments of error are overruled and the judgment of the trial court is affirmed.

Judgment affirmed.