**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION (CINCINNATI)**

| | | |
|---|---|---|
| MAFCOTE, INC. | : | CASE NO: 1:04 CV 853 |
| Plaintiff, | : | (Judge Dlott) |
| v. | : | |
| GENATT ASSOCIATES, INC., | : | |
| Defendant. | : | |

---

**PLAINTIFF MAFCOTE'S MEMORANDUM IN OPPOSITION TO GENATT'S
MOTION FOR SUMMARY JUDGMENT AGAINST MAFCOTE**

**For Mafcote, Inc.:**

James H. Greer, Trial Attorney (0046555)
David C. Greer, Trial Attorney (0009090)
BIESER, GREER & LANDIS, LLP
6 North Main Street, Suite 400
Dayton, OH  45402-1908
Ph:  (937) 223-3277
Fx:  (937) 223-6339
E-mail: jhg@bgllaw.com; dcg@bgllaw.com
Attorneys for Plaintiff

Dated: December 11, 2006

---

## TABLE OF CONTENTS

EXHIBITS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

I.    BACKGROUND AND FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   SUMMARY JUDGMENT STANDARD . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

III.  LAW AND ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

      A.    THE INSURANCE POLICY THAT GENATT PROCURED DID NOT
            COVER THE PURCHASE OF SUBSTITUTE PAPER IN THIS CASE. . . . . . . 6

            1.    Genatt Advised Mafcote There Was Coverage . . . . . . . . . . . . . . . . . . . 6

            2.    Genatt Could Have Procured the Proper Coverage . . . . . . . . . . . . . . . . 7

      B.    GENATT BREACHED ITS DUTY TO ADVISE MAFCOTE ON
            INSURANCE COVERAGE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

            1.    Mafcote Undertook a Duty to Advise Mafcote How to Adjust Its
                  Claim When It Rendered Such Advice . . . . . . . . . . . . . . . . . . . . . . . . . 7

            2.    Genatt Acted as a Consultant for Mafcote in the CNA Lawsuit . . . . . . . . 9

      C.    ANY WAIVER OF ARGUMENTS IN FAVOR OF COVERAGE IN
            THE CNA LAWSUIT RESULTED FROM GENATT'S ADVICE . . . . . . . . . . . 9

      D.    ANY LATE NOTICE OF THE LOSS BY MAFCOTE WAS
            EXCUSABLE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

      E.    MAFCOTE'S CLAIMS ARE VALID UNDER OHIO LAW . . . . . . . . . . . . . . 12

            1.    As a Result of Genatt's Negligence, Mafcote is Entitled to
                  Recover From Genatt the Amount It Would Have Received From
                  CNA Had The Coverage Been Paid . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

            2.    Genatt Owes Fiduciary Duty to Mafcote . . . . . . . . . . . . . . . . . . . . . . . 14

            3.    Ohio Law Recognizes a Claim Against Insurance Agencies for
                  Breach of Good Faith and Fair Dealing . . . . . . . . . . . . . . . . . . . . . . . . 15

            4.    Mafcote Has Properly Stated a Negligent Misrepresentation
                  Claim Against Genatt . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

        5.      Genatt Violated Ohio Revised Code § 4165.02(A)(7) When It Represented that The Losses Suffered by Mafcote Were Covered Under the CNA Policy . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

        6.      Mafcote Agrees To Dismiss Counts Seven and Eight . . . . . . . . . . . . . . 18

IV.    <u>CONCLUSION</u> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

EXHIBITS

Response to Undisputed Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Exhibit A
Deposition Transcript of Earle S. Rynston . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Exhibit 1
Deposition Transcript of Nick Bozovich . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Exhibit 2
Deposition Transcript of Robert Kaminski . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Exhibit 3
Deposition Transcript of Terrence A. Reiff . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Exhibit 4
Deposition Transcript of Joseph Blumberg . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Exhibit 5
Deposition Transcript of Paul Spaulding . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Exhibit 6
Deposition Transcript of Stephen Schulman . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Exhibit 7
Joint Exhibit No. 12 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Exhibit 8
Joint Exhibit No. 18 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Exhibit 9
Joint Exhibit No. 36 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Exhibit 10
Joint Exhibit No. 40 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Exhibit 11
Joint Exhibit No. 43 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Exhibit 12
Joint Exhibit No. 52 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Exhibit 13
Joint Exhibit No. 57 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Exhibit 14
Joint Exhibit No. 59 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Exhibit 15
Joint Exhibit No. 60 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Exhibit 16
Joint Exhibit No. 62 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Exhibit 17
Joint Exhibit No. 63 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Exhibit 18
Joint Exhibit No. 65 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Exhibit 19
Joint Exhibit No. 67 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Exhibit 20
Unreported cases . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Exhibit 21

# TABLE OF AUTHORITIES

60 Ivy Street Corp. v. Alexander, 822 F.2d 1432, 1435 (6th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . 6

Abercrombie & Fitch Stores, inc. v. Am. Eagle Outfitters, Inc., 130 F. Supp.2d 928, 930

    (S.D. Ohio 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Advent v. Allstate Ins. Co., Tenth Dist. No. 05AP-1092, 2006 Ohio App. LEXIS 2567,

    2006-Ohio-2743. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Appelgate v. Fund for Constitutional Govt., 70 Ohio App.3d 813, 816-817,

    592 N.E.2d 878, 880-881. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Atchley v. RK Co., 224 F.3d 537, 539 (6th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Brandenburger v. Hilti, 52 Ohio App.3d 21, 27-28, 556 N.E.2d 212, 219 (1989) . . . . . . . . . . 15

