IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION (CINCINNATI)

| | | |
|---|---|---|
| MAFCOTE, INC. | : | CASE NO: 1:04 CV 853 |
| Plaintiff, | : | (Judge Dlott) |
| v. | : | |
| GENATT ASSOCIATES, INC., | : | **PLAINTIFF MAFCOTE'S RESPONSE TO GENATT'S PROPOSED UNDISPUTED FACTS** |
| Defendant. | : | |

## RESPONSE TO UNDISPUTED FACTS

1. Admit.

2. Admit.

3. Admit.

4. Admit.

5. Admit.

6. Admit.

7. Admit.

8. Admit.

9. Admit.

10. Deny.

11. Admit, with qualification.

12. Admit.

13. Admit.

14. Admit, with qualification.

15. Deny.

16. Admit.

17. Admit.

18. Admit.

19. Admit.

20. Admit.

21. Admit.

22. Admit.

23. Admit.

24. Admit.

25. Admit.

26. Admit, with qualification.

27. Admit.

28. Admit.

29. Admit.

## DISPUTED ISSUES OF MATERIAL FACT

1. Genatt admits that it was familiar with the business structure of Mafcote, including the relation of Mafcote's affiliates to one another. (Deposition of Earle Rynston at pp. 27, 30-31.

2. Genatt admits that it knew Mafcote's insurance needs, including the fact that all Mafcote affiliates need to be covered under the boiler insurance policy. (See Deposition of Earle Rynston at p. 30, 36; Deposition of Stephen Schulman at pp. 78, 80-81).

3. Genatt represented to Mafcote that Mafcote's affiliates were insured under the policy. (See Deposition of Earle Rynston at. 36).

2

4. When Genatt presented the CNA policy to Mafcote, it stated that the boiler insurance coverage was "as broad or broader" than the boiler insurance coverage provided by Mafcote's previous insurer. (Joint Exhibits 40, 60; Deposition of Earle Rynton at pp. 32-33).

5. The insurance provided by CNA was not as broad as the insurance provided by Mafcote's previous insurer. (Deposition of Joseph Blumberg at pp. 42, 47-48).

6. Mafcote stood to lose approximately $1 million in sales as a result of the boiler loss. (Deposition of Nick Bozovich at pp.28-29; Joint Exhibit 52).

7. Ordinarily, an insurer is responsible for inspecting its insureds' boilers on annual basis. When a boiler is inspected, a sticker is usually placed on the boiler which contains the insurer's contact information. The presence of such sticker is customary in the industry. (See Deposition of Nick Bozovich, at pp. 83-84).

8. CNA admitted that it never inspected the boiler, despite the fact that it had insured the boiler for over a year before the boiler broke. (See Deposition of Nick Bozovich at pp. 84-85, 94).

9. Mafcote would have initially reported the boiler problem to the correct insurer had CNA inspected the boiler. (See Deposition of Stephen Schulman at p. 107).

10. Genatt admits that it was not Mafcote's fault that late notice was provided to CNA. (See Deposition of Earle Rynston at p. 59).

11. Mafcote relied upon the advice of Genatt throughout the claims process. (See Deposition of Stephen Schulman at pp. 38-39, 43).

12. Once the Miami Wabash boiler stopped operating, Genatt represented that the loss, including the costs of replacement paper purchased by RCP, was covered under the policy issued to Mafcote. (See Joint Exhibits 18, 67; Deposition of Earle Rynston at pp. 36,66-69, 103; Deposition of Stephen Schulman at p. 84).

13. Genatt admits it is an expert in insurance coverage matters. (See Deposition of Earle Rynston at pp. 17, 19-21, 84-85).

14. Genatt makes recommendations to its clients about boiler coverage issues. (See Deposition of Earle Rynston at p. 22).

15. Genatt provided advice to Mafcote throughout the claims process and acted as Mafcote's spokesperson. (See Joint Exhibits 62-63, 65; Deposition of Earle Rynston at pp. 76-78).

16. Genatt commented, gave advice to Mafcote, and assisted Mafcote with its claim concerning losses suffered as a result of the boiler problem. (Deposition of Joseph Blumberg at p. 20;

3

Deposition of Stephen Schulman at pp. 100, 186-187).

17. The CNA adjustor responsible for adjusting Mafcote's claim stated that Genatt advocated on behalf of Mafcote and that he had conversations with Genatt representatives about Mafcote's claim. (Deposition of Nick Bozovich at pp. 85-88).

18. Mafcote requested that Genatt review Mafcote's claim to CNA to make sure that it was correct. (Deposition of Stephen Schulman at pp. 38-39).

19. Steve Schulman, Mafcote's president, followed the instructions he received from Mr. Rynston and Steve Genatt in presenting Mafcote's claim to CNA. (Deposition of Stephen Schulman at p. 43, 100).

20. Mr. Schulman is not an expert in filing insurance claims. (Deposition of Stephen Schulman at p. 200).

21. Terrence Reiff, Genatt's expert witness, testified that it was reasonable for Mafcote to depend on Genatt for advice about coverage issues. Mr. Reiff stated that the relationship between Mafcote and Genatt automatically suggests reliance. (Deposition of Terrence Reiff at pp. 23-24, 37).

22. Genatt claimed that CNA was being "unreasonable" about the handling of the claim. (See Deposition of Earle Rynston at p. 58; Joint Exhibit 59).

23. Mafcote had a duty to minimize its damages, which it did. (See Deposition of Nick Bozovich at pp. 78-79; Deposition of Earle Rynston at p. 52; Deposition of Joseph Blumberg at pp. 26, 61-62, 64-65).

24. Genatt admits that it acted as a consultant to Mafcote in the CNA lawsuit. (Deposition of Earle Rynston at p. 83).

25. Genatt admits it has a duty to act in the insured's best interest. (Deposition of Earle Rynston at pp. 15-16; Deposition of Terrence Reiff at pp. 9, 37).

26. Mafcote's expert witness testified that Genatt should have advised Mafcote that Miami Wabash should have been the one to purchase the replacement paper instead of RCP. (See Deposition of Joseph Blumberg at p. 30; see also Deposition of Stephen Schulman at p. 200).

27. Genatt's expert witness indicated that the insurance policy could have been written so that there would have been coverage for the replacement paper purchased by RCP. (Deposition of Terrence Reiff at pp. 31-33).

28. Mafcote's expert witness has stated that Genatt could have procured the requested coverage

4

had the "named insured" been written differently or had a Contingent Business Interruption endorsement been added to the policy. (See Deposition of Joseph Blumberg at pp. 53-54, 66; Joint Exhibits 12 and 57).