IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Mafcote, Inc. | : | Case No. 1:04-CV-853 |
| | : | |
| Plaintiff, | : | District Judge Susan J. Dlott |
| v. | : | |
| | : | ORDER GRANTING DEFENDANT'S |
| Genatt Associates, Inc., | : | MOTION FOR SUMMARY |
| | : | JUDGMENT |
| Defendant. | : | |

This matter is before the Court on Defendant's Motion for Summary Judgment (doc. 53).

The Court heard oral argument on this motion on January 18, 2007. For the reasons that follow,

the Court **GRANTS** Defendant's motion.

## I.      FACTUAL BACKGROUND

Plaintiff Mafcote, Inc. brings this suit against its insurance broker, Defendant Genatt

Associates, Inc., for failure to procure insurance coverage and misrepresentation of the coverage

obtained. The lawsuit arises from the ashes of the earlier insurance coverage suit between

Mafcote and the insurer, Third-Party Defendant Continental Casualty Ins. Co. ("CCIC"),

Mafcote, Inc. v. Continental Casualty Ins. Co., No. C-01-02-411 (S.D. Ohio) ("the earlier CCIC

coverage case"). In that lawsuit, the Honorable Judge Sandra Beckwith held that CCIC was not

liable under the boiler and machinery insurance policy purchased by Mafcote to cover an "extra

expense" incurred by one Mafcote affiliate, Royal Consumer Products, LLC ("RCP"), to

purchase replacement paper after a boiler breakdown at a different Mafcote affiliate, Miami

Wabash Paper, LLC ("Miami Wabash"). Miami Wabash regularly manufactured and sold paper

and paperboard in a raw material state to RCP, who then turned the raw material into finished

1

paper product.  Judge Beckwith held that CCIC was not liable for extra expense incurred by RCP because RCP did not suffer an accident at its location, or alternatively because the affiliate that suffered the boiler loss, Miami Wabash, did not incur the extra expense.[1]  (Mafcote, Inc. v. Continental Cas. Ins. Co., No. 1:02-CV-411, slip op. at 11 (S.D. Ohio Mar. 25, 2004).

Mafcote is a multinational corporation with multiple subsidiaries.  Mafcote's president, Steven Schulman, has been responsible for procuring insurance for Mafcote since the 1960s or 1970s and he has used six different insurance brokers during that time.

Genatt admits that it is an expert in insurance coverage matters.  Genatt makes recommendations to its clients about boiler coverage issues.  Mafcote had used Genatt as a broker to purchase various insurance policies since 1989 or 1990.  (Rynston Dep. at 24.)  Genatt was familiar with the business structure of Mafcote, including the relationship of Mafcote's affiliates to one another.  Genatt knew Mafcote's insurance needs, including the fact that all Mafcote affiliates needed to be covered under the boiler insurance policy.  Terrence Reiff, Genatt's expert witness, testified in his deposition that the relationship between Mafcote and Genatt suggested reliance.  He stated that Mafcote had some reliance, but not total reliance, upon Genatt regarding the insurance coverages to obtain.  He stated that Mafcote would expect Genatt to have expertise on coverage issues.  (Reiff Dep. at 23-24, 37.)

Genatt assisted Mafcote in purchasing a boiler policy from CCIC for the period of 2000 to 2001, a policy which Mafcote then renewed with Genatt's assistance for the 2001 to 2002 period.  Genatt represented to Mafcote that its affiliates were insured under the Mafcote CCIC

---

[1] Judge Beckwith also held, alternatively, that Mafcote, Miami Wabash, and RCP were all separate entities and that Mafcote, the plaintiff, did not suffer either a boiler loss or an extra expense.

policy.  When Genatt presented the CCIC policy to Mafcote, Genatt stated that the boiler

insurance coverage was "as broad or broader" than the boiler insurance coverage provided by

Mafcote's previous insurer.  (Doc. 56 ex. 11, jt. ex. 40.)  Genatt admits that it had a duty to act in

Mafcote's best interests.  Genatt had no authority to purchase insurance without Mafcote's

express approval of the policy.

      Miami Wabash suffered a boiler loss on July 16, 2001.  The Mafcote affiliate mistakenly

first reported the boiler loss to the wrong insurance company on July 27, 2001.[2]  Miami Wabash

was unable to produce paper for RCP for at least 29 days between July 16, 2001 and August 14,

2001.  Mafcote decided between July 16-18, 2001 that RCP would purchase replacement paper

from a third party at a higher rate.  Mafcote did not inform Genatt or CCIC of the decision to

have RCP purchase the replacement paper before the purchases were made.

      On August 14, 2001, Mafcote informed Genatt about the boiler loss.  Genatt immediately

reported the Miami Wabash boiler loss to CCIC.  Miami Wabash installed a temporary boiler

and it became operational on August 15, 2001.  Mafcote has admitted that it took only 24 to 48

hours to obtain and install the substitute boiler.