Carpenter v. Scherer-Mountain Ins. Agency, 135 Ohio App.3d 316, 326,

    733 N.E.2d 1196, 1203 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

Celotex Corp. v. Caltrett, 477 U.S. 317, 323 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Community Health Partners v. Medical Mutual of Ohio, Ninth Dist. No. 05CA008693,

    2005-Ohio-6913, ¶ 13 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Damon's Missouri, Inc. v. Davis, 63 Ohio St.3d 605, 609, 590 N.E.2d 254 (1992) . . . . . . . . . . 15

Ferrando v. Auto-Owners Mut. Inc. Co., 98 Ohio St.3d 186, 2002-Ohio-7217,

    781 N.E.2d 927 , ¶ 90 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

First Catholic Slovak v. Buckey Union Ins. Co., 27 Ohio App.3d 169,

    499 N.E.2d 1303 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Gallenstein Bros. Inc. v. General Acc. Ins. Co., 178 F. Supp. 2d 907, 919

    (S.D. Ohio 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

Irvin v. American General Finance Co., Fifth Dist App. No. CT2004-0046,

    2005 Ohio App. LEXIS 3271, 2005-Ohio-3523, ¶ 26 (Ohio Ct. App. June 30, 2005) . . . 8

Javitch v. Todd Associates, Inc., Case No. 3:03 CV 972, 2005 U.S. Dist. LEXIS 33689 *10

    (N.D. Ohio Dec. 19, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12-14

Kilburn v. Becker, 60 Ohio App.3d 144, 146, 573 N.E.2d 1226, 1228 (1990) . . . . . . . . . . . . . 16

Marasco v. Hopewell, Tenth Dist. No. 03AP-1081, 2004-Ohio-6715 (2004) . . . . . . . . . . . . . . 16

Martin v. Ohio State Univ. Foundation, 139 Ohio App.3d 89, 104, 742 N.E.2d 1198 (2000) . . 16

McKean v. Howell, Fifth Dist. No. 2004 CA 00041, 2005 Ohio App. LEXIS 717,

    2005-Ohio-721, ¶¶ 38-44 (Ohio Ct. App. Feb. 18, 2005) . . . . . . . . . . . . . . . . . . . . . . . . 11

Minor v. Allstate Ins. Co., 111 Ohio App.3d 16, 22, 675 N.E.2d 550, 554 (1996) . . . . . . . 12, 13

Nichols v. Progressive Ins. Co., Tenth Dist. No. 01AP-899, 2002-Ohio-3058, ¶ 47. . . . . . . . . . 8

Rose v. Landen, Twelfth Dist. No. CA2004-06-066, 2005-Ohio-6123, ¶ 16; . . . . . . . . . . . . . . 8

Ruby v. Midwestern Indemn. Co., 40 Ohio St.3d 159, 532 N.E.2d 730, at the syllabus . . . . . . . 11

Ruggiero v. Nationwide Ins., Eighth App. No. 86431, 2006 Ohio App. LEXIS 715,

    2006-Ohio-808, ¶ 20 (Ohio Ct. App. Feb. 23, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Sammarco v. Anthem Ins. Cos., 131 Ohio App.3d 544, 555, 723 N.E.2d 128, 135 (1998) . . . . 15

Stone v. Davis, 66 Ohio St.2d 74, 78, 419 N.E.2d 1194 (1981) . . . . . . . . . . . . . . . . . . . . . . . . 14

Wanner v. Metal Worx, Inc. v. Hylant-Maclean, Inc., Fifth Dist. App. No. 02CAE10046,

    2003 Ohio App. LEXIS 1714, 2003-Ohio-1814, ¶ 35

    (Ohio Ct. App. April 7, 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 14

Wiley v. U.S., 20 F.3d 222, 227 (6th Cir. 1994 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Williams v. Belknap, 154 F.Supp. 2d 1069, 1071 (E.D. Mich. 2001) . . . . . . . . . . . . . . . . . . . . 6

Zangara v. Travelers Indemnity Co. of Am., 423 F. Supp. 2d 762, 769 (N. D. Ohio) . . . . . . . . 14

Fed. R. Civ. P. 56 (c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

4 Restatement of the Law 2d, Torts (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Ohio Rev. Code  § 4165.02(A)(7) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Ohio Rev. Code § 4165.02(A)(10)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18

Ohio Revised Code § 4165.02(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION (CINCINNATI)

| | | |
|---|---|---|
| MAFCOTE, INC. | : | CASE NO: 1:04 CV 853 |
| Plaintiff, | : | (Judge Dlott) |
| v. | : | |
| | | **PLAINTIFF MAFCOTE'S** |
| GENATT ASSOCIATES, INC., | : | **MEMORANDUM IN OPPOSITION TO** |
| | | **GENATT'S MOTION FOR SUMMARY** |
| Defendant. | : | **JUDGMENT AGAINST MAFCOTE** |

---

Now comes Plaintiff, Mafcote, Inc., by and through counsel, and for its Memorandum in

Opposition to Defendant Genatt's Motion for Summary Judgment (Doc. No. 54), submits the

following.

I.      **BACKGROUND AND FACTS**

Mafcote, Inc. ("Mafcote") is a manufacturer and marketer of high quality paper, packaging

and converted paper products.  Mafcote is the parent company of various affiliate companies  in the

paper business. (Deposition of Stephen Schulman, "Schulman Depo.", attached hereto as Exhibit

7, at p. 58).