      Also on August 15, 2001, Genatt representative Ed DiGioia provided Mafcote in writing

with the name of the CCIC claims adjuster who would handle the claim.  DiGioia also stated in

the writing that "purchasing stock from others to maintain production" should fall within the

"extra expense" provision of the CCIC policy.  Finally, DiGioia stated "all of these comments

need to be confirmed by the [CCIC] adjustor assigned to the case."  (Doc. 53 ex. H, jt. ex. 18.)

---

[2] Miami Wabash's mistake was apparently made in good faith as CCIC had not inspected
the boiler that year and the previous insurer's inspection sticker with contact information
remained on the boiler.

After this date, Mafcote communicated with both Genatt and CCIC about its boiler loss. Genatt also contacted CCIC on Mafcote's behalf. Genatt commented, gave advice to, and assisted Mafcote with its boiler loss claims. The CCIC adjustor who handled the Mafcote claim testified that Genatt advocated on Mafcote's behalf.

Mafcote requested that Genatt review its claim to CCIC to make sure it was correct. The evidence suggests that Genatt represented to Mafcote throughout the claims process that the CCIC policy provided coverage for RCP's purchases. Genatt, however, disputes that Mafcote could have relied upon its advice or representations. It points out that Mafcote made the decision to have RCP, not Miami Wabash, purchase the replacement paper almost one month before Mafcote notified Genatt of the boiler loss. Further, Mafcote first made a provisional written claim to CCIC to recover "third party purchases which would have been obtained from [Miami Wabash] had the accident not occurred" on October 10, 2001. (Doc. 53 ex. I, jt. ex. 6.) However, Genatt did not learn that the RCP affiliate, as opposed to Miami Wabash, incurred the extra expense for replacement paper until October 15, 2001. (Doc. 53 ex. J, jt. ex. 8.) By October 15, 2001, RCP had made its replacement paper purchases.

The parties agree that the CCIC insurance policy procured by Genatt would have provided coverage for Miami Wabash to purchase substitute paper from third parties. CCIC also admits that the policy would have provided coverage for Miami Wabash to purchase replacement paper if Mafcote had provided CCIC timely notice. During the claim adjustment period, CCIC denied the RCP extra expenses claim for the paper purchase on the basis of late notice. During the coverage litigation, however, CCIC raised a different defense to coverage–only Miami Wabash could submit a claim for extra expenses because only it suffered the boiler loss.

Mafcote hired four different law firms to litigate the earlier CCIC coverage case.  Genatt asserted that CCIC was unreasonable in its handling of Mafcote's claim.

Following the conclusion of the earlier CCIC coverage suit, Mafcote filed the instant suit against Genatt on December 29, 2004.  Genatt now moves for summary judgment.  The parties have stipulated that Mafcote will dismiss Counts Seven and Eight of its Complaint so this Order does not address those claims.  Mafcote otherwise opposes Genatt's motion.  Both parties agree that Ohio law governs this dispute.

## II.    STANDARDS GOVERNING MOTIONS FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56 governs motions for summary judgment.  Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  On a motion for summary judgment, the moving party has the burden of showing that no genuine issues of material fact are in dispute, and the evidence, together with all inferences that can permissibly be drawn therefrom, must be read in the light most favorable to the party opposing the motion.  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 585-87 (1986).

The moving party may support a motion for summary judgment with affidavits or other proof or by exposing the lack of evidence on an issue for which the nonmoving party will bear the burden of proof at trial.  Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  In responding to a summary judgment motion, the nonmoving party may not rest upon the pleadings but must go beyond the pleadings and "present affirmative evidence in order to defeat a properly supported motion for summary judgment."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).  The nonmoving party "must set forth specific facts showing there is a genuine issue for trial."

5

Fed. R. Civ. Pro. 56(e).  The Court's task is not "to weigh the evidence and determine the truth

of the matter but to determine whether there is a genuine issue for trial."  Liberty Lobby, 477

U.S. at 249.  A genuine issue for trial exists when there is sufficient "evidence on which the jury

could reasonably find for the plaintiff."  Id. at 252.

## III.    ANALYSIS

## A.    Breach of Contract

No written contract existed between Mafcote and Genatt.  In the Complaint, Mafcote

alleges that it retained Genatt as its insurance broker to provide for its business insurance needs.

Specifically, Mafcote alleges that it engaged Genatt to procure business insurance to cover losses

in the event of damage to or the loss of use of a boiler at any Mafcote or affiliate location.

Genatt received compensation in the form of a commission.  Upon Genatt's recommendation,

Mafcote purchased a boiler insurance policy from CCIC on June 8, 2000 and Mafcote renewed

the policy for the 2001 to 2002 policy period.