Mafcote utilized Genatt Associates, Inc. ("Genatt'), an insurance agency, to purchase various

insurance policies, including insurance coverage for the boilers at various Mafcote affiliates.  (See

Deposition of Earle Rynston[1], "Rynston Depo", attached hereto as Exhibit 1 at pp. 24-25). Genatt had been Mafcote's insurance broker for over ten years. (Id. at p. 24). Upon Genatt's recommendation, Mafcote purchased a boiler insurance policy from Continental Casualty Insurance Co. ("CNA") on June 8, 2000. The policy was renewed for the 2001-2002 policy period, with the only difference being an increase in the premium. (Rynston Depo. at 42-43; Schulman Depo. at 172; Joint Exhibit 43). Genatt was familiar with the the business structure of Mafcote, inluding the relation of Mafcot's affiliates to one another. (Rynston Depo. at 27, 30-31; Schulman Depo. at 78, 80-81). Genatt also understood Mafcote's insurance needs. (Rynston Depo. at 30). Genatt knew that Mafcote's affiliates needed to be covered under the policy. Genatt represented to Mafcote that Mafcote's affiliates were insured under the policy. (Id. at. 36). Prior to purchasing the CNA policy, Mafcote had been insured previously by Kemper and IRI for business interruption loss in relation to a boiler problem. (Rynston Depo. at 26). When Genatt presented the CNA policy to Mafcote, it stated that the boiler insurance coverage was "as broad or broader than the Kemper program." (Joint Exhibits 40, 60; Rynston Depo. at 32-33).

On July 16, 2001 a paper coating machine at a Mafcote affiliate named Miami Wabash Paper ("Miami Wabash") stopped working properly. (Schulman Depo. at 89; Deposition of Robert Kaminski, "Kaminski Depo". attached hereto as Exhibit 3 at 35). At first, Miami Wabash was investigating why the steam on the paper cotaing machine had stopped operating. (Kaminski Depo. at 36-38). Eventually, the problem was traced to a boiler rupture. (Schulman Depo. at. 89-90). As a result of the boiler loss, Miami Wabash was unable to produce paper. (Deposition of Paul Spaulding attached as Exhibit 6 at 11). When the boiler first broke, Miami Wabash did not know

---

[1] Earle Rynston is a Senior Vice President at Genatt who was responsible for obtaining boiler insurance for Mafcote and assisting Mafcote with its claim in this case. (Rynston Depo. at 12).

whether it needed to only be repaired or be entirely replaced. (Kaminski Depo. at 38; Schulman Depo. at 191). It first attempted to repair the boiler, to no avail. (Rynston Depo. at. 49).

Immediately after the boiler loss, Mafcote worked to minimize damages and keep its business going until it could be determined whether the boiler need to be replaced. The boiler loss made rendered Miami Wabash unable to produce and supply paper to its customers. Mafcote stood to lose approximately $1 million in sales as a result of the boiler loss. (Bozovich Depo. attached hereto as Exhibit 2 at 28-29; Joint Exhibit 52). Mafcote wanted to avoid any breach of contract claims arising from Miami Wabash's failure to supply paper. Fortunately, Miami Wabash was able to supply many of its customers through supplies on hand. Unfortunately, Miami Wabash was unable to supply paper to another Mafcote affiliate, Royal Consumer Products ("RCP"). (Kaminski Depo. at 8; Schulman Depo. at 27). RCP therefore purchased paper at higher prices from third parties. (Schulman Depo. at 14, 117).

Ordinarily, an insurer is responsible for inspecting its insureds' boilers on an annual basis. (Deposition of Nick Bozovich, "Bozovich Depo." attached hereto as Ex. 2, at 83). When a boiler is inspected, a sticker is usually placed on the boiler which contains the insurer's contact information. (Id. at 84). The presence of such sticker is customary in the industry. (Id.). The Miami Wabash boiler had such a sticker and Miami Wabash quickly called the telephone number on the sticker to report the boiler problem. (Kaminski Depo. at 21-22). Unfortunately, the number on the sticker was from a previous insurer, not CNA, who was the insurer at the time the boiler broke. (Id.; Rynston Depo. at 49). CNA admitted that it never inspected the boiler, despite the fact that it had insured the boiler for over a year before the boiler broke. (Bozovich Depo. at 84-85, 94). Once it was determined that the insurer on the sticker was not the proper insurer, Mafcote contacted Genatt. (Rynston Depo. at 49). Genatt notified the proper insurer, CNA of the boiler loss. (Schulman Depo.

at 92).  Mafcote would have initially reported the boiler problem to the correct insurer had CNA inspected the boiler.  (Schulman Depo. at 107).

CNA refused to reimburse Mafcote for the cost of the replacement paper purchased by RCP, despite the fact that Genatt had represented to Mafcote that the replacement paper would be covered. Mafcote therefore filed a lawsuit against CNA ( the "CNA lawsuit.").  The District Court for the Southern District of Ohio (Judge Beckwith) determined that because RCP was the one who purchased the replacement paper, rather than Miami Wabash, there was no coverage.  (See Exhibit B to Genatt's Motion for Summary Judgment, Doc. No. 54).

At all times, Mafcote relied upon the advice of Genatt when making its claim to CNA for the cost of the replacement paper.  (Schulman Depo. at 38-39, 43).  Before Mafcote purchased the CNA policy, Genatt represented to it that there would be coverage for costs arising from the boiler loss at any Mafcote affiliate.  (See Joint Exhibit 52, Schulman Depo. at 84).  Once the Miami Wabash boiler stopped operating, Genatt again represented that the loss, including the costs of replacement paper purchased by RCP, was covered under the policy issued to Mafcote.  (Joint Exhibits 18, 67; Rynston Depo. 36,66,103; Schulman Depo. at 84).  Genatt continued to take the position that the loss was covered in the CNA lawsuit.  Genatt also acted as a consultant to Mafcote in the CNA lawsuit. (Rynston Depo. at 83).  To date, Genatt continues to assert its belief that the loss was covered. (Rynston Depo. at 36,45,66,103).