Despite the voluminous factual record in this case, the terms of the contract between

Mafcote and Genatt are not clear.  Genatt's position, as gleaned from the briefs, is that it was

obligated to procure an insurance policy that would cover losses and expenses incurred by

Mafcote or by one of its affiliates in the event of a boiler loss at any affiliate.  It is undisputed

between Mafcote and Genatt that the CCIC boiler policy, which Mafcote purchased upon

Genatt's recommendation, would have provided coverage for Miami Wabash to purchase

substitute paper from third parties after the boiler loss at Miami Wabash facility.  CCIC also

admits that the policy would have provided coverage for Miami Wabash to purchase replacement

paper if Miami Wabash had provided timely notice of its losses.  As such, Genatt asserts that it is

entitled to summary judgment on the breach of contract claim.

In opposing summary judgment, Mafcote appears to argue that Genatt was contractually obligated to procure a much more specific type of insurance coverage. Mafcote specifically alleges in the Complaint as follows: "[Genatt] agreed to procure business insurance that would pay for lost profits and other losses incurred in the business of Mafcote or any subsidiary as a result of damage or loss of use of a boiler at any location operated by any subsidiary in the supply chain of Mafcote's interrelated and interdependent paper manufacturing and processing operation." (Doc. 1 at 9.) Mafcote does not point to evidence in the record that supports this allegation. Mafcote's evidence establishes (a) that Genatt had been Mafcote's insurance broker for approximately ten years when it procured the CCIC policy for Mafcote, (b) that Genatt was familiar with the organization and structure of Mafcote's business, including the relationship of Mafcote's affiliates to one another, and (c) that Genatt understood Mafcote's insurance needs, including that all of the Mafcote affiliates had to be insured under the boiler policy.

Steven Schulman, Mafcote's president, specifically testified that Genatt knew that Mafcote needed coverage that "would protect the value [of Mafcote and its affiliates] if the supply chain between companies, affiliated companies, was disrupted." (Schulman Dep. at 78.)[3] This evidence falls short of establishing that Genatt assumed the contractual duty to obtain an insurance policy that would cover an extra expense incurred by one affiliate when another

_____

[3] Mafcote also points to another portion of Schulman's testimony to support its position that Genatt knew that all of the Mafcote's affiliates had to be covered. In regards to a question regarding what act of Genatt's was negligent, Schulman responded: "Well, firstly, I understand that the - - there is a clause which specifically and clearly numerates, sets forth the specific situation so that it is crystal clear that a loss at one location is covered when in fact an accident – a covered accident occurred at another location." (Schulman Dep. at 80.) It appears, however, that he is not stating what facts Genatt knew, but rather explaining what the Complaint alleges.

affiliate in the supply chain suffered a boiler loss.  Genatt met its contractual duty to protect the value of Mafcote and its supply chain because the parties agree that Miami Wabash's purchase of the paper product from a third party to supply RCP would have been covered under the CCIC policy.

Mafcote points to additional evidence to support its contractual argument.  First is a written statement by Genatt that the CCIC policy provided coverage "as broad or broader" than the coverage provided by Mafcote's previous insurer, Kemper.  (Doc. 56 ex. 11, jt ex. 40.)  Second is the report and deposition testimony of its expert witness, Joseph R. Blumberg, purportedly stating the opinion that the Kemper policy would have provided coverage for RCP's paper purchase following the boiler loss that occurred at Miami Wabash.  Mafcote concludes based on this evidence that Genatt contractually assumed the obligation to provide coverage for an expense incurred at one affiliate arising from a boiler loss at another affiliate.  The Court cannot agree.

Primarily, Mafcote has mischaracterized the report and deposition testimony of Blumberg.  In his expert report, Blumberg is critical of Genatt's assertion that the CCIC policy provided coverage as broad as had been provided in the earlier Kemper policy.  Blumberg cites three provisions from the earlier Kemper policy that did not exist in the newer CCIC policy, including provisions for "consequential damage."  (Doc. 56 ex. 14, jt. ex. 57.)  Blumberg did not state an opinion, however, that the Kemper policy would have provided coverage for RCP's extra expense, whereas the CCIC policy did not.  When pressed on this issue at his deposition, Blumberg equivocated and did not express his answers with certainty:

> Q.  Would the facts of this lawsuit come within the coverage of the consequential
> damage definition of the Kemper policy?

8

A.  It may well.
* * * *
Q.  Is it your opinion that there are changes in the policy?
A.  Yes.
Q.  Is it your opinion that these changes in the policy resulted in different
coverage for the underlying loss?
A.  Possibly.

(Blumberg Dep. at 47, 51.)  The Court finds that Blumberg report and testimony do not establish

that the Kemper policy would have provided coverage for the loss.[4]  This evidence, therefore,

also does not help Mafcote establish a breach of contract claim for failure to procure coverage.