Before making its insurance claim to CNA, Mafcote sought the advice of Genatt.  Genatt was the expert in insurance matters, and Mafcote relied upon its advice.  Genatt claims specialist  Earle Rynston admits that he has expertise in coverage issues and that he had knowledge beyond that of a standard insurance broker.  (Rynston Depo. at 17, 19-20, 84-85).  My. Rynston makes recommendations about boiler policies and determines whether any improvements can be made to

his client's insurance coverages. (Id. at 14, 22). Mr. Rynston advised Mafcote that it did not matter which Mafcote affiliate suffered the loss, they would all be covered under the CNA policy. (See Joint Ex. 67). Mr. Rynston claimed that it did not matter whether RCP or Miami Wabash was the one who purchased the replacement paper. (Id.; Rynston Depo. at 67-69). Mafcote relied on this advice to its detriment. The result of Judge Beckwith's decision was that had Miami Wabash purchased the replacement paper, the loss would have been covered, but because RCP purchased it, the loss was not covered.

Additionally, Genatt provided advice to Mafcote throughout the claims process and acted as Mafcote's spokesperson. (See Joint Exhibits 62-63, 65; Rynston Depo. at 76-78). Genatt commented, gave advice to Mafcote, and assisted Mafcote with the claim. (Deposition of Joseph Blumberg, "Blumberg Depo.," attached hereto as Exhibit 5, at 20; Schulman Depo. at 186-187). Nick Bozovich, the CNA adjustor responsible for adjusting Mafcote's claim, supported this fact, stating that Genatt advocated on behalf of Mafcote and that he had conversations with Genatt representatives about Mafcote's claim. (Bozovich Depo. at 85-88).

## II.    SUMMARY JUDGMENT STANDARD

Summary judgment is only appropriate where "the pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (c). The moving party bears the initial responsibility of "informing the district court of the basis for its motion and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrates the absence of genuine material fact." Celotex Corp. v. Caltrett, 477 U.S. 317, 323 (1986).

In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the nonmoving party. 60 Ivy Street Corp. v. Alexander, 822 F.2d 1432, 1435 (6th Cir. 1987). At the summary judgment stage, however, "the judge's function is not himself to weigh the evidence and determine the truth of the matter." Wiley v. U.S., 20 F.3d 222, 227 (6th Cir. 1994) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). Therefore, "the Court is not required or permitted . . . to judge the evidence or make findings of fact." Williams v. Belknap, 154 F.Supp. 2d 1069, 1071 (E.D. Mich. 2001). The purpose of summary judgment "is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried." Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc., 130 F. Supp.2d 928, 930 (S.D. Ohio 1999). Ultimately, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Andersen, 477 U.S. at 251-52; see also Atchley v. RK Co., 224 F.3d 537, 539 (6th Cir. 2000).

## III.   LAW AND ARGUMENT

### A.   THE INSURANCE POLICY THAT GENATT PROCURED DID NOT COVER THE PURCHASE OF SUBSTITUTE PAPER IN THIS CASE.

#### 1.   Genatt Advised Mafcote There Was Coverage

While it is true that both Mafcote and CNA agree that the insurance policy provided coverage for Miami Wabash to purchase substitute paper under the facts of the case, the issue is whether the insurance policy provided coverage for the paper purchased by RCP as a result of Miami Wabash's inability to supply the paper. This is the insurance that Genatt failed to procure, despite representing to Mafcote that it had been procured. (See Joint Exhibits 40, 67; Rynston Depo. at 36, 45, 66, 103). Genatt consistently told Mafcote that it did not matter which Mafcote affiliate actually suffered the boiler loss, that all other affiliates suffering damages a result of such boiler loss would also be

6

covered. (See Joint Exhibit 67; Rynston Depo. at 67-69; Schulman Depo. at 84). This included the purchase of replacement paper by RCP. Mafcote agrees with Genatt that the loss should still be covered regardless of which affiliate purchased the replacement paper but, unfortunately, the district court disagreed. Genatt presented itself as an expert in coverage issues. (Rynston Depo. at 17, 19-20, 84-85). Mafcote relied upon Genatt's expert advice that the loss would be covered. It has been determined that the losses were not covered. (See Exhibits B and K to Genatt's Motion for Summary Judgment, Doc. No. 54). Genatt should therefore be held responsible for Mafcote's damages resulting from Genatt's advice.

### 2. Genatt Could Have Procured the Proper Coverage

Despite Genatt's insistence that there was coverage, Genatt's own expert has testified that there was no coverage under the circumstances of this case. (Deposition of Terrence Reiff, "Reiff Depo.", attached hereto as Exhibit 4, at 30). Mr. Reiff indicated that the insurance policy could have been written so that there would have been coverage for the replacement paper purchased by RCP. (Id. at 31-32). Further, Mafcote's expert, Joseph Blumberg, stated that Genatt could have procured the requested coverage had the "named insured" been written differently or had a Contingent Business Interruption endorsement been added to the policy. (Blumberg Depo. at 53-54, 66; Joint Exhibits 12 and 57).

### B. GENATT BREACHED ITS DUTY TO ADVISE MAFCOTE ON INSURANCE COVERAGE

#### 1. Mafcote Undertook a Duty to Advise Mafcote How to Adjust Its Claim When It Rendered Such Advice

Genatt undertook a duty of care to Mafcote when it provided advice to Mafcote throughout the claims process and acted as Mafcote's spokesperson.