The last piece of evidence that Mafcote might point towards to establish that Genatt

assumed the duty to purchase a more specific coverage that would have covered RCP's

replacement paper purchase is the testimony of Steven Schulman, the president of Mafcote, that

Genatt "represented to us both before, during and after the claim that we were covered when in

fact we were not covered."  (Schulman Dep. at 84.)  However, this statement is too vague to help

establish Mafcote's claims.  Mafcote admits that it believes the CCIC policy would have

provided coverage for the paper purchases had the expense been incurred by Miami Wabash, the

affiliate which suffered the boiler loss.  As such, any general statement by Genatt made prior to

the procurement of the CCIC policy that the policy would provide coverage for extra expenses

incurred as the result of an affiliate's boiler loss were accurate.

---

[4] The Court also questions whether Blumberg's opinion on the coverage provided by
Kemper and CCIC policies has legal relevance.  Generally, "interpretation of an insurance
contract involves a question of law to be decided by a judge."  Leber v. Smith, 70 Ohio St.3d
548, 553, 639 N.E.2d 1159 (1994); see also GenCorp, Inc. v. American Intern. Underwriters, 178
F.3d 804, 817 (6th Cir. 1999) (citing Leber for the same principle).  Given the factual history of
this case, both parties appreciate that an insurance expert's opinion as to whether a policy
provides coverage is not binding.  Courts have the ultimate authority to interpret disputed
coverage provisions.

In sum, Genatt has established that it had a contractual obligation to procure coverage for Mafcote and its affiliates in the event of a boiler loss at any affiliate.  The parties agree that Genatt fulfilled that contractual duty.  Mafcote has failed to establish with evidence that Genatt contractually agreed to provide a more specific coverage that would have insured the extra expense loss incurred here by RCP when it purchased replacement paper following the boiler loss suffered by its supplier, Miami Wabash.  Genatt is entitled to summary judgment on the breach of contract claim.

**B.      Negligence**

Mafcote alleges in this claim that Genatt breached its duty to Mafcote to use reasonable care as Mafcote's insurance broker in procuring insurance coverage to meet Mafcote's insurance needs.  Genatt moves for summary judgment on the merits on the basis that it was not negligent because it procured the coverage Mafcote needed.  The Court agrees that Genatt was not negligent in procuring insurance coverage for Mafcote as a matter of law for the same reasons that the Court held that Genatt did not breach any contractual obligations in procuring the insurance.  The CCIC boiler policy that Genatt procured for Mafcote would have provided coverage for Miami Wabash to purchase substitute paper from third parties to fulfill its customers' orders, including RCP's orders, after the boiler loss at Miami Wabash facility.

Alternatively, Genatt moves for summary judgment on the grounds that Ohio law precludes recovery under a negligence theory for losses that are solely economic.  Ohio's economic loss rule provides that "a plaintiff who has suffered only economic loss due to another's negligence has not been injured in a manner which is legally cognizable or compensable."  All Erection & Crane Rental Corp. v. Acordia Northwest, Inc., No. 04-3862, 162

10

Fed. Appx. 554, 559 (6th Cir. 2006) (citing <u>Chemtrol Adhesives, Inc. v. American Mfrs. Ins.</u> <u>Co.</u>, 42 Ohio St.3d 40, 537 N.E.2d 624, 630 (1989)). The Sixth Circuit explained in a banking case that economic loss doctrine "applies in a tort action only when the economic loss is unaccompanied by personal injury or property damage." <u>Pavlovich v. National City Bank</u>, 435 F.3d 560, 569 (6th Cir. 2006). It stated further that "Ohio law prevents the recovery of purely economic losses in a negligence action either where there is no privity or a sufficient nexus that could serve as a substitute for privity or where recovery of such damages is not based upon a tort duty independent of contractually created duties." <u>Id.</u> (internal citations omitted). The economic loss doctrine has been applied to bar negligence claims by insureds against their insurance brokers for failing to procure coverage. <u>See</u> <u>All Erection & Crane Rental Corp.</u>, 162 Fed. Appx. at 559; <u>J.F. Meskill Enterprises, LLC v. Acuity</u>, No. 05-CV-2955, 2006 WL 903207, at *1, 5 (N.D. Ohio Apr. 7, 2006).[5]

Mafcote, for its part, relies on cases which have recognized a negligence cause of action against an insurance broker or agent for failure to procure insurance. <u>See</u> <u>e.g.</u>, <u>Javitch v. Todd</u> <u>Assocs., Inc.</u>, No. 3:03CV972, 2005 U.S. Dist. Lexis 33689 (N.D. Ohio Dec. 19, 2005); <u>Gallenstein Bros. Inc. v. General Acc. Ins. Co.</u>, 178 F.Supp.2d 907, 919 (S.D. Ohio 2001); <u>Westfield Nat'l Ins. Co. v. Young</u>, No. CA2005-12-135, 2006 WL 3182909, at ¶¶ 56-57, 64 (Ohio App. Nov. 6, 2006); <u>Minor v. Allstate Ins. Co.</u>, 111 Ohio App.3d 16, 21-22, 675 N.E.2d

---

[5] The <u>Meskill</u> court held that a negligent misrepresentation claim, as opposed to a negligence claim, did survive the economic loss doctrine. 2006 WL 903208 at *5-6. Mafcote's negligent misrepresentation claim is addressed at length in a separate subsection.