A duty of care can arise between an insurance agency and its customer when the agency knows that the customer is relying on the agency's expertise. First Catholic Slovak v. Buckey Union Ins. Co., 27 Ohio App.3d 169, 499 N.E.2d 1303 (1986). *See also*, Wanner Metal Worx, Inc. v. Hylant-Maclean, Inc., Fifth Dist. App. No. 02CAE10046, 2003 Ohio App. LEXIS 1714, 2003-Ohio-1814, ¶ 35 (Ohio Ct. App. April 7, 2003); Irvin v. American General Finance Co., Fifth Dist App. No. CT2004-0046, 2005-Ohio-3523, ¶ 26 (Ohio Ct. App. June 30, 2005); Rose v. Landen, Twelfth Dist. No. CA2004-06-066, 2005-Ohio-1623, (Ohio Ct. App. April 4, 2005 ; Nichols v. Progressive Ins. Co., Tenth Dist. No. 01AP-899, 2002-Ohio-3058, (Ohio Ct. App. June 18, 2002).

Genatt was the one who initially reported the claim to CNA. (Rynston Depo. at 49). It advised Mafcote that the losses from the boiler was covered under the CNA policy and it did not matter which Mafcote affiliate purchased replacement paper. (Rynston Depo. at 67-69). When it advised Mafcote on these issues, Genatt knew or should have known that Mafcote was relying on its insurance expertise. Indeed, Mr. Rynston admitted that he has expertise in coverage issues and has knowledge above and beyond the average insurance broker. (Id. at 17, 19, 84-85). He stated that "people know I know what I'm talking about." (Id. at 20). Additionally, Mafcote representative Ed DiGioia is an expert in boiler claims who also provided guidance to Mafcote. (Id. at 21).

Mafcote requested that Genatt review Mafcote's claim to CNA to make sure that it was correct. (Schulman Depo. at 38-39). Steve Schulman, Mafcote's president, followed the instructions he received from Mr. Rynston and Steve Genatt in presenting Mafcote's claim to CNA. (Schulman Depo. at 43). Mr. Schuman is not an expert in filing insurance claims. (Schulman Depo. at 200). According to Terrence Reiff, Genatt's expert witness, it was reasonable for Mafcote to depend on Genatt for advice about coverage issues. (Reiff Depo. at 23-24). Mr. Reiff stated that the relationship between Mafcote and Genatt automatically suggests reliance. (Reiff Depo. at 37).

8

Accordingly, Genatt had a duty to properly advise Mafcote about the boiler coverage. This duty was breached.

Genatt did not disclaim its duty in Mr. DiGioia's August 15, 2001 letter by advising Mafcote that coverage with CNA needed to be confirmed. The letter does not state *who* is responsible for confirming the coverage. The history after Mr. DiGioia's letter indicates that genatt continued to provide advice to Mafcote and continued to advocate on behalf of Mafcote to CNA. Additionally, Genatt claimed that CNA was being "unreasonable" about the handling of the claim. (Rynston Depo.at 58; Joint Exhibit 59). Because Genatt claimed that CNA's handling of the claim was unreasonable, it is not fair to now claim that Mafcote should have confirmed coverage with CNA.

### 2. Genatt Acted as a Consultant for Mafcote in the CNA Lawsuit

In the CNA lawsuit, Genatt continued to of Mafcote advice about coverage under the CNA policy and acted as a consultant to Mafcote in arguing in favor of coverage. Mr. Rynston admits that he acted as a consultant to Mafcote in the CNA lawsuit. (Rynston Depo. at 83). In its role as a consultant during the first CNA lawsuit, Genatt knew that Mafcote was continuing to rely upon its expertise. Genatt's advice proved to be faulty. Accordingly, Genatt breached its duty to Mafcote and is precluded from summary judgment.

### C. ANY WAIVER OF ARGUMENTS IN FAVOR OF COVERAGE IN THE CNA LAWSUIT RESULTED FROM GENATT'S ADVICE

Genatt claims that it cannot be liable for CNA's denial because Mafcote waiver certain potential arguments in favor of coverage, including the fact that the RCP purchases could be covered by a third party liability claim and the doctrines of waiver and estoppel. Genatt acted as an advisor to Mafcote during the CNA lawsuit. (Rynston Depo. at 83). Among the advice rendered by Genatt was the fact that there was coverage under the policy for the replacement paper purchased by RCP and that it did not matter which Mafcote affiliate purchased the paper. (Id. at 36, 45, 66-69,

103; Joint Exhibit 67).  This advice was relied upon by Genatt.  Genattt's own expert stated that he believed that Mafcote relied upon Genatt's statements that coverage was in place.  (Reiff  Depo. at 29).  Genatt still maintains that RCP's purchase of replacement paper was covered.  (Rynston Depo. at 36, 45, 66-69, 103)  If Genatt's position on this issue were true, it would not matter whether any other arguments in favor of coverage were made.  Additionally, Genatt was involved in the CNA lawsuit as an insurance expert and never raised the issue that a third party claim should be asserted or that a waiver and estoppel claims should be made.  Further, had such arguments been made, it would have not made a difference because the CNA court decided the issue on the basis of the way the claim was made.  Because of the way the claim was made, Mafcote may not have been able to assert a third party loss claim and there is no indication that the CNA court would have even considered these claims, much less decided these claims in Mafcote's favor.

### D.      ANY LATE NOTICE OF THE LOSS BY MAFCOTE WAS EXCUSABLE

Genatt claims that Mafcote provided late notice of the loss, which should have defeated coverage.  CNA abandoned this argument in the CNA lawsuit.  The reason CNA abandoned this argument was because it is meritless.  Any late notice of the loss was excusable and CNA did not suffer any prejudice as a result of late notice.   Further, CNA paid to repair the boiler, thus waiving the defense of late notice.  Because CNA abandoned this argument, it cannot now be raised by Genatt and it is not necessary to engage in further discussion on the issue.  Genatt's argument on this issue is additionally disingenuous because Genatt has stated that it was not Mafcote's fault that late notice was provided to CNA.  (Rynston Depo. at 59).  Nevertheless, under the circumstances, Mafcote gave reasonable notice of its loss and coverage has not been denied on the basis of late notice.