550 (1996).[6]  Significantly, however, it does not appear from the analysis and discussion in any of these cases that the defendant agents and brokers therein raised the economic loss doctrine as a defense to liability against the negligence claims.  See Meskill, 2006 WL 903207 at *5 (similarly distinguishing the older line of cases).

Similar to the case at bar, the plaintiff in All Erection & Crane Rental Corp. had sued its insurance broker in negligence for failure to obtain coverage after the insurer cancelled the insured's policy.  The plaintiff had alleged that the broker allowed a policy renewal problem to develop with the insurer by failing to obtain current loss information from the plaintiff, information which contributed to the insurer's decision to cancel the policy.  162 Fed. Appx. at 559.  The Sixth Circuit precluded recovery for purely economic loss in negligence and stated that the plaintiff's remedies were restricted to "traditional breach of contract claim or, if available, to the remedies provided by the Uniform Commercial Code."  Id.  Significantly, the court rejected the plaintiff's argument, similar to the one made by Mafcote here, that the court should have viewed the case from the "perspective of an insurance agent, who owes its client a duty to exercise good faith and reasonable diligence in undertaking the acquisition of coverage."  Id. The Sixth Circuit focused instead on the "well-established" rule that the plaintiff could not seek "purely economic damages" in negligence.  Id.  This Court, therefore, finds the cases cited by

---

[6] An Ohio appellate court described the negligence claim in this insurance context as follows:

> An insurance agent who, with a view to compensation, undertakes to procure insurance for another is obligated to do so. The agent is liable if, as a result of his or her negligent failure to perform that obligation, the other party to the contract suffers a loss because of a want of the insurance coverage contemplated by the agent's undertaking.

Minor, 111 Ohio App.3d at 21.

12

Mafcote to be of limited precedential value when weighed against the thoughtful analysis of the economic loss doctrine in the insurance context provided in <u>Meskill</u> and <u>All Erection & Crane Rental Corp.</u>, <u>supra</u>.

For these reasons, the Court holds that the economic loss rule applies to bar Mafcote's negligence claim. Accordingly, the Court grants summary judgment to Genatt on the negligence claim.

**C.       Breach of Fiduciary Duty**

Mafcote alleges in this claim that Genatt owed it a fiduciary duty because Mafcote placed a special trust in Genatt and Genatt had a position of influence over Mafcote.  Mafcote further alleges that Genatt breached that special duty by failing to exercise reasonable care in procuring insurance to meet Mafcote's needs and by incorrectly advising Genatt during its claim dispute with CCIC that the RCP extra expense purchase costs would be covered.  Genatt moves for summary judgment contending that it did not owe Mafcote a fiduciary duty as a matter of law, and alternatively, if a duty did exist, that Mafcote did not rely to its detriment on any Genatt act or omission that would have constituted a breach of that duty.

A fiduciary relationship under Ohio law is one in which "special confidence and trust is reposed in the integrity and fidelity of another and there is a resulting position of superiority or influence, acquired by virtue of this special trust."  <u>Ed Schory & Sons, Inc. v. Society Nat'l Bank</u>, 75 Ohio St.3d 433, 442, 662 N.E.2d 1074 (1996) (internal quotation and citation omitted); <u>Stone v. Davis</u>, 66 Ohio St.2d 74, 78, 419 N.E.2d 1094 (1981) (same).  "Unilateral trust without a known reciprocal obligation is not sufficient to create a fiduciary duty."  <u>Randleman v. Fidelity Nat'l Title Ins. Co.</u>, No. 3:06CV7049, – F.Supp.2d – , 2006 WL 3411529, at *8 (N.D. Ohio Nov.

17, 2006) (citing <u>Slovak v. Adams</u>, 141 Ohio App. 3d 838, 847, 753 N.E.2d 910 (2001)).  Stated differently, a fiduciary relationship exists only when both parties know that the special trust and confidence exists. Whether a de facto fiduciary relationship has been created "is a question of fact and depends on the circumstances of each case." <u>Prudential Ins. Co. v. Eslick</u>, 586 F.Supp. 763, 766 (S.D. Ohio 1984).

Genatt moves for summary judgment citing the general proposition that under Ohio law "[o]rdinarily, the relationship between an insured and the agent that sells the insurance is, without proof of more, an ordinary business relationship, not a fiduciary one." <u>Slovak</u>, 141 Ohio App.2d at 846.  However, both parties cite cases that recognize that the relationship between an insured and its insurance agent or broker can develop into a fiduciary relationship. <u>See</u> <u>e.g.</u>, <u>Javitch</u>, 2005 U.S. Dist. LEXIS 33689, at *11; <u>Slovak</u>, 141 Ohio App.3d at 846-47.  Disputed issues of fact, and the interpretation of undisputed facts, preclude summary judgment here on the question of whether a fiduciary relationship existed between Mafcote and Genatt.  Nonetheless, even if Genatt did owe a fiduciary duty to Mafcote, the undisputed evidence establishes that Genatt did not breach that duty.