Whether notice to an insurer is made within a reasonable time is dependent upon all facts and circumstances of each case. Ferrando v. Auto-Owners Mut. Inc. Co., 98 Ohio St.3d 186, 2002-Ohio-7217, 781 N.E.2d 927 , ¶ 90 (2002); Ruby v. Midwestern Indemn. Co., 40 Ohio St.3d 159, 532 N.E.2d 730 (1998), at the syllabus. Additionally, if a breach of the prompt-notice provision in an insurance contract has occurred, the court must determine if the insurer was prejudiced such that coverage must be forfeited. Ferrando, *supra*, at ¶ 90. *See also*, McKean v. Howell, Fifth Dist. No. 2004 CA 00041, 2005-Ohio-721, ¶¶ 38-44 (Ohio Ct. App. Feb. 18, 2005).

When the paper coating machine initially stopped operating on July 16, 2001, it was not immediately apparent what caused the problem. (Kaminski Depo. at 36-38). Once it was determined that it was the boiler, there was confusion about which insurer should be notified because the sticker on the boiler indicating insurance coverage was outdated. (Id. at 21-22; Rynston Depo. at 49). It was CNA's responsibility to inspect the boiler on an annual basis. (Bozovich Depo. at 83). Upon inspection, the insurer usually places a sticker on the boiler. (Id. at 84). CNA never inspected the boiler. (Id. at 84-85, 94). Because it never inspected the boiler, CNA's sticker with its contact information was not present. This resulted in Miami Wabash contacting a previous insurer and there being confusion over coverage. Once Mafcote discovered the problem, it immediately contacted Genatt, the one responsible for procuring the boiler insurance. Upon contacting Genatt on August 14, 2001, Genatt then immediately notified CNA of the loss. (Schulman Depo. at 92). As stated by Mr. Rynston, it was not Mafcote's fault that CNA was not notified of the boiler issue until several weeks after the machine first shut down. (Rynston Depo. at 59).

In the meantime, Mafcote acted in good faith to minimize its loss. It first attempted to repair the boiler. (Rynston Depo. at 49). In order not to breach contracts with existing large retail customers, Mafcote dove into its reserve supply of paper and contacted third party vendors.

(Schulman Depo. at 14, 117). It, therefore, saved CNA an even larger claim for breach of third party contracts arising from the boiler loss. (Bozovich Depo. at 28-29; Joint Exhibit 52). While Mafcote eventually installed a temporary boiler which allowed it to resume paper production, at the time the boiler initially broke, Mafcote did not immediately know whether a temporary boiler would be necessary. (Schulman Depo. at 191). Once the boiler was examined by an appropriate repairperson, a temporary boiler was utilized. (Id. at 192-193). In retrospect, perhaps the temporary boiler could have been installed earlier had Mafcote known that such undertaking would be necessary. But, it does not matter what happened in retrospect; what matters is the attempts Mafcote made to immediately minimize the damages. The CNA adjustor acknowledged that Mafcote had a duty to minimize its damages. (Bozovich Depo. at 78-79). This concept was also supported by Mr. Rynston and Mr. Blumberg. (Rynston Depo. at 52; Blumberg Depo. at 26, 61-62, 64-65). CNA also acknowledged that there was a potential $1 million loss. (Bozovich Depo. at 28-29; Joint Exhibit 52). This loss was minimized through Mafcote's quick actions. Under the circumstances, it cannot be said that CNA or Genatt was prejudiced by any late notice.

### E.    MAFCOTE'S CLAIMS ARE VALID UNDER OHIO LAW

#### 1.    As a Result of Genatt's Negligence, Mafcote is Entitled to Recover From Genatt the Amount It Would Have Received From CNA Had The Coverage Been Paid

Courts have recognized negligence claims arising from an insurance agency's failure to obtain insurance requested by a customer. *See e.g.*, Minor v. Allstate Ins. Co., 111 Ohio App.3d 16, 22, 675 N.E.2d 550, 554 (1996); Carpenter v. Scherer-Mountain Ins. Agency, 135 Ohio App.3d 316, 326, 733 N.E.2d 1196, 1203; Gallenstein Bros. Inc. v. General Acc. Ins. Co., 178 F. Supp.2d 907, 919 (S.D. Ohio 2001); Javitch v. Todd Associates, Inc., Case No. 3:03 CV 972, 2005 U.S. Dist. LEXIS 33689 *10 (N.D. Ohio Dec. 19, 2005). An agent will be held liable if, "as a result of his or

negligent failure to perform that obligation [to procure insurance], the other party to the [insurance] contract suffers a loss because of a want of insurance coverage contemplated by the agent's undertaking." Carpenter, 135 Ohio App.3d at 326, 733 N.E.2d at 1203 (quoting Minor, 111 Ohio App.3d at 21, 675 N.E.2d at 550). "Whether an agent had negligently failed to procure insurance is ordinarily a question of fact." Minor, 111 Ohio App.3d at 22, 675 N.E.2d at 554. Accordingly, the issue of an insurance agent's negligence is not appropriate for summary judgment consideration. See, Id.; Gallenstein Bros, Inc., 178 F. Supp. 2d at 920; Javitch, *supra*, at *14-15. If an insurance agent's negligence results in coverage less than that desired by an insured, "the agent will be liable for the amount the insured would have received had the coverage been in place." Id.; *see also*, Gallenstein Bros., 178 F. Supp. 2d at 919.