The elements of a claim for breach of fiduciary duty are as follows: (1) the existence of a duty, (2) the failure of the defendant to observe that duty, and (3) injury resulting proximately therefrom. <u>Strock v. Pressnell</u>, 38 Ohio St.3d 207, 216, 527 N.E.2d 1235 (1988).  The Court already has concluded that Genatt neither breached a contractual duty nor acted negligently in its procurement of insurance for Mafcote.  For the same reasons, the Court finds that Genatt did not breach a fiduciary duty insofar as Mafcote's claim is based on the procurement of insurance. Likewise, the Court finds that Genatt cannot be held liable for any advice it rendered during the

14

claim submission process or during the earlier CCIC coverage lawsuit.

In regards to this latter issue, Mafcote puts emphasis on the fact that it requested that Genatt review its draft written claim for coverage to CCIC and alleges that it relied on advice that Genatt rendered thoughout the claim process.  Mafcote cannot refute, however, these key facts: (1) Mafcote made the decision for RCP to purchase the replacement paper sometime between July 16-18, 2001, approximately one month before Mafcote informed Genatt of the boiler loss; (2) Mafcote did not inform or consult with Genatt or CCIC about the decision to have RCP, instead of Miami Wabash, purchase the paper at any time before the purchases were made; (3) Mafcote submitted a preliminary claim for the paper purchases to CCIC on October 10, 2001, five days before Genatt learned that RCP was the affiliate who made the purchases; and (4) Genatt advised Mafcote that its initial coverage opinions "need[ed] to be confirmed by the CNA adjustor assigned to the case."  (Doc. 53 ex. I & J, jt. ex. 6 & 8; doc. 54 ex. H, jt. ex. 18.)  Thus, Mafcote alone made the purchase decisions which constituted the basis for Judge Beckwith's decision in the earlier lawsuit that the CCIC policy did not provide coverage.

In the face of this compelling evidence, Mafcote has not put forward any contrary evidence that would establish that it suffered harm as a result of any breach by Genatt of its fiduciary duty, if any.  Mafcote's theory appears to be Genatt breached a fiduciary duty after it learned about the boiler loss when it stated its opinion to Mafcote that the CCIC policy would cover RCP's paper purchase extra expense.   Mafcote points to written and oral statements by Genatt that the RCP purchases were covered under the CCIC policy.  The Genatt representatives made each of these statements, however, after RCP had purchased the paper, and Genatt cannot be held responsible for the consequences of the purchase decision.  (Rynston Dep. at 33-34, 36,

43, 45, 66-69, 103; doc. 56 ex. 20, jt. ex. 67.)[7]  Additionally, Mafcote does not offer evidence concerning different steps it could have taken after RCP had made the purchases if Genatt had not advised thereafter that the purchases would be covered by CCIC.  That is, Mafcote does not offer evidence that it would have taken different steps and could have obtained coverage from CCIC for the RCP purchases if Genatt had rendered different advice or no advice at all.  The Court is left to conclude that Mafcote was not harmed by Genatt's statements concerning coverage made after the fact of the purchases, the fact upon which CCIC's denial of coverage was upheld.  The Court will grant summary judgment to Genatt on the breach of fiduciary duty claim.

**D.      Breach of Duty of Good Faith and Fair Dealing**

Mafcote alleges that Genatt owed it a duty of good faith and fair dealing and that Genatt breached that duty.  Mafcote relies on insurance cases which state that "[a]n insurance sales agency owes its customer a duty to exercise good faith and reasonable diligence in undertaking to acquire the needed insurance coverage."  Damon's Missouri, Inc. v. Davis, 63 Ohio St.3d 605, 609 n.2, 590 N.E.2d 254 (1992); see also Advent v. Allstate Ins. Co., No. 05AP-1092, 2006-Ohio-2743, 2006 WL 1495066, at *3 ¶ 17 (Ohio App. June 1, 2006); Ruggiero v. Nationwide Ins., No. 86431, 2006 WL 416964, at *3 ¶ 20 (Ohio App. Feb. 23, 2006).  This claim fails on the merits because Mafcote cannot establish as a matter of law that Genatt breached any duty to Mafcote in regards to the procurement of the CCIC insurance policy.  Again, the Court reiterates

---

[7] For example, the e-mail in which Earl Ryston of Genatt stated to Steven Schulman of Mafcote that "there was general agreement that any named insured is covered for any loss covered by a Boiler & Machinery policy regardless of which insured had the covered accident" was dated June 16, 2004, almost three years after RCP made the purchases.  (Doc. 56 ex. 20, jt. ex. 67.)