In this case, Mafcote is seeking to recover from Genatt the amount it would have received under the insurance policy had the insurance policy covered RCP's purchase of the replacement paper, as Genatt represented that it did. Genatt was responsible for procuring the insurance in question, with specific instruction from Mafcote that it cover any losses resulting from a boiler loss at any of its affiliates. It was Genatt's negligence in failing to procure the proper insurance and then continuing to advise Mafcote that the loss would be covered that resulted in damages to Mafcote. Accordingly, Mafcote is entitled to recover from Genatt the amount it would have received had the purchase of replacement paper been covered. Because the law recognizes a claim for negligence against an insurance agent and recognizes that the damages that can be recovered are the amount that would have received if proper coverage had been in place, the economic loss rule does not apply to such claims.

## 2.     Genatt Owes Fiduciary Duty to Mafcote

A fiduciary relationship existed between Genatt and Mafcote.  A "fiduciary relationship" is one in which a special confidence and trust is reposed in the integrity and fidelity of another and there is a resulting position of superiority or influence, acquired by virtue of this special trust." Stone v. Davis, 66 Ohio St.2d 74, 78, 419 N.E.2d 1194 (1981).  A "iduciary's role may be assumed by formal appointment or may arise from a more informal confidential relationship, wherein "one person comes to rely on and trust another in his important affaires and the relations there involved are not necessarily legal, but may be moral, social, domestic, or merely personal."  Applegate v. Fund for Constitutional Govt., 70 Ohio App.3d 813, 816-817, 592 N.E.2d 878, 880-881 (1990).  The duty on behalf of an insurance agency to its customer "may blossom into a fiduciary relationship" under certain circumstances.  Javitch, *supra*, at *11.  In Wanner Metal Worx, Inc. v. Hylant-Maclean, Inc., Fifth Dist. No. 02CAE10046, 2003-Ohio-1814, ¶ 45, an Ohio appellate court found that summary judgment was precluded when there was a genuine issue of material fact as to the existence of a fiduciary relationship between the insurance agent and the insured. *See also*, Zangara v. Travelers Indemnity Co. of Am., 423 F. Supp. 2d 762, 769 (N. D. Ohio) (*subsequently overruled for lack of subject matter jurisdiction)* ("[T]he existence of a fiduciary relationship is, in part, a factual question.")

In this case, Mafcote had a longstanding relationship with Genatt. (Rynston Depo. at 24). Mafcote placed special confidence and trust in Genatt in procuring the proper insurance.  Genatt understood Mafcote's business and its relationships with its various affiliates. (Rynston Depo. at 27, 30-31; Schulman Depo. at 78, 80-81, 171). It knew the coverage that Mafcote sought and that Mafcote was relying upon Genatt's superior insurance expertise to select the best coverage from the best insurer to meet its needs. (See Rynston Depo. at 17, 19-21, 84-85; Schulman Depo. at 57-58).

Genatt further knew that Mafcote relied upon its advice in purchasing such insurance and continued to rely upon its advice throughout the claims process. (Schulman Depo. at 38-39, 43). Under the circumstances, Genatt owed a fiduciary duty to Mafcote. This fact was recognized by Earl Rynston, the Genatt agent who selected the CNA policy for Mafcote. Mr. Rynston admitted that he and Genatt have a duty to act in the insured's best interest. (Rynston Depo. at 15-16). Genatt's expert also recognized that Genatt owed such a duty to Mafcote. (Reiff Depo. at 9, 37). Under the circumstances, Genatt cannot deny its fiduciary duty to Mafcote.

### 3. Ohio Law Recognizes a Claim Against Insurance Agencies for Breach of Good Faith and Fair Dealing

Mafcote's claim for "breach of good faith and fair dealing" (Count IV) arises separately from its breach of contract claim. Ohio law is clear that an insurance agent owes a duty of good faith and reasonable diligence in acquiring its customers' insurance coverage. Damon's Missouri, Inc. v. Davis, 63 Ohio St.3d 605, 609, 590 N.E.2d 254 (1992). See also, Ruggiero v. Nationwide Ins., Eighth App. No. 86431, 2006 Ohio App. LEXIS 715, 2006-Ohio-808, ¶ 20 (Ohio Ct. App. Feb. 23, 2006); Advent v. Allstate Ins. Co., Tenth Dist. No. 05AP-1092, 2006-Ohio-2743 (Ohio Ct. App. June 1, 2006). The cases cited by Genatt – Northeast Ohio College of Massotherapy v. Burek, 144 Ohio App.3d 196, 207, 759 N.E.2d 869, 878 (2001) and Lakota Loc. School Dist. v. Brickner, 108 Ohio App.3d 637, 646, 671 N.E.2d 578, 584 (1996) – are inapposite because they dealt with employment contracts rather than a relationship between an insurance agent and an insured. Unlike employment relationships, certain insurance relationships give rise to a separate duty of good faith and fair dealing. See, Sammarco v. Anthem Ins. Cos., 131 Ohio App.3d 544, 555, 723 N.E.2d 128, 135 (1998); Brandenburger v. Hilti, 52 Ohio App.3d 21, 27-28, 556 N.E.2d 212, 219 (1989). As a matter of law, Mafcote has properly asserted a claim for breach of good faith and fair dealing against Genatt.

### 4. Mafcote Has Properly Stated a Negligent Misrepresentation Claim Against Genatt

Genatt negligently misrepresented to Mafcote that it had procured insurance that would cover all of its affiliates in the event of any boiler loss. After the boiler loss in this case, Genatt continued to negligently misrepresent that the purchase of replacement paper by RCP was covered under the insurance policy.

Under Ohio law, the elements of a negligent misrepresentation claim have been specified as:

> ***'One who, in the course of his business, profession, or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.' (Emphasis omitted; citations omitted.) Delman v. Cleveland Heights, 41 Ohio St.3d 1, 4, 534 N.E.2d 835, 838 (1989), quoting Restatment of the Law 2d, Torts (1965) 126-127, Section 552(1).