16

that there is no evidence that Genatt failed to procure the type of coverage that Mafcote requested or required.

Alternatively, Genatt argues and the Court holds that an insurance broker's duty to exercise good faith and reasonable diligence in the procurement of an insurance policy is simply the legal duty of care imposed upon that agent for purposes of a negligence cause of action.  See Gallenstein Bros., 178 F.Supp.2d at 919 (identifying a broker's obligation to exercise good faith and reasonable diligence and implying that a failure to meet that obligation is negligence).  The cases Mafcote relies on are not to the contrary.   The Court notes that in both Advent and Ruggiero, the discussion of the insurance agent's duty to use good faith arises in the context of the standard of care that the insurance agent must provide or risk being found negligent.  Advent, 2006 WL 1495066, at *3 ¶ 17;  Ruggiero, 2006 WL 416964, at *3 ¶ 20.  The discussion of the duty in Damon's Missouri, Inc. arises in dicta in a footnote and is not particularly illuminating.

This Court's holding is consistent with the Sixth Circuit's discussion in All Erection and Crane:

> All Crane urges us to view this case from the perspective of an insurance agent, who owes to its client a duty to exercise good faith and reasonable diligence in undertaking the acquisition of coverage.  From that viewpoint, according to All Crane, it was a negligent breach of that duty for Acordia and S&C to allow a policy renewal problem to develop with Royal. * * * *  We disagree.

> A host of reasons exist to affirm the district court's dismissal of All Crane's negligence claims against Acordia.  As a general matter, it is undisputed that All Crane seeks purely economic damages arising from [the insurer's] mid-term cancellation of the 2000 Policy.  The district court therefore properly cited and focused on the well-established rule that a plaintiff who has suffered only economic loss due to another's negligence has not been injured in a manner which is legally cognizable or compensable.

162 Fed. Appx. at 559 (internal quotation and citation omitted).  Thus, the Sixth Circuit in this

case treated the breach of the duty of good faith allegation to be part of the negligence claim and further held that the negligence claim was barred by the economic loss rule.

For these reasons, Genatt is entitled to summary judgment on the breach of good faith and fair dealing claim.

**E.     Negligent Misrepresentation**

Mafcote alleges in this claim that Genatt negligently misrepresented that it had procured insurance for Mafcote that would cover all of its affiliates in the event of a boiler loss, and that after it received notice about the Miami Wabash boiler loss Genatt negligently misrepresented that the replacement paper purchased by RCP would be covered.  The Ohio Supreme Court has recognized a claim for negligent misrepresentation as follows:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their *justifiable reliance* upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

Delman v. City of Cleveland Heights, 41 Ohio St.3d 1, 4, 534 N.E.2d 835 (1989) (emphasis in the original).

Genatt moves for summary judgment arguing that (1) there was no misrepresentation, (2) an opinion about whether coverage exists cannot be the basis for a negligent misrepresentation claim, and (3) Mafcote cannot establish reliance.  To begin, the Court questions whether a representation concerning coverage can be the basis for a negligent misrepresentation claim.  As mentioned in an earlier footnote in this decision, under Ohio law "[t]he interpretation of an insurance contract involves a question of law to be decided by a judge."  Leber v. Smith, 70 Ohio St.3d 548, 553, 639 N.E.2d 1159 (1994); see also GenCorp,

Inc. v. American Intern. Underwriters, 178 F.3d 804, 817 (6th Cir. 1999) (citing Leber for the same principle).  Several courts have held that because representations concerning coverage are mere statements of opinion regarding the law, such representations cannot be the basis for a *fraudulent* misrepresentation claim.  See e.g., Indiana Ins. Co. v. Midwest Maintenance, 174 F.Supp.2d 678, 681 (S.D. Ohio 2001); Owens Fiberglas Corp. v. American Centennial Ins. Co., 74 Ohio Misc. 2d 263, 271, 660 N.E.2d 823 (Ohio C.P. 1995).  At least one federal court in this Circuit has distinguished these cases and held that the mere fact that a *fraud* claim cannot be based on a misrepresentation of law, does not mean that a *negligent* misrepresentation case also must fail.  Miskell, 2006 WL 903207, at *7 n.6.  The Court need not reach a definitive answer on this issue, however, because Genatt is entitled to summary judgment on a different ground.

Similar to the Court's analysis of the breach of fiduciary duty claim, the Court finds that the negligent misrepresentation claim also fails.  Mafcote admits that it did not consult with Genatt or CCIC about whether RCP should be the affiliate to make the purchases before the purchases were made.  Any specific statements made by Genatt concerning whether the CCIC policy covered the purchases made by RCP were made after the fact of the purchases.  Mafcote cannot prove reliance or damages thereby.  As such, Genatt is entitled to summary judgment on the negligent misrepresentation claim.

## F.     Violation of Ohio Revised Code § 4165.02

Mafcote alleges in this claim that Genatt violated Ohio Revised Code ("O.R.C.") § 4165.02(A)(7) in the course of its insurance brokerage business by representing that the CCIC insurance policies it procured for Mafcote had characteristics, uses, and benefits that the policies did not provide.  The statute provides as follows:

19

(A) A person engages in a deceptive trade practice when, in the course of the person's business, vocation, or occupation, the person does any of the following:

* * * *

(7) Represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have.

O.R.C. § 4165.02.

Genatt moves for summary judgment on this claim arguing that the statute provides for a cause of action only for alleged false representations of fact, not for mere assertions of opinion. See Northeast Ohio College of Massotherapy v. Burek, 144 Ohio App.3d 196, 207, 759 N.E.2d 869, 878 (2001) (finding that appellants "have failed to establish their claim for deceptive trade practices . . . [because] the statement that appellants argue gives rise to their claim of deceptive trade practices is not a false representation of fact, but, rather, a protected statement of opinion). However, the specific provision in O.R.C. § 4165.02 on which the plaintiff in Burek had based his claim states that it is deceptive to "[d]isparage[] the goods, services, or business of another by false representation of fact."  O.R.C. § 4165.02(A)(10).  One federal court in this District has distinguished Burek and held that claims for violations of other provisions of O.R.C. § 4165.02(A)–specifically § 4165.02(A)(1), (2) and (3)–did not require misrepresentations of fact, because the language in those statutory sections stated no such restrictions.  Lambert v. Kazinetz, 250 F.Supp.2d 908, 918-19 (S.D. Ohio 2003); but see Reed Elesevier, Inc. v. TheLaw.net Corp., 269 F.Supp.2d 942, 951 (S.D. Ohio 2003) (stating that an element of claim alleging a violation of the statute generally includes that "defendant has made false or misleading statements of fact").  The provision alleged to have been violated here, O.R.C. § 4165.02(A)(7), also contains no specific language that liability lies only for false representations of fact.

20

Regardless, Mafcote's claim fails as a matter of law.  Mafcote cannot point to evidence that establishes that, prior to the procurement of the CCIC policy, Genatt made the specific representation that extra expenses incurred by one Mafcote affiliate would be covered after a boiler loss at a different Mafcote affiliate and location in the supply chain.  At most, the evidence shows that Genatt knew that all the Mafcote affiliates had to be covered under the boiler policy, that it procured a policy that covered all the Mafcote affiliates, and that it made representations to that effect.  Such facts do not constitute a deceptive trade practice under O.R.C. § 4165.02(A)(7).

The claim also fails to the extent it is based on Genatt representations made after Genatt learned that RCP would be submitting the extra expense claim.  The evidence establishes that Genatt represented to Mafcote that the RCP purchases would be covered under the CCIC policy and that the representations were proven to be false in the earlier CCIC coverage suit.  The Court agrees that these statements might qualify as being false representations regarding the characteristics of the boiler policy under the statute.  See O.R.C. § 4165.02(A)(7) (stating that the statute is violated when a person "[r]epresents that goods or services have . . . characteristics . . . that they do not have").  However, case law interpreting O.R.C. § 4165.02 makes clear a plaintiff cannot recover damages under the statute unless it has been injured as a result of the deceptive statement.  See HER, Inc. v. RE/MAX First Choice, LLC, – F.Supp.2d – , 2007 WL 43747, at *13 (S.D.Ohio Jan. 5, 2007) (refusing to grant injunctive relief where there was no evidence of harm to the plaintiff as a result of the statement); Reed Elesevier, 269 F.Supp.2d at 951 (stating that O.R.C. § 4165.02 claims require a showing that "there is some causal link between the challenged statements and harm to the plaintiff"); The Diamond Co. v. Gentry

21

Acquisition Corp., 48 Ohio Misc.2d 1, 5, 531 N.E.2d 777 (Ohio C.P. 1988) (stating that the "general required proofs" for a deceptive practice include that "[t]he plaintiff has been or is likely to be injured as a result").  Here, the Court has found that Mafcote did not rely on Genatt's opinion that the CCIC policy provided coverage for the RCP purchases and did not suffer harm thereby.  RCP made the purchases before Genatt made any false statements.  Mafcote admits that it did not seek coverage advice from Genatt or CCIC before RCP made the purchases.  Any harm suffered by Mafcote, i.e. the claim denial, was a result of its own decisions made independent from Genatt's representations.

Genatt is entitled to summary judgment on the statutory claim as well.

**IV.**    **CONCLUSION**

For the foregoing reasons, Defendant's Motion for Summary Judgment (doc. 53) is hereby **GRANTED**.

IT IS SO ORDERED.


___s/Susan J. Dlott_____
Susan J. Dlott
United States District Judge