Kilburn v. Becker, 60 Ohio App.3d 144, 146, 573 N.E.2d 1226, 1228 (1990). If a lack of reasonable care was utilized in ascertaining the facts of the representation, even a representation made with an honest belief that is true may be deemed negligent. Martin v. Ohio State Univ. Foundation, 139 Ohio App.3d 89, 104, 742 N.E.2d 1198 (2000). However, "the question of whether or not an actor used reasonable care in obtaining or communicating the information is one for the jury, unless the facts are so clear as to permit only once conclusion." Marasco v. Hopewell, Tenth Dist. No. 03AP-1081, 2004-Ohio-6715 (Ohio Ct. App. Dec. 14, 2004), citing 4 Restatement of the Law 2d, Torts (1977), section 552, comment e. See also, Community Health Partners v. Medical Mutual of Ohio, Ninth Dist. No. 05CA008693, 2005-Ohio-6913, ¶ 13 (Ohio Ct. App. Dec. 28, 2005).

Genatt was responsible for supplying Mafcote with information about the insurance coverage Mafcote sought to obtain. (Rynston Depo. at 14, 22). Once the insurance coverage was obtained, Genatt represented to Mafcote that there was boiler coverage that applied to all Mafcote affiliates.

(Id. at 32-33; Schulman Depo. at 169; Joint Exhibits 36 and 40). Mafcote justifiably relied upon these representations. When Mafcote suffered a boiler loss at its Miami Wabash facility, Genatt represented that the replacement paper purchased by RCP was covered under the policy. (Rynston Depo. at 33-34, 36, 43, 45, 66-69, 103; Joint Exhibit 67). Mafcote justifiably relied upon this representation throughout the claims process. (Reiff Depo. at 37). Once Mafcote was forced to file a lawsuit against CNA to determine coverage for the replacement paper, Genatt continued to represent that the loss was covered. (Schulman Depo. at 84). Mafcote continued to justifiably rely upon these representations. Despite Genatt's representations, Mafcote was denied coverage. As a result, Mafcote suffered pecuniary losses for which Genatt should be held responsible.

### 5. Genatt Violated Ohio Revised Code § 4165.02(A)(7) When It Represented that The Losses Suffered by Mafcote Were Covered Under the CNA Policy

Ohio Revised Code § 4165.02(A) states:

> A person engages in a deceptive trade practice when, in the course of the person's business, vocation, or occupation, the person does any of the following:
> ***
> (7) Represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have ***

In this case, Genatt, in its business and vocation as an insurance agent, represented to Mafcote that the insurance policy it procured for Mafcote had the characteristic and benefit of covering all Mafcote affiliate for losses arising out of a boiler loss, including the cost of replacement paper purchased by RCP. In making this representation, which proved to be incorrect, Genatt engaged in a deceptive trade practice.

Genatt's citation to Northeast Ohio College of Massotherapy v. Burek, 144 Ohio App.3d 196, 207, 759 N.E.2d 869, 878 (2001) is misplaced. In Burek, a deceptive trade practices claim was made under Ohio Rev. Code § 4165.02(A)(10), which specifically applies to a person who "disparages the

goods, services or business of another by false representation of fact." Mafcote has not asserted any disparagement claims under Ohio Rev. Code § 4165.02(A)(10). Rather, it has only asserted a claim pursuant to Ohio Rev. Code § 4165.02(A)(7), which does not require that a "representation *of fact*" be made; it only requires that a "representation" be made. (See negligent misrepresentation discussion above.) Nevertheless, Genatt factually represented that there was coverage under the policy.

### 6. Mafcote Agrees To Dismiss Counts Seven and Eight

Mafcote agrees that its has stipulated to dismiss Counts Seven and Eight from this case.

## IV. <u>CONCLUSION</u>

When considering all the facts and drawing reasonable inferences in favor of Mafcote, the evidence suggests that Genatt breached its duty to properly advise Mafcote about insurance coverage. The evidence further suggests that all of Mafcote's claims against Genatt are valid under Ohio law. For all of the foregoing reasons, Plaintiff Mafcote, Inc. respectfully requests that this Court overrule Genatt's Motion for Summary Judgment.

Respectfully submitted,

/s/James H. Greer

James H. Greer, Trial Attorney (0046555)
David C. Greer, Trial Attorney (0009090)
BIESER, GREER & LANDIS, LLP
6 North Main Street, Suite 400
Dayton, OH 45402-1908
Ph: (937) 223-3277
Fx: (937) 223-6339
E-mail: jhg@bgllaw.com; dcg@bgllaw.com
Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing PLAINTIFF'S MEMORANDUM IN OPPOSITION TO GENATT'S MOTION FOR SUMMARY JUDGMENT AGAINST MAFCOTE was sent to the following via electronic mail, this 11th  day of December, 2006.

David W. Walulik
Joseph J. Dehner
FROST BROWN TODD LLC
2200 PNC Center
201 E. Fifth Street
Cincinnati, OH 45202
Attorneys for Defendant Genatt Associates, Inc.

John C. Scott
FAULKNER & TEPE
2200 Fourth & Vine Tower
5 West Fourth Street
Cincinnati, OH 45202
Attorney for Third Party Defendant
Continental Casualty Insurance Company

Frederic R. Mindlin
WHITE, FLEISCHNER & FINO, LLP
140 Broadway, 36th Floor
New York, NY 10005
Attorney for Third Party Defendant
Continental Casualty Insurance Company

BIESER, GREER & LANDIS LLP


By: /s/James H. Greer

9709.206366 \ 300909.